## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON OVERSIGHT AND REFORM,
UNITED STATES HOUSE OF REPRESENTATIVES
2157 Rayburn House Office Building
Washington, D.C. 20515,

                                        *Plaintiff*,

            v.

WILLIAM P. BARR, in his official capacity as
Attorney General of the United States,
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530, *and*

WILBUR L. ROSS, JR., in his official capacity as
Secretary of Commerce,
United States Department of Commerce
1401 Constitution Avenue NW
Washington, D.C. 20230,

                                        *Defendants*.

Case No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Committee on Oversight and Reform ("Committee") of the United States House

of Representatives ("House") brings this civil action against Defendants William P. Barr,

Attorney General of the United States, and Wilbur L. Ross, Jr., Secretary of Commerce.  This

lawsuit arises out of Attorney General Barr's and Secretary Ross's unlawful refusals to comply

with duly authorized, issued, and served Committee subpoenas.

### INTRODUCTION

1.      The decennial census is a cornerstone of our democracy.  Article I of the

Constitution requires the Federal Government to conduct a census every ten years, "in such

Manner as [Congress] shall by Law direct," and Article I and the Fourteenth Amendment require the census to count every person in the United States.[1]  The census provides the basis for apportioning seats in Congress and for distributing more than $1.5 trillion in federal funds for about 316 federal spending programs.[2]  These funds support vital healthcare, nutrition, education, infrastructure, housing, and other programs on which many Americans rely.[3]  The accuracy of the census is important to every American.

2.       On March 26, 2018, Secretary Ross announced that the upcoming 2020 Decennial Census (the "2020 Census" or the "Census"), unlike every previous census for the past 70 years, would require everyone in America to answer a question on citizenship status.[4]  To support that departure, Secretary Ross pointed to a single justification:  The Department of Justice ("DOJ"), he said, had requested the inclusion of a citizenship question on the Census to gather data necessary to enforce the Voting Rights Act ("VRA").[5]  Indeed, Secretary Ross testified to Congress that he had decided to add the question "solely" in response to a December 12, 2017, request from DOJ, which, he said, had "initiated" the process.[6]

---

[1] U.S. Const. Art. 1, § 2, cl. 3; *see* U.S. Const. Amend. XIV, § 2.

[2] Andrew Reamer, Research Professor, George Washington Univ., "Counting for Dollars 2020:  The Role of the Decennial Census in the Geographic Distribution of Federal Funds," Report of the George Washington University Institute of Public Policy (Nov. 2019), https://perma.cc/48YZ-9WXT.

[3] Marisa Hotchkiss & Jessica Phelan, U.S. Census Bureau, *Uses of Census Bureau Data in Federal Funds Distribution*, 3 (2017), https://perma.cc/D8PN-3RBS.

[4] Memorandum from Secretary Wilbur L. Ross, Dep't of Com., to Karen Dunn Kelley, Under Secretary for Econ. Affairs, Dep't of Com., *Reinstatement of a Citizenship Question on the 2020 Decennial Census Questionnaire*, 2, 8 (Mar. 26, 2018), https://perma.cc/2XDF-Q7E8, *appended as* **Exhibit A**.

[5] *Id.* at 1–2.

[6] *Hearing with Commerce Secretary Ross Before the H. Comm. on Ways and Means*, 115th Cong. 14–15, 51 (Mar. 22, 2018), https://perma.cc/Y3H3-F8MA, *excerpt appended as* **Exhibit B**; *Hearing Before the H. Appropriations Subcomm. on Com., Justice, Science, &*

3.     But those explanations—and Secretary Ross's similar statements to Congress, the

public, and ultimately to the courts—were not true.  As the Supreme Court concluded in June

2019, the VRA justification that Secretary Ross proffered was pretextual and "contrived"—made

up after the fact to conceal the actual basis for the decision.[7]  In truth, the Supreme Court found,

it was Secretary Ross himself, acting in concert with other Trump Administration officials, who

"was determined to reinstate a citizenship question from the time he entered office; instructed his

staff to make it happen; waited while Commerce Department officials explored whether another

agency would request census-based citizenship data; subsequently contacted the Attorney

General himself to ask if DOJ would make the request; and adopted the Voting Rights Act

rationale late in the process."[8]

4.     The Committee is investigating the attempt to add a citizenship question to the

2020 Census, both to conduct oversight of the Executive Branch and to determine whether

legislation may be necessary to amend the census process or to provide additional safeguards in

light of Defendants' conduct.[9]  In particular, the Committee must understand the extent of

---

*Related Agencies: FY19 Budget – Department of Commerce*, 115th Cong. (Mar. 20, 2018),
*webcast available at* https://tinyurl.com/rnzty5f; *excerpt appended as* **Exhibit C**.

[7] *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573–76 (2019).

[8] *Id.* at 2574.

[9] Several members of the Committee began taking investigative steps in the previous
Congress.  On March 27, 2018, the day after Secretary Ross announced the addition of the
citizenship question, then-Ranking Member Cummings expressed concern that the "new,
untested question on citizenship will increase costs for American taxpayers and decrease the
accuracy of the census," as well as concern about "troubling examples of politicization at the
Census Bureau."  Press Release, *Cummings Issues Statement Calling for Hearings on Trump
Administration Plan to Add Citizenship Question to Census*, Comm. on Oversight and Gov't
Reform (Mar. 27, 2018), https://perma.cc/P8YS-L9Q3, *appended as* **Exhibit D**.  The following
week, on April 4, 2018, Mr. Cummings wrote to Secretary Ross and the Acting Director of the
Census Bureau on behalf of six Committee members.  His letter asked the Department to
produce several categories of documents, a subset of which the Committee later subpoenaed
from Secretary Ross in the current Congress.  Letter from Elijah E. Cummings, Ranking

maladministration by government officials and the scope and nature of procedural defects relating to the Census, including with respect to the Commerce Department's process for soliciting and evaluating input regarding the citizenship question, the Commerce Department's efforts to affect the accuracy of the enumeration, and improper political influences on the Census.[10]  This information is critical to the Committee's oversight and legislative interests in furthering an accurate Enumeration.[11]  Without the information, the Committee cannot fulfill its constitutional duties to oversee DOJ and the Commerce Department and to remedy through legislation any defects in the administration of the Census—tasks that are at the foundation of American democracy.

5.     The Committee's investigation has already revealed much about the true origins of the effort to include the citizenship question.  Evidence shows that members of the Trump Administration were seeking to add a citizenship question long before DOJ sent its December 2017 letter.  Members of President Trump's campaign and transition team discussed the issue

---

Member, Comm. on Oversight and Gov't Reform, *et al.*, to Secretary Wilbur L. Ross, Jr., Dep't of Com. & Dr. Ron Jarmin, Acting Director, Census Bureau (Apr. 4, 2018), https://perma.cc/2YTF-3JPL, *appended as* **Exhibit E**.  Representatives Carolyn Maloney, Elijah Cummings and others sent a similar document request to DOJ on May 1, 2018.  Letter from Carolyn B. Maloney, Member, Comm. on Oversight and Gov't Reform, *et al.*, to John M. Gore, Acting Assistant Att'y Gen., Dep't of Justice (May 1, 2018), https://perma.cc/383J-JL5V, *appended as* **Exhibit F**.  As detailed in this Complaint, the Committee narrowed the scope of its subsequent document requests and subpoenas as an accommodation to Defendants.

[10] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 8–9, 14–15 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[11] *See id.* at 9.

before President Trump took office.[12]  After his inauguration, the President and his top advisors—including then-Chief Strategist Steve Bannon and then-Chief of Staff Reince Priebus—met in the White House to discuss the citizenship question.[13]  Secretary Ross spoke personally with Mr. Bannon about the issue, and shortly after taking office, Secretary Ross directed personnel within the Commerce Department to ensure that the citizenship question would be added.  Secretary Ross's staff responded by prodding other agencies to request inclusion of the question and thereby provide cover for Ross's decision.[14]  After both the Department of Homeland Security and DOJ declined those entreaties, Secretary Ross personally contacted Attorney General Jeff Sessions to request again that DOJ assist.  Only then did DOJ draft its request letter—with input from Secretary Ross's staff and a member of the Trump Transition Team.[15]

6.      There is much, however, that the Committee has been unable to learn because the Defendants have defied the Committee's duly authorized subpoenas ("Barr Subpoena" and "Ross Subpoena," together "Subpoenas") for critical evidence.  That evidence includes 11 unredacted documents concerning key developments in the process of adding the citizenship question; unredacted drafts of DOJ's formal written request letter; and unredacted communications between the Commerce Department, DOJ, and other entities regarding the

---

[12] Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 11 (June 3, 2019), https://perma.cc/3CNN-4FQA; Transcript, Interview with Gene P. Hamilton, Comm. on Oversight and Reform, 17–19 (May 30, 2019), https://perma.cc/WB2Y-9EMU.

[13] *See* Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 23–26 (June 3, 2019), https://perma.cc/3CNN-4FQA.

[14] *See* Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., to Secretary Wilbur L. Ross, Jr. & Ellen Herbst, Chief Financial Officer, Dep't of Com. (May 2, 2017, 2:19 PM), *appended as* **Exhibit H**; Transcript, Interview with Gene P. Hamilton, Comm. on Oversight and Reform, 16 (May 30, 2019), https://perma.cc/WB2Y-9EMU.

[15] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 166 (Mar. 7, 2019), https://perma.cc/BXT5-KF8C.

addition of the question prior to DOJ's formal written request.  As the Committee has previously explained, these documents "go to the heart" of the Committee's legislative, investigative, and oversight interests:  "[T]hey reflect the reasons and process for developing the citizenship question, the coordination between the Commerce Department and DOJ to create the pretextual rationale, and the involvement of internal and outside parties" in those events and in the conduct of the Census more generally.[16]

7.     Despite the Committee's extensive efforts at accommodations, Secretary Ross and Attorney General Barr have refused to provide these critical documents and communications. The Committee's accommodation efforts included identifying a subset of priority documents for production, but the Defendants produced documents that are redacted, already in the public domain, not responsive, and/or missing attachments.  In addition, Attorney General Barr personally directed a key DOJ witness—the principal author of DOJ's letter—to defy a Congressional subpoena unless the Committee abandoned its longstanding and constitutionally based deposition rules.[17]  Ultimately, at the direction of the President, both Defendants invoked a "protective" and indiscriminate assertion of Executive Privilege over all remaining responsive documents, ceasing any and all productions in response to the Subpoenas.[18]

---

[16] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 2–3 (Nov. 12, 2019) (internal quotation marks omitted), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[17] *See, e.g.*, Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform, 3 (Apr. 9, 2019), https://perma.cc/3AKZ-2EAY, *appended as* **Exhibit I**; Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 6, 2019), https://perma.cc/Q5HG-2R5A, *appended as* **Exhibit J**.

[18] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**; Letter from Attorney General William P. Barr, Dep't of Justice,

8.      In light of Defendants' withholding of responsive information from the

Committee, on July 17, 2019, the House voted to hold the Defendants in contempt of Congress.[19]

Defendants have since continued to refuse to produce any additional documents in response to

the Subpoenas,[20] and the parties are therefore at an impasse.

9.      Defendants are legally obligated to honor the Subpoenas and have identified no

valid privilege that would justify their refusal to comply.  Their unlawful withholding of

information is injuring the Committee in carrying out two critical constitutional functions:

conducting effective oversight of the Executive Branch and its officials, who have provided false

testimony to Congress and misled Congress and the American public; and determining whether

legislation is necessary, potentially on an emergency basis, to ensure the integrity of the 2020

Census.

10.     Although the citizenship question will not be added to the 2020 Census, the

Committee's investigation has identified "a number of live concerns relating to potential political

influences on the nonpartisan Census process, the Commerce Department's willingness to

compromise an accurate enumeration, and both the Commerce Department's and DOJ's

willingness to misrepresent their actions in connection with the Census."[21]  "To be effective"

with respect to the 2020 Census, any remedial legislation "must be implemented quickly."[22]

---

and Secretary Wilbur L. Ross, Jr., Dep't of Com., to Speaker Nancy Pelosi, House of
Representatives (July 17, 2019), https://perma.cc/V359-6XXV, *appended as* **Exhibit L**.

[19] *See* H. Res. 497, 116th Cong. (2019); H. Rep. No. 116-125, 116th Cong., 44 (2019).

[20] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on
Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on
Investigation of Census Citizenship Question Since House Held Attorney General Barr and
Commerce Secretary Ross in Contempt of Congress*, 7 (Nov. 12, 2019), https://perma.cc/88XZ-
YNAJ, *appended as* **Exhibit G**.

[21] *Id.* at 3.

[22] *Id.* at 15.

11.     The stakes for Congress and the American people could not be higher, nor the consequences of the ongoing injury more profound.  The 2020 Census will have at least ten years of direct effect on the composition of the House by determining population counts, as well as on the methodology by which the House determines the apportionment of federal funds to the states. If there is maladministration of the 2020 Census, the effects will be felt for decades, and once complete, the damage to the Census cannot be undone.

12.     Every day that the Committee is deprived of information necessary to identify and redress Executive Branch maladministration, and every day its constitutional functions are impeded, the Committee is substantially and immediately injured in ways that no later remedy could repair. "[W]ith the clock ticking on census preparations," any delay could cost the Committee "a meaningful chance to obtain any relief."[23]

13.     The Committee now seeks declaratory and injunctive relief compelling Defendants to comply with their legal obligations.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The Committee's claims arise under Article I of the U.S. Constitution.

15.     This Court has authority to issue a declaratory judgment and order other relief that is just and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

---

[23] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 517 (S.D.N.Y. 2019).

## PARTIES

17.    Plaintiff Committee on Oversight and Reform is the principal oversight body of the House.  It is authorized to investigate subjects within the Committee's legislative jurisdiction as well as "any matter" within the jurisdiction of the other standing House Committees.[24]

18.    Defendant William P. Barr is sued in his official capacity as Attorney General of the United States and head of DOJ.

19.    Defendant Wilbur L. Ross, Jr. is sued in his official capacity as Secretary of the United States Department of Commerce.

## ALLEGATIONS

## I.    LEGAL FRAMEWORK

20.    Article I of the U.S. Constitution provides the United States Congress with "[a]ll legislative Powers,"[25] which includes authority to conduct oversight of Executive Branch agencies and investigate any subject on which "legislation could be had."[26]  The Supreme Court has repeatedly affirmed that the Congressional "power of inquiry—with process to enforce it—is an essential and appropriate auxiliary to the legislative function."[27]  The "[i]ssuance of subpoenas," in particular, "has long been held to be a legitimate use by Congress of its power to investigate … [and] an indispensable ingredient of lawmaking."[28]  The scope of these powers is

---

[24] *See* Rules of the House of Representatives, 116th Congress (Jan. 11, 2019) (hereinafter "House Rules"), Rule X, cl. 4; *see* H. Res. 6 (116th Cong.) (2019) (adopting House Rules for 116th Congress).

[25] U.S. Const. Art. I, § 1.

[26] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 n.15 (1975) (quotation marks omitted) (quoting *McGrain v. Daugherty*, 273 U.S. 135, 177 (1927)).

[27] *McGrain*, 273 U.S. at 174.

[28] *Eastland*, 421 U.S. at 504–05.

"as penetrating and far-reaching as the potential power to enact and appropriate under the Constitution."[29]

21.     Article I specifically provides Congress with plenary power to conduct the census "in such Manner as [it] shall by Law direct."[30]  Because the Constitution "vests Congress, not the Executive, with wide discretion over the conduct of the" census,[31] and because "it is only [through] Congress's statutory delegations that the Secretary of Commerce has any authority to design and conduct the decennial census at all," the Commerce Department's "authority extends only as far as Congress has provided, ends where Congress says it ends, and can only be exercised subject to the conditions and constraints that Congress has imposed."[32]

22.     The Rulemaking Clause of the Constitution authorizes the House to "determine the Rules of its Proceedings," which govern the House during its two-year term.[33]  Pursuant to that power and by House Rule X, the House has established the Committee on Oversight and Reform, granting it legislative jurisdiction over "[p]opulation and demography generally, including the Census," and more broadly over the "[o]verall economy, efficiency, and management of government operations and activities."[34]  The Committee, accordingly, has authority to introduce legislation to improve the administration of the census, ensure the integrity of its processes, and further the accuracy of its results.

---

[29] *Barenblatt v. United States*, 360 U.S. 109, 111 (1959).

[30] U.S. Const. Art. I § 2, cl. 3.

[31] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 641 (S.D.N.Y. 2019) (quotation marks omitted) (citing *Wisconsin v. City of New York*, 517 U.S. 1, 15 (1996)).

[32] *Id.*

[33] U.S. Const. Art. I, § 5, cl. 2.

[34] House Rule X, cl. 1(n)(6), (n)(8).

23.     Like other standing committees of the House, the Committee has oversight responsibilities over matters within its legislative jurisdiction.[35]  Additionally, as the principal oversight committee of the House, the Committee "may at any time conduct investigations of any matter without regard to" the jurisdiction of other standing committees.[36]  In other words, the Committee's investigative jurisdiction is coextensive with the jurisdiction of the entire House of Representatives.

24.     As a standing committee, the Committee has "general oversight responsibilities … in order to assist the House" in (1) the "analysis, appraisal, and evaluation" of "the application, administration, execution, and effectiveness of Federal laws" and any "conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation"; and (2) "its formulation, consideration, and enactment of changes in Federal laws, and of such additional legislation as may be necessary or appropriate."[37]  The Committee's responsibility to "review and study" any laws and programs within its jurisdiction applies "whether or not a bill or resolution has been introduced with respect thereto."[38]

25.     Pursuant to House Rule X, clause 2, the Committee submitted to the House its oversight plan for the 116th Congress.[39]  The Committee's reported plan covers "preparations for the Decennial Census in 2020," including "Census planning, preparation, and readiness; technology and cybersecurity; communications; and other issues."[40]  The Committee's plan explains that "[t]he Census is mandated by the Constitution and requires the Administration to

---

[35] House Rule X, cl. 2(b)(1).

[36] House Rule X, cl. 4(c)(2).

[37] House Rule X, cl. 2(a).

[38] House Rule X, cl. 2(b).

[39] H. Rep. No. 116-40 (2019).

[40] *Id.* at 160.

count every person in the United States," and that, "[d]ue to the complexity and importance of

the Census, robust oversight is critical to ensure that the Census Bureau is ready and able to

conduct an accurate and fair count."[41]   In addition, the Committee planned to "examine …

efforts to add a citizenship question to the Census after the deadline to notify [] Congress of new

census topics," and in particular, "examine inaccurate testimony to Congress" by Executive

Branch officials relating to "the origination and purported need for the citizenship question."[42]

26.      House Rule XI, clause 2(m) grants the Committee authority to "carry[] out any of

its functions and duties" by issuing subpoenas and taking testimony.  Specifically, the

Committee may "require, by subpoena or otherwise, the attendance and testimony of such

witnesses and the production of such books, records, correspondence, memoranda, papers, and

documents as it considers necessary."[43]

27.      The Rules of the Committee on Oversight and Reform ("Committee Rules")

confer on the Committee's Chairman the power to "[a]uthorize and issue subpoenas as provided

in House Rule XI, clause 2(m), in the conduct of any investigation or activity or series of

investigations or activities within the jurisdiction of the Committee."[44]   The Chair "may order the

taking of depositions, under oath and pursuant to notice or subpoena,"[45] and "[o]bservers or

---

[41] *Id.*

[42] *Id.* at 161.

[43] House Rule XI, cl. 2(m)(1)(B).

[44] *A Resolution Offered by Chairman Elijah E. Cummings*, Comm. on Oversight and Reform, 116th Congress (hereinafter "Committee Rules"), Rule 12(g), https://perma.cc/545B-ELBT.

[45] Committee Rule 15(a).  The House Rules give the Committee authority to "adopt a rule authorizing and regulating the taking of depositions by a member or counsel of the committee, including pursuant to subpoena."  House Rule X, clause 4(c)(3)(A).

counsel for other persons [than the witness], or for agencies under investigation, may not attend."[46]

28.     The Committee Rules authorize the Chair to "rule on assertions of privilege."[47] The Committee Rules require that such assertions "clearly state the specific privilege being asserted and the reason for the assertion on or before the scheduled date of testimony or appearance, or upon a demand from the Chair of the Committee that provides for a subsequent due date."[48]   The assertions must also be "set forth in a privilege log that includes the following information for each document for which a privilege is asserted:  (a) every privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipients; (e) the relationship of the author and addressee to each other; and (f) the basis for the privilege asserted."[49]

29.     Pursuant to House Rule II.8(b) and as confirmed by H. Res. 430 and H. Res. 497,[50] the Bipartisan Legal Advisory Group ("BLAG") voted to authorize the Committee to

---

[46] Committee Rule 15(e).

[47] Committee Rule 16(c).

[48] Committee Rule 16(c)(1).

[49] Committee Rule 16(c)(2).

[50] H. Res. 430, passed by the House on June 11, 2019, provided that the "chair of each standing and permanent select committee, when authorized by the Bipartisan Legal Advisory Group, retains the ability to initiate or intervene in any judicial proceeding before a Federal court on behalf of such committee."  H. Res. 430, 116th Cong. (June 11, 2019).  H. Res. 497, subsequently passed by the House on July 17, 2019, held Attorney General Barr and Secretary Ross in contempt of Congress for failing to comply with the Subpoenas, and further authorized the Committee Chairman to "take all necessary steps to enforce" the Subpoenas, "including, but not limited to, seeking authorization from the House of Representatives through a vote of the Bipartisan Legal Advisory Group pursuant to clause 8(b) of rule II, and H. Res. 430, to initiate or to intervene in proceedings in any federal court of competent jurisdiction, to seek judgments affirming the duty of the subpoena recipients to comply with the above-referenced subpoenas, and to seek any appropriate ancillary relief, including injunctive relief."  H. Res. 497, 116th Cong. (July 17, 2019).

initiate this suit.[51]  BLAG "speaks for, and articulates the institutional position of, the House in all litigation matters,"[52] and its vote "to authorize litigation and to articulate the institutional position of the House in that litigation is the equivalent of a vote of the full House of Representatives."[53]

## II.    FACTUAL ALLEGATIONS

30.    The Committee's investigation has revealed that Secretary Ross decided early in his tenure to add a citizenship question to the 2020 Census and then, with increasing urgency, directed his staff to manufacture a legal justification for that decision.  That effort failed at every turn until Secretary Ross personally implored the Attorney General to supply Secretary Ross with the legal pretext he needed.  The result—a DOJ "request" that the Commerce Department add the citizenship question to aid DOJ's enforcement of the Voting Rights Act—was, as the Supreme Court has since concluded, pretextual:  It was an explanation "contrived" after the fact to provide a "distraction" from the real reasons for the decision.

31.    The Committee has been unable to confirm the true reasons for Secretary Ross's decision because, even though the courts have concluded that Secretary Ross acted in bad faith to conceal his actual rationale, and even though the Committee has gone to great lengths to accommodate Defendants' purported concerns, Defendants have refused to comply with valid Subpoenas for critical information.  Their obstruction has resulted in an impasse; following a

---

[51]   The Bipartisan Legal Advisory Group comprises the Honorable Nancy Pelosi, Speaker of the House, the Honorable Steny H. Hoyer, Majority Leader, the Honorable James Clyburn, Majority Whip, the Honorable Kevin McCarthy, Republican Leader, and the Honorable Steve Scalise, Republican Whip. *See* House Rule II.8(b).  The Republican Leader and the Republican Whip dissented from the decision to authorize this suit.

[52] House Rule II.8(b).

[53] H. Res. 430, 116th Cong. (June 11, 2019).

blanket, indiscriminate invocation of Executive Privilege over any remaining documents,

Defendants have ceased all productions in response to the Subpoenas.

A.     **Secretary Ross, Acting in Concert with Other Trump Administration Officials, Decided to Add the Citizenship Question Shortly After He Took Office**

1.     **The Trump Campaign and Transition Team Discussed Adding a Citizenship Question**

32.     As early as 2016, members of the Trump campaign considered the possibility of

adding a citizenship question to the Decennial Census.  Former Kansas Secretary of State Kris

Kobach, who served as an "informal adviser to the President throughout the campaign," stated

that he "certainly discussed the issue with people during the campaign."[54]  These discussions

continued during the transition to the Trump Administration.  A former member of the Transition

Team, Gene Hamilton, stated in an interview with Committee staff that Mr. Kobach, who also

served on the transition, contacted him in "early November of 2016" concerning the citizenship

question.[55]

33.     Republican gerrymandering expert Thomas Hofeller played a foundational role in

these conversations.  Mr. Hofeller, who is now deceased, wrote a secret study in 2015 that

analyzed the potential political and demographic effects of legislative redistricting on the basis of

citizen voting age population.  The study concluded that counting voting-age citizens, rather than

total population, for purposes of legislative districts "would be advantageous to Republicans and

Non-Hispanic Whites."[56]  It also concluded:  "Without a question on citizenship being included

---

[54] Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 8, 11 (June 3, 2019), https://perma.cc/3CNN-4FQA.

[55] Transcript, Interview with Gene P. Hamilton, Comm. on Oversight and Reform, 18 (May 30, 2019), https://perma.cc/WB2Y-9EMU.

[56] Thomas Hofeller, *The Use of Citizen Voting Age Population in Redistricting*, 9 (2015), https://perma.cc/5X28-4AP5, *appended as* **Exhibit M**.

on the 2020 Decennial Census questionnaire, the use of citizen voting age population is functionally unworkable."[57]

34.     Earlier in 2015, the current Chief of Staff at the Census Bureau, Christa Jones, had communicated on her personal email account with Mr. Hofeller about the Bureau's effort to "evaluate and compare different census content … prior to making final decisions about the content in the 2020 Census."  She wrote in that correspondence:  "This can … be an opportunity to mention citizenship."[58]

35.     Mr. Hofeller's views on the census were influential.  Mark Neuman, the Trump Transition Team official responsible for census matters, testified in a deposition as part of the census litigation that he spoke multiple times with Mr. Hofeller about adding a citizenship question to the Census.[59]

---

[57] *Id.* at 8.

[58] Email from Christa Jones to Tom Hofeller, "Fwd: FR Notice" (Jan. 7, 2015, 9:04 AM), https://tinyurl.com/re3zhfo, *appended as* **Exhibit N** (citing Proposed Information Collection; Comment Request; 2015 National Content Test, 79 Fed. Reg. 71377 (Dec. 2, 2014)); *see also* Press Release, *Committee Seeks Interview with Census Bureau Chief of Staff After New Evidence Reveals Personal Emails With Republican Gerrymandering Expert*, Comm. on Oversight and Reform (June 18, 2019), https://perma.cc/2WGU-XESR, *appended as* **Exhibit O**.  In a transcribed interview with Committee staff, Ms. Jones said Mr. Hofeller expressed interest in using the citizenship question for "the Republican redistricting effort."  Transcript, Interview with Christa Jones, Comm. on Oversight and Reform, 18 (July 31, 2019), https://perma.cc/8UMP-82FA.  According to Ms. Jones, she told him that a citizenship question "would have a negative impact on the response rate to the census, and that the Census Bureau would be concerned about the impacts to the nonresponse follow-up and the differential undercount."  *Id.* at 27.  Ms. Jones said she also knew Mr. Hofeller's partner, Dale Oldham, and that over the years he advocated for a citizenship question for purposes of redistricting and apportionment "[p]robably more times than I can remember."  *Id.* at 29.  Ms. Jones said that she was not involved in the Department of Commerce's decision to add a citizenship question to the 2020 Census, that she learned of it through news reports, and she felt "concern for the census and the Census Bureau" because the citizenship question was a "late design change" that could hurt response rates and lead to a differential undercount.  *Id.* at 58.

[59] Deposition of A. Mark Neuman at 40–43, Civ. No. 8:18-cv-01041-GJH (D. Md. Oct. 28, 2018).

## 2. The President and His Top Advisors Discussed Adding a Citizenship Question within Days of the Inauguration

36.     Within days of President Trump's inauguration, the President, the President's Chief Strategist and Senior Counselor Steve Bannon, and the President's Chief of Staff Reince Priebus held meetings with Mr. Kobach to discuss the addition of the citizenship question.  Mr. Kobach recalled two meetings in "late January–early February of 2017," one with Mr. Bannon and a second with President Trump, who may have been accompanied by Mr. Bannon and Mr. Priebus.[60]

37.     Although the White House instructed Mr. Kobach not to divulge to the Committee the content of those meetings, and his lawyer instructed him not to disclose whether he had other meetings with the White House on the citizenship question,[61] Mr. Kobach has stated publicly that he raised the issue with the President because he "wanted to make sure the [P]resident was well aware" and noted that the President "absolutely was interested in this."[62]

## 3. Secretary Ross Decided to Add the Citizenship Question Early in His Tenure and Pressed His Staff to Implement That Decision

38.     Secretary Ross was sworn in as Commerce Secretary on February 28, 2017, and immediately directed his staff to pursue the addition of a citizenship question to the Census.

39.     Just ten days after the swearing-in, Secretary Ross's Director of Policy, Earl Comstock, wrote an email to Secretary Ross regarding "Your Question on the Census,"

---

[60] Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 25–26 (June 3, 2019), https://perma.cc/3CNN-4FQA.

[61] Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: White House Interference with Oversight Committee Interview of Kris Kobach*, 3, 6 (June 7, 2019), https://perma.cc/GE57-U5Y7, *appended as* **Exhibit P**.

[62] Bryan Lowry, "That Citizenship Question on the 2020 Census? Kobach Says He Pitched It to Trump," *Kansas City Star* (Mar. 27, 2018), https://www.kansascity.com/news/politics-government/article207007581.html.

explaining that "undocumented residents (aliens)," along with all other "citizens and noncitizens" residing in the United States, "are to be included in the census and thus in the apportionment counts."  Mr. Comstock also wrote that "neither the 2000 nor the 2010 Census asked about citizenship," citing and including a *Wall Street Journal* article entitled, "The Pitfalls of Counting Illegal Immigrants."[63]

40.     During the same period, Secretary Ross was receiving input from other Trump Administration officials about their desire for a citizenship question.  In April 2017—eight months before DOJ sent its request letter—Secretary Ross's assistant wrote in an email that "Steve Bannon has asked that the Secretary talk to someone about the Census."[64]  In testimony before the Committee on March 14, 2019, Secretary Ross stated that Mr. Bannon had called to ask "if I [Secretary Ross] would take a call from Kris Kobach."  Secretary Ross recalled that Mr. Bannon "said that Kobach had a question that he thought should be asked on the census."  Secretary Ross testified that, "shortly thereafter, possibly the next day, I did have a conversation with Kris Kobach."[65]  In a subsequent email, Mr. Kobach recalled that his conversation with Secretary Ross had been "at the direction of Steve Bannon."[66]

---

[63] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Mar. 10, 2017, 8:31 PM), https://perma.cc/HT7T-5KLR?type=image, *appended as* **Exhibit Q**.

[64] Email from Brooke Alexander, Executive Assistant to the Secretary, Dep't of Com., to Hilary Geary (Apr. 5, 2017, 4:24 PM), https://perma.cc/8NJF-T73G?type=image, *appended as* **Exhibit R**.

[65] *Hearing with Commerce Secretary Ross Before the H. Comm. on Oversight and Reform*, 116th Cong. 16, 54 (Mar. 14, 2019), https://perma.cc/WL25-NTHU, excerpts *appended as* **Exhibit S**.

[66] Email from Kris Kobach, Secretary of State of Kansas, to Wendy Teramoto, Chief of Staff, Dep't of Com. (July 21, 2017, 4:34 PM), https://perma.cc/8WQG-QYEH?type=image, *appended as* **Exhibit T**.

41.     A week after Mr. Bannon contacted Secretary Ross to connect him with Mr. Kobach, on April 13, 2017, Mr. Comstock emailed Mr. Neuman—the former Transition Team member who was informally advising Secretary Ross—to ask when the Commerce Department needed to notify Congress about the questions that would be on the American Community Survey and the Decennial Census.[67]  Mr. Neuman replied, "There will be another opportunity next year."[68]

42.     While Secretary Ross was having these external conversations, he was anxiously pressing his staff to move faster to implement his decision to add the citizenship question to the 2020 Census.  Mr. Comstock, who spearheaded the effort to justify the question's addition, testified under oath that he considered it his task to "find the best rationale" for the Secretary's decision, recognizing that the Secretary's actual basis "may or may not be … legally-valid."[69]

43.     To that end, Mr. Comstock attempted to elicit requests for the citizenship question from several executive agencies, including the Department of Homeland Security and DOJ.[70]

44.     James McHenry, then-Deputy Associate Attorney General, told Mr. Comstock that DOJ would not advocate for the question's addition due to negative press coverage following FBI Director James Comey's firing.  McHenry referred Mr. Comstock to Gene

---

[67] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Mark Neuman (Apr. 13, 2017, 9:58 PM), *appended as* **Exhibit U**.

[68] Email from Mark Neuman to Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com. (Apr. 14, 2017, 3:41 AM), *appended as* **Exhibit U**.

[69] Dep. Of Earl Comstock at 267:5, 11–14, Docket No. 490-2, *New York v. U.S. Dep't of Com.*, 1:18-cv-02921 (S.D.N.Y. Nov. 5, 2018).

[70] Memorandum from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Sept. 8, 2017), https://perma.cc/QS79-8AZB, *appended as* **Exhibit V**; Transcript, Interview with Gene P. Hamilton, Comm. on Oversight and Reform (May 30, 2019), https://perma.cc/WB2Y-9EMU.

Hamilton of the Department of Homeland Security.[71]  In a transcribed interview with Committee

staff, Mr. Hamilton stated that he told Mr. Comstock that the Department of Homeland Security

"didn't really have a use for the information."[72]

45.    Mr. Comstock documented in a memorandum to Secretary Ross his failed

attempts to find an agency to request the citizenship question.[73]

46.    While Mr. Comstock was unsuccessfully shopping for a legal pretext for the

Secretary's decision, Secretary Ross was growing increasingly impatient.  On May 2, 2017,

Secretary Ross exchanged emails with multiple Commerce Department officials to demand that

they implement his decision more quickly (together, the "May 2 Emails").  In one such email to

Mr. Comstock and Commerce Department Chief Financial Officer Ellen Herbst, Ross wrote:  "I

am mystified why nothing [has] been done in response to my months old request that we include

the citizenship question."[74]  Mr. Comstock assured Secretary Ross that "we will get that in

place," explaining that "[w]e need to work with Justice to get them to request that citizenship be

added back as a census question."[75]

---

[71] Memorandum from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Sept. 8, 2017), https://perma.cc/QS79-8AZB, *appended as* **Exhibit V**.

[72] Transcript, Interview with Gene P. Hamilton, Comm. on Oversight and Reform (May 30, 2019), https://perma.cc/WB2Y-9EMU.

[73] Memorandum from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Sept. 8, 2017), https://perma.cc/QS79-8AZB, *appended as* **Exhibit V**.

[74] Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Earl Comstock, Director, Off. of Pol'y and Strategic Plann., and Ellen Herbst, Chief Financial Officer, Dep't of Com. (May 2, 2017, 10:04 AM), https://perma.cc/U6KU-NBEM?type=image, *appended as* **Exhibit W**.

[75] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., to Secretary Wilbur L. Ross, Jr., Dep't of Com. and Ellen Herbst, Chief Financial Officer, Dep't of Com. (May 2, 2017, 2:19 PM), *appended as* **Exhibit H**.

47.     Apparently contributing to Secretary Ross's sense of urgency, Mr. Kobach continued to press the need for the addition of a citizenship question.  On July 14, 2017, Mr. Kobach emailed Secretary Ross to follow up "on our telephone discussion from a few months ago."  He wrote that adding a citizenship question to the Census was "essential" and would address "the problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes."  Mr. Kobach also included a sample citizenship question.[76]

48.     Secretary Ross's Chief of Staff, Wendy Teramoto, then arranged a call between Mr. Kobach and the Secretary for July 25, 2017.[77]  Mr. Kobach told the Committee that he did not recall whether he had that additional call with the Secretary, but it is reflected on Secretary Ross's calendar.[78]

49.     Two weeks later, between August 8 and 10, 2017, Secretary Ross exchanged additional emails with Mr. Comstock regarding DOJ's potential assistance (the "August Emails").  In those exchanges, Secretary Ross pressed Mr. Comstock for an update and made clear he would not tolerate more delay:  "If [DOJ] still ha[s] not come to a conclusion please let

---

[76] Email from Kris Kobach, Kansas Secretary of State, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (July 14, 2017, 9:12 AM), https://perma.cc/P2NU-7S5P?type=image, *appended as* **Exhibit X**.  The sample citizenship question contained six potential answers and asked noncitizens for the year of their naturalization and their green card or visa status.

[77] Email from Wendy Teramoto, Chief of Staff, Dep't of Com., to Kris Kobach, Kansas Secretary of State (July 24, 2017, 1:39 PM), *appended as* **Exhibit Y**.

[78] Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 68 (June 3, 2019), https://perma.cc/3CNN-4FQA; Entry on Secretary Wilbur L. Ross, Jr.'s Calendar, "11:00 AM - 11:30 AM Call w/ Kris Kobach" (July 25, 2017), https://tinyurl.com/us5bua4, *appended as* **Exhibit Z**.

me know your contact person and I will call the AG."[79]  Comstock replied:  "Mr. Secretary—we

are preparing a memo and full briefing for you on the citizenship question ….  Since this issue

will go to the Supreme Court we need to be diligent in preparing the administrative record."[80]

Secretary Ross responded:  "I would like to be briefed on Friday by phone ….  [W]e should be

very careful, about everything, whether or not it is likely to end up in the SC."[81]

50.     In early September, as reflected in several email exchanges with Mr. Comstock

and others ("September 1 Emails"), Secretary Ross continued to express frustration about having

"received no update … [on] the issue of the census question."[82]

51.     On September 7, 2017, Mr. Comstock exchanged emails with the Commerce

Department's General Counsel, Peter Davidson, and his senior advisor, James Uthmeier, with the

subject line "Census Matter Follow-Up" ("September 7 Emails").  Mr. Comstock pressed them

---

[79] Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com. (Aug. 8, 2017, 1:20 PM), https://tinyurl.com/wv3x938, *appended as* **Exhibit AA**.

[80] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Aug. 9, 2017, 10:24 AM), https://tinyurl.com/wv3x938, *appended as* **Exhibit BB**.  In a subsequent email, James Uthmeier, the Commerce official who helped draft the withheld memorandum alongside Mr. Comstock, *see infra* ¶ 55, indicated his understanding that the data collected from the question could be used "for apportionment" by "Congress (or possibly the President)."  *See New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 553 (quoting Aug. 11, 2017 email from James Uthmeier, Senior Counsel to the General Counsel, Dep't of Com., to Earl Comstock, Deputy Chief of Staff and Director of Policy, Dep't of Com., 2 (Aug. 11, 2017)).

[81] Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com. (Aug. 10, 2017, 7:38 PM), https://tinyurl.com/wv3x938, *appended as* **Exhibit BB**.

[82] *See* Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com. (Sept. 1, 2017, 3:12 AM), appended as **Exhibit CC**; Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Sept. 1, 2017, 3:21 AM), *appended as* **Exhibit DD**.

to "set[] up a call for tomorrow," and emphasized, "The Secretary is asking for progress on this."[83]

52.     Frustrated with DOJ's unwillingness to supply him with the request he needed, on September 16, 2017, Secretary Ross asked for a call directly with then-Attorney General Jeff Sessions.[84]

53.     The following day, on September 17, 2017, a senior counselor to the Attorney General wrote to Secretary Ross's Chief of Staff, reporting that "it sounds like we can do *whatever you all need us to do* and the delay was due to a miscommunication. *The AG is eager to assist.*"[85]  Secretary Ross's Chief of Staff confirmed that the Attorney General and Secretary Ross had spoken.[86]

54.     At that point, then-Acting Assistant Attorney General John Gore undertook to draft a request on behalf of DOJ.  Mr. Gore primarily relied on the advice of political appointees, rather than career officials with experience in Voting Rights Act cases.[87]  Mr. Gore also drew

---

[83] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Peter Davidson, General Counsel, Dep't of Com., *et al.* (Sept. 7, 2017, 6:13 PM), *appended as* **Exhibit EE**.

[84] *See* Email from Danielle Cutrona, Senior Counselor, Dep't of Justice, to Wendy Teramoto, Chief of Staff, Dep't of Com. (Sept. 17, 2017, 12:10 PM), https://perma.cc/GU4B-DNHQ?type=image, *appended as* **Exhibit FF**; *see also* Transcript, Interview of Gene Hamilton, Comm. on Oversight and Reform, 29 (May 30, 2019), https://perma.cc/WB2Y-9EMU (explaining that the Attorney General had spoken directly to Secretary Ross about whether the Department could use citizenship information from the Census).

[85] Email from Danielle Cutrona, Senior Counselor, Dep't of Justice, to Wendy Teramoto, Chief of Staff, Dep't of Com. (Sept. 17, 2017, 12:10 PM), https://perma.cc/GU4B-DNHQ?type=image (emphasis added), *appended as* **Exhibit FF**.

[86] *Id.*

[87] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 555–56.

heavily on the contributions of senior officials at the Commerce Department.  He had multiple conversations with Mr. Davidson and Mr. Uthmeier about the citizenship question.[88]

55.     Mr. Uthmeier had drafted a secret memorandum ("Uthmeier Memorandum"), which had been shared with Secretary Ross, analyzing legal issues surrounding the citizenship question.[89]  Mr. Uthmeier had a copy of the memorandum, along with a personal note, hand-delivered to Mr. Gore.  In his interview with Committee staff, Mr. Gore refused to say why Mr. Uthmeier told him he wanted to deliver the memorandum by hand and refused to disclose the contents of the note or memorandum.  DOJ attorneys directed Mr. Gore not to tell the Committee the substance of any of his conversations about the citizenship question with the Attorney General, the Attorney General's staff, Mr. Davidson, or Mr. Uthmeier.[90]

56.     Mr. Gore also told Committee staff that Mr. Davidson contacted him and informed him that former Trump Transition Team member Mark Neuman would contact him about the citizenship question.[91]  Mr. Gore then spoke to Mr. Neuman and subsequently "reviewed some documents and information regarding the census" that Mr. Neuman provided him.[92]

---

[88] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 105–09 (Mar. 7, 2019), https://perma.cc/BXT5-KF8C.

[89] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Aug. 11, 2017, 4:12 PM), *appended as* **Exhibit GG**; Transcript, Interview with James Uthmeier, Comm. on Oversight and Reform, 75 (June 11, 2019), https://perma.cc/88AW-AB9W; *see also* Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Interview with James Uthmeier on Addition of Citizenship Question to Census* (June 25, 2019), https://perma.cc/3YGA-E2CY, *appended as* **Exhibit HH**.

[90] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 105–09 (Mar. 7, 2019), https://perma.cc/BXT5-KF8C.

[91] *Id.* at 22–25.

[92] *Id.* at 25.

57.     Among other documents, on October 6, 2017, Mr. Neuman provided Mr. Gore "a draft letter that would request reinstatement of the citizenship question on the census questionnaire."[93]   That draft letter contained language that matched, word-for-word, a document that had been created on August 30, 2017, and was found on the hard drive of Mr. Hofeller, the Republican gerrymandering expert.[94]

58.     This was no coincidence.  On August 30, 2017, Mr. Neuman had sent a text message to Mr. Hofeller asking him to review language for a letter that Mr. Neuman drafted to request the addition of a citizenship question.[95]   The letter, drafted to purportedly be from DOJ to the Director of the Census Bureau, stated that citizenship data was necessary to ensure "compliance with requirements of the Voting Rights Act and its application in legislative redistricting."[96]   Part of the draft letter read:  "We understand that the Bureau personnel may believe that [American Community Survey] data on citizenship was sufficient for redistricting purposes.  We wanted the Bureau to be aware that two recent Court cases have underscored that ACS data is not viable and/or sufficient for purposes of redistricting."[97]   Mr. Hofeller told Mr.

---

[93] *Id.* at 26; Text message from Mark Neuman to John Gore (Oct. 6, 2017, 11:51 AM), https://perma.cc/JQH9-WLX2, *appended as* **Exhibit II**.

[94] *See* Letter from John A. Freedman, Arnold & Porter Kaye Scholer LLP, to the Honorable Jesse M. Furman, United States District Court for the Southern District of New York, 3 (May 30, 2019), https://perma.cc/4MS8-77RG, *appended as* **Exhibit JJ;** *see also* Michael Wines, "Deceased G.O.P. Strategist's Hard Drives Reveal New Details on the Census Citizenship Question," *N.Y. Times* (May 30, 2019), https://perma.cc/CRA6-WB8C.

[95] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 11 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[96] Draft Letter from Dep't of Justice to John H. Thompson, Director, Census Bureau, https://perma.cc/R6DV-8G9G, *appended as* **Exhibit KK**.

[97] *Id.*

Neuman that his partner, an adviser for the Republican Party on political gerrymandering, "read it, and says it is fine as written."[98]

59.   Mr. Neuman met with Mr. Gore in person in October 2017.[99]  Mr. Neuman provided a "readout" of that meeting to Mr. Davidson, who immediately briefed Secretary Ross.[100]  Mr. Davidson then sent a text message to Mr. Neuman to inform him that Secretary Ross "appreciated the update and your help."[101]

60.   Meanwhile, Secretary Ross remained impatient, even as the DOJ letter he had requested was being drafted.  He personally intervened to speed the process again on November 27, 2017, writing to Mr. Davidson:  "We are out of time.  Please set up a call for me tomorrow with whoever is the responsible person at Justice.  We must have this resolved."[102]

61.   Two weeks later, on December 12, 2017, DOJ sent the Commerce Department its letter purporting to request the addition of a citizenship question to the 2020 Census.  Signed by Arthur E. Gary, General Counsel, Justice Management Division of the Department of Justice, the letter ("Gary Letter") asserted without support that the citizenship question would provide data "critical to the Department's enforcement efforts under Section 2 of the Voting Rights Act and

---

[98] Email from Thomas Hofeller to Mark Neuman (Aug. 30, 2017, 2:52 PM), https://perma.cc/KL5Y-TU48, *appended as* **Exhibit LL**.

[99] Text message from Mark Neuman to John Gore (Oct. 6, 2017, 11:51 AM), https://perma.cc/JQH9-WLX2, *appended as* **Exhibit II**.

[100] Email from Peter Davidson, Gen. Counsel, Dep't of Com., to Secretary Wilbur Ross, Dep't of Com. (Oct. 8, 2017, 6:47 PM), https://perma.cc/K8P9-E734, *appended as* **Exhibit MM**.

[101] Text Message from Peter Davidson, Gen. Counsel, Dep't of Com., to Mark Neuman (Oct. 8, 2017, 2:09 PM), https://perma.cc/TYG5-GXJV, *appended as* **Exhibit NN**.  Mr. Neuman's text messages with Mr. Gore and Mr. Davidson were among the documents withheld from the Committee by DOJ and the Department of Commerce.  They were produced to the Committee by Mr. Neuman.

[102] Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Peter Davidson, Gen. Counsel, Dep't of Com. (Nov. 27, 2017, 7:23 PM), https://perma.cc/5V7X-4F2L?type=image, *appended as* **Exhibit OO**.

its important protections against racial discrimination in voting."[103]  The letter did not mention
legislative redistricting.

62.     Census Bureau officials were immediately skeptical of DOJ's request.  On
December 22, 2017, Acting Census Bureau Director Ron Jarmin requested a meeting with Mr.
Gary.[104]  Mr. Jarmin noted that the Census Bureau believed it could provide DOJ with the data it
requested without adding a citizenship question to the Census, and that not adding the citizenship
question "would result in higher quality data produced at lower cost."[105]  Despite its purported
interest in that goal, "DOJ declined the Census Bureau's offer to discuss alternative ways to meet
DOJ's stated need for improved citizenship data."[106]  Mr. Gore told the Committee that "the
Attorney General decided not to have the meeting" requested by the Census Bureau.[107]

63.     Secretary Ross similarly rejected the advice of Census Bureau officials and other
top experts who advocated against adding a citizenship question.  In January and March of 2018,
Dr. John Abowd, the Census Bureau's associate director for research and methodology and chief
scientist, informed Secretary Ross through his staff that the proposed citizenship question would
be "very costly, harm[] the quality of the census count, and would use substantially less accurate

---

[103] Letter from Arthur E. Gary, Gen. Counsel, Justice Management Division, Dep't of
Justice to Ron Jarmin, Acting Director, Census Bureau (Dec. 12, 2017),
https://tinyurl.com/vemtmxx, *appended as* **Exhibit PP**.

[104] Email from Ron Jarmin, Acting Director, Census Bureau, to Arthur Gary, Gen.
Counsel, Justice Management Division, Dep't of Justice (Dec. 22, 2017, 3:32 PM), *appended as*
**Exhibit QQ**.

[105] *Id.*

[106] *Dep't of Com. v. New York*, 139 S. Ct. at 2572, 2575.

[107] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 149 (Mar.
7, 2019), https://perma.cc/BXT5-KF8C.  Mr. Gore refused to answer questions as to why the
Attorney General declined the Census Bureau's offer.  *See id.* at 148.

citizenship status data than are available from administrative sources."[108]  He provided a

"conservative" estimate that including the citizenship question would cause a 5.1% decline in

self-response among noncitizen households, a 432,000 reduction in correct enumerations, and

additional costs of at least $27.5 million, and he warned that the actual numbers could be "much

greater."[109]  On January 26, 2018, six former Census Bureau Directors from both Republican and

Democratic administrations wrote to Secretary Ross that "adding an untested question on

citizenship status at this late point in the decennial planning process would put the accuracy of

the enumeration and success of the census in all communities at grave risk."[110]  In March 2018,

before Ross's formal announcement of his decision, VRA experts from outside of the

government likewise informed Secretary Ross that DOJ's statements were "false" because "a

mandatory question on citizenship ha[d] never been necessary" to enforce the VRA.[111]

64.     Having long decided on his course of action, Secretary Ross systematically

disregarded these experts' concerns.  He also chose to withhold key context and information

from the Census Bureau, including the fact that he and his aides had been determined to add a

citizenship question since early 2017.  As the District Court for the Southern District of New

---

[108] Memorandum from John Abowd, Chief Scientist, Census Bureau, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Jan. 19, 2018), https://tinyurl.com/ryplsoo, *appended as* **Exhibit RR**; Memorandum from John Abowd, Chief Scientist, Census Bureau, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Mar. 1, 2018), https://tinyurl.com/vcg2qbk, *appended as* **Exhibit SS**.

[109] *Id.*

[110] Letter from Former Census Bureau Directors to Secretary Wilbur L. Ross, Jr., Dep't of Com., 1 (Jan. 26, 2018), https://perma.cc/9E3J-MAM4, *appended as* **Exhibit TT**.

[111] Letter from Constitutional Accountability Center, *et al.*, to Secretary Wilbur L. Ross, Jr., Dep't of Com., at 2 (Mar. 22, 2018), https://perma.cc/A3UU-B95Y, *appended as* **Exhibit UU**.

York later found, "the degree to which the origins of the decision were kept from those who worked hard to promptly evaluate DOJ's request was unusual and noteworthy."[112]

### B.   Secretary Ross and Commerce Department Staff Repeatedly Misled the Public, Congress, and the Courts

65.     On March 26, 2018, Secretary Ross issued a memorandum announcing that the 2020 Census questionnaire would include a question on citizenship.  In that memorandum, Secretary Ross stated falsely that consideration of whether to add the citizenship question began with receipt of the Gary Letter in December 2017 and that the decision to add the question was made because of, and in response to, DOJ's articulation of a need to enforce the Voting Rights Act.[113]

66.     In fact, Secretary Ross decided to add a citizenship question to the 2020 Census long before—and for reasons that had nothing to do with—DOJ's letter concerning the VRA.  As the Supreme Court concluded, the VRA rationale was "contrived," a pretextual "distraction" intended to justify a decision that Secretary Ross had already made for other reasons.[114]

67.     That Secretary Ross made the decision to add a citizenship question long before he received the Gary Letter is evident not only from the foregoing sequence of events but also from specific correspondence between Secretary Ross and Commerce Department staff.  For example, as early as May 2017, Secretary Ross expressed frustration about the failure of his staff

---

[112] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 567.

[113] Memorandum from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Karen Dunn Kelley, Under Secretary for Economic Affairs, Dep't of Com., *Reinstatement of a Citizenship Question on the 2020 Decennial Census Questionnaire* (Mar. 26, 2018), https://perma.cc/2XDF-Q7E8, *appended as* **Exhibit A**.

[114] *Dep't of Com. v. New York*, 139 S. Ct. at 2575–76; *see New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 570 ("Those efforts make clear that the goal of Secretary Ross and his aides was to launder their request through another agency—that is, to obtain cover for a decision that they had already made—and that the reasons underlying any request from another agency were secondary, if not irrelevant.").

to implement his decision, which he described even then as "months old."[115]  All of Mr.

Comstock's subsequent work to obtain a formal request from another agency simply represented

efforts to execute the Secretary's decision and obscure its actual rationale—in Mr. Comstock's

own words, to "get [the citizenship question] in place" by "get[ting] [DOJ] to request" that it be

included.[116]  Mr. Comstock knew as early as August 9, 2017, that "the [citizenship question]

issue [would] go to the Supreme Court," and therefore emphasized in an email to Secretary Ross

the need to "be diligent in preparing the administrative record."[117]  As the District Court for the

Southern District of New York observed, "the only reason to believe that 'the issue' would

definitely 'go to the Supreme Court' was if Secretary Ross had decided to add the question."[118]

68.     Nevertheless, Secretary Ross and other Commerce Department officials repeated

the same false narrative again and again over the course of the following year to the public, to

Congress, and to the courts.

69.     At a March 20, 2018, hearing before a House subcommittee, when asked if "the

President or anyone else in the White House [had] directed [him] to add this or a similar question

---

[115] Email from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Earl Comstock, Director, Off. of Pol'y and Strategic Plan., and Ellen Herbst, Chief Financial Officer, Dep't of Com. (May 2, 2017, 10:04 AM), https://perma.cc/U6KU-NBEM?type=image, *appended as* **Exhibit W**.

[116] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. and Ellen Herbst, Chief Financial Officer, Dep't of Com. (May 2, 2017, 2:19 PM), *appended as* **Exhibit H**.

[117] Email from Earl Comstock, Director, Off. of Pol'y and Strategic Plan., Dep't of Com., to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Aug. 9, 2017, 10:24 AM), https://perma.cc/SRG9-FD4W?type=image, *appended as* **Exhibit BB**.

[118] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 568.

to the 2020 Census," Secretary Ross falsely testified that the Commerce Department was

"responding solely to the Department of Justice's request."[119]

70.     Later in the same hearing, when asked if "the President or anyone in the White

House discussed with you or anyone on your team about adding this citizenship question,"

Secretary Ross answered, "I am not aware of any such [discussion]"[120]—even though Secretary

Ross himself had spoken with Senior White House advisor Steve Bannon about the issue in April

2017.

71.     On March 22, 2018, Secretary Ross again provided false testimony before a

different House committee.  When asked "whether the Department of Commerce plans to

include the citizenship question in the 2020 Census," Secretary Ross responded that the

"Department of Justice, as you know, initiated the request for inclusion of the citizenship

question" on the Census form.[121]

72.     Once again, on May 10, 2018, before a Senate subcommittee, Secretary Ross

falsely testified that DOJ had initiated the request.  Senator Patrick Leahy questioned whether a

citizenship question was actually "necessary to enforce the Voting Rights Act."  He asked

Secretary Ross:  "Why this sudden interest in that when the department that's supposed to

---

[119] *Hearing Before the H. Appropriations Subcomm. on Com., Justice, Science, & Related Agencies: FY19 Budget – Department of Commerce*, 115th Cong. 14–15 (Mar. 20, 2018), *webcast available at* https://tinyurl.com/rnzty5f; *excerpt appended as* **Exhibit C** (emphasis added); *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 571–72 (finding that Ross's testimony to Congress was an attempt to "avoid disclosure of, if not conceal, the real timing and reasons for the decision to add the citizenship question") (internal citations omitted).

[120] *Id*. at 546.

[121] *Hearing with Commerce Secretary Ross Before the H. Comm. on Ways and Means*, 115th Cong. 51 (Mar. 22, 2018), https://perma.cc/Y3H3-F8MA, *excerpt appended as* **Exhibit B**.

enforce violations doesn't see any problems?"  Secretary Ross responded:  "Well, the Justice Department is the one who made the request of us."[122]

73.     The Commerce Department continued to advance this false account when, in April 2018, dozens of plaintiffs sued in the Southern District of New York to challenge the decision to add the citizenship question.[123]

74.     As required in litigation alleging violations of the Administrative Procedure Act,[124] the Commerce Department filed with the Court an Administrative Record that purported to contain the materials Secretary Ross considered in making his decision.  That Administrative Record contained only the Gary Letter, various analyses of that request by the Census Bureau, and Secretary Ross's March 26, 2018, memorandum.[125]  It contained no hint that the Secretary had considered, much less decided on, the addition of the citizenship question months before DOJ made its request.[126]

75.     Only at DOJ's "urging" did the Commerce Department thereafter submit to the Court more information that began to reveal the true course of events.[127]

76.     On June 21, 2018, "to provide further background and context regarding" Secretary Ross's decision, the Commerce Department added to the Administrative Record a one-

---

[122] *Hearing Before Sen. Comm. on Appropriations, Subcomm. on Commerce, Justice, and Science and Related Agencies on FY 2019 Funding Request for the Com. Dep't*, 115th Cong. 2018 WL 2179074, 26–27 (May 10, 2018), *excerpt appended as* **Exhibit VV**.

[123] Hansi Lo Wang, "More than 2 Dozen States, Cities Sue to Block Census Citizenship Question," *NPR* (Apr. 3, 2018), https://perma.cc/JST2-L7RP.

[124] *See, e.g.*, *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419–20 (1971).

[125] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 530–47.

[126] *See id.* at 547–48.

[127] *Dep't of Com. v. New York*, 139 S. Ct. at 2564.

page "Supplemental Memorandum" signed by Secretary Ross himself.[128]  In the Supplemental

Memorandum, Secretary Ross acknowledged that "[s]oon after [his] appointment as Secretary of

Commerce," he had begun taking steps "to reinstate a citizenship question."[129]  He also admitted

that "other senior Administration officials" (whom he did not name) "had previously raised" the

issue.[130]  He continued:  "My staff and I thought reinstating a citizenship question could be

warranted, and we had various discussions with other governmental officials about reinstating a

citizenship question to the Census."[131]  Secretary Ross further stated that "[a]s part of that

deliberative process," he and his staff had "inquired whether the Department of Justice … would

support, and if so would request, inclusion of a citizenship question as consistent with and useful

for enforcement of" the VRA.[132]  According to the Secretary, DOJ "formally" requested

reinstatement of the citizenship question after that inquiry.[133]

77.     The District Court then ordered extra-record discovery, which forced the

production of evidence that "reveals a very different set of events from the one described in the

initial Administrative Record, the [March 2018] Ross Memo, and Secretary Ross's congressional

testimony."[134]  In fact, as the court explained, the new information confirmed that "Secretary

Ross's first version of events, set forth in the initial Administrative Record, the Ross Memo, and

*his congressional testimony*, was materially inaccurate."[135]

---

[128] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 547.

[129] *Id.* at 548.

[130] *Id.*

[131] *Id.* (internal quotation marks omitted)

[132] *Id.* (emphasis omitted).

[133] *Dep't of Com. v. New York*, 139 S. Ct. at 2564.

[134] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 548.

[135] *Id.* at 547 (emphasis added).

33

78.     The District Court, in January 2019, concluded that the record constituted "a strong showing of bad faith" and "improper behavior" by Secretary Ross and his staff,[136] noting "the sheer number of ways in which Secretary Ross and his aides tried to avoid disclosure of, if not conceal, the real timing and the real reasons for the decision."[137]   That record, the District Court concluded, rebutted the presumption of regularity that usually applies to Executive Branch conduct.[138]   The District Court inferred "from the various ways in which Secretary Ross and his aides acted like people with something to hide that they *did* have something to hide."[139]

79.     Following the District Court's decision, Secretary Ross testified before the Committee on March 14, 2019.  When Chairman Cummings asked Secretary Ross to clarify whether his "interest in the citizenship question" related to "counting undocumented immigrants for apportionment purposes," Secretary Ross testified, "No, sir, it did not."[140]   He reiterated that the Commerce Department and Census Bureau "were responding to" DOJ's request when they decided to add the citizenship question.[141]

80.     The Supreme Court endorsed the District Court's finding of Secretary Ross's bad faith in June 2019.  Noting that inquiry into "the mental processes of administrative decisionmakers" is permitted only upon a "strong showing of bad faith or improper behavior," the Supreme Court concluded that, although the District Court's order permitting "extra-record

---

[136] *Id*. at 662.

[137] *Id.* at 571.

[138] *Id.* at 662.

[139] *Id.*

[140] *Hearing with Commerce Secretary Ross Before the H. Comm. on Oversight and Reform*, 116th Cong. 15 (Mar. 14, 2019), https://perma.cc/WL25-NTHU*, excerpts appended as* **Exhibit S**.

[141] *Id.*

discovery" had been "premature," the court was "ultimately justified" in invoking that exception in light of the information that emerged.[142]

81.     Significantly, President Trump later confirmed that the Supreme Court was correct in concluding that the VRA rationale was contrived and pretextual.  When asked the "reason … for trying to get a citizenship question on the census," President Trump said nothing about the VRA.  Instead, directly contradicting Secretary Ross's testimony to the Committee, he pointed to Congressional districting:  "You need it for Congress, for districting.  You need it for appropriations.  Where are the funds going?  How many people are there?  Are they citizens? Are they not citizens?"[143]

### C.     Defendants Have Obstructed the Committee's Investigation and Have Refused to Comply with Valid Committee Subpoenas

#### 1.     The Commerce Department Has Refused to Produce Key Documents Required by the Ross Subpoena

82.     On January 8, 2019, the Committee renewed Rep. Cummings's previous request for documents from the Commerce Department regarding the addition of the citizenship question.[144]  The request targeted several relevant categories of documents, including communications regarding the Census Bureau's concerns, analyses of the impact of the citizenship question, communications with outside and internal parties on the subject of the citizenship question, and documents relating to the budget and timing of the 2020 Census.  As

---

[142] *Dep't of Com. v. New York*, 139 S. Ct. at 2573–74.

[143] *Remarks by President Trump Before Marine One Departure* (July 5, 2019), https://perma.cc/QK6V-833H, *appended as* **Exhibit WW**.

[144] *See supra* n. 9.

part of that request, Chairman Cummings also asked for responses to several written questions and requested that Secretary Ross testify before the Committee on February 12, 2019.[145]

83.    The Commerce Department did not produce any documents by the requested return date of January 22, 2019.  The Commerce Department sent a preliminary, incomplete production on January 29, 2019.[146]  This production and subsequent productions primarily consisted of documents that were already publicly available, heavily redacted, or non-responsive.  The Commerce Department did not provide complete responses to the Committee's written questions.

84.    After discussions with the Commerce Department, the Committee agreed to reschedule the Secretary's testimony for March 14, 2019.[147]

85.    On March 5, 2019, the Commerce Department sent a letter seeking to postpone the Secretary's previously agreed-upon testimony before the Committee.  The letter requested that the Committee postpone the hearing until the end of April—by more than six weeks—so that Secretary Ross could have additional time to prepare his testimony and to produce documents.[148]

---

[145] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Jan. 8, 2019), https://perma.cc/9V2P-3JN4, *appended as* **Exhibit XX**.

[146] *See* Letter from Michael Platt, Jr., Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Jan. 29, 2019), https://perma.cc/3UA5-LE4D, *appended as* **Exhibit YY**.

[147] Press Release, *Commerce Secretary Wilbur Ross to Testify Before Oversight Committee*, Comm. on Oversight and Reform (Jan. 22, 2019), https://perma.cc/JMZ2-2KAW, *appended as* **Exhibit ZZ**.

[148] Letter from Michael Platt Jr., Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform, 3 (Mar. 5, 2019), https://perma.cc/7C38-A8CZ, *appended as* **Exhibit AAA**.

86.     Chairman Cummings responded on March 6, stating that the Secretary had already had nine weeks since the initial invitation, so the hearing would remain on March 14.  In an effort to accommodate the Commerce Department's concerns, however, Chairman Cummings agreed to the Secretary's requests that the scope of the hearing be limited, and the Committee prioritized one set of documents to be produced prior to the hearing:  "All communications between or among officials from the Department of Commerce, the Census Bureau, and any other office or entity inside or outside of the government regarding the addition of a citizenship question."  The Committee emphasized that these documents were "key to [its] understanding of the communications around the addition of the citizenship question," and that "the Committee must receive [them] in unredacted form."  Chairman Cummings also warned Secretary Ross "the existence of separate civil litigation is not a valid basis to withhold these documents from the Committee."[149]

87.     The Commerce Department subsequently produced some additional documents in response to the Committee's prioritization request but did so with significant redactions.  Among the bases for the redactions cited were the attorney-client privilege, attorney work product protections, and "the confidentiality of deliberative and pre-decisional communications among Executive Branch officials."[150]

88.     On March 7, Secretary Ross confirmed he would appear to testify on March 14 "to answer the Committee on Oversight and Reform's … questions on the preparations for the

---

[149] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Mar. 6, 2019), 3, https://perma.cc/Z9KZ-9Q78, *appended as* **Exhibit BBB**.

[150] Letter from Ross Branson, Deputy Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Mar. 19, 2019), 1, https://perma.cc/L4FJ-HC9Z, *appended as* **Exhibit CCC**.

2020 Census and the addition of the citizenship question."[151]  He did not indicate that any

documents or information would be withheld.

89.     At the March 14 hearing, despite having agreed in advance to answer the

Committee's questions, Secretary Ross refused to provide key information or priority documents

requested by the Committee, stating:  "I will certainly address the question to my staff and to my

counsel," but that, "to the degree that this is involved in pending litigation, there may be

problems."  At that point, Chairman Cummings offered Secretary Ross an additional five days to

"consult with your lawyers" and "produce all of the priority documents this committee has

requested."  Chairman Cummings explained, however, that the Committee would not accept any

argument based on ongoing litigation and that if Secretary Ross did not comply, the Committee

would have no choice but to consider issuing a subpoena for documents.[152]

90.     The next day, Committee staff followed up with the Commerce Department to

offer additional accommodations.  In an email to Commerce Department staff, Committee staff

provided a further narrowed list of 11 priority documents within the Committee's previously

identified set of priority documents and asked for their production, without redactions, by

March 19, 2019.[153]

91.     The 11 documents were carefully selected to further the Committee's legislative,

investigative, and oversight interests with the least possible burden on the Commerce

---

[151] Letter from Secretary Wilbur L. Ross, Jr., Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Mar. 7, 2019), https://perma.cc/QC6L-K389, *appended as* **Exhibit DDD**.

[152] *Hearing with Commerce Secretary Ross Before the H. Comm. on Oversight and Reform*, 116th Cong. 90 (Mar. 14, 2019), https://perma.cc/WL25-NTHU, *excerpts appended as* **Exhibit S**.

[153] Email from Staff, Comm. on Oversight and Reform, to Staff, Dep't of Com., "Oversight Committee requests" (Mar. 15, 2019, 6:05 PM), *appended as* **Exhibit EEE**.

Department.  They included (1) the Uthmeier Memorandum; (2) a set of eight email chains predating the Gary Letter—the May 2 Emails, the August Emails, the September 1 Emails, and the September 7 Emails—that reflected internal communications by high-level Commerce Department officials regarding the decision to add a citizenship question; (3) an email chain in which Commerce officials and White House officials discuss "notifying Congress on the DOJ request" ("December Emails"); and (4) an email chain between high-level Commerce Department officials regarding memoranda on the citizenship question, written in the weeks before Secretary Ross's public announcement of the citizenship question ("February 2018 Emails").

92.    On March 19, 2019, the Commerce Department replied that it did not have access to the Uthmeier Memorandum, asserted that it had produced 10 of the 11 documents, and stated that it had withheld an attachment to one of the August Emails on the basis of attorney-client privilege.[154]  The letter did not acknowledge that the 10 documents were significantly redacted, nor did it clarify how the Commerce Department could have no electronic or other copies of the Uthmeier Memorandum, which Commerce Department officials had drafted in the first instance.

93.    On March 26, 2019, the Commerce Department demanded that the Committee identify "specific, particularized information" needs for each of the requested priority documents and for transcribed interviews that had been requested separately.[155]  Although the Committee is

---

[154] Letter from Ross Branson, Deputy Assistant Secretary for Legislative and Intergovernmental Affairs, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Mar. 19, 2019), https://perma.cc/L4FJ-HC9Z, *appended as* **Exhibit CCC**.

[155] Letter from Ross Branson, Deputy Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Mar. 26, 2019), https://perma.cc/7DZM-2ZWB, *appended as* **Exhibit FFF**.  In addition to its document requests, the Committee requested transcribed interviews with Commerce Department officials who played critical roles in the addition of the citizenship question:  Earl Comstock, Peter Davidson, and James Uthmeier.  *See* Email from Staff, Comm.

under no obligation to meet such a demand, Chairman Cummings replied with a detailed

description of the Committee's needs.[156] The Commerce Department continued to refuse to

produce the unredacted priority documents, despite repeated follow-up by Committee staff.

94.     On April 2, 2019, the Committee voted on a bipartisan basis to authorize the Ross

Subpoena to compel production of key documents, including the 11 previously identified key

documents and one set of documents from the original request of January 8, 2019.  The latter set

of documents encompassed internal and external communications between January 20 and

December 12, 2017, regarding the addition of the citizenship question.[157]

95.     Following the issuance of the Ross Subpoena, the Commerce Department did

produce additional documents but failed to produce an unredacted copy of any of the 11 key

---

on Oversight and Reform, to Staff, Dep't of Com., "RE: Oversight Committee requests" (Mar. 20, 2019, 7:25 PM), *appended as* **Exhibit GGG**; Press Release, *Committee Seeks Transcribed Interviews in Interior and Census Investigations*, Comm. on Oversight and Reform (May 7, 2019), https://perma.cc/CT44-WQ88, *appended as* **Exhibit HHH**.  The Commerce Department initially refused to make them available for interviews, but agreed to make them available on June 4, 2019, after the Committee scheduled a vote to authorize subpoenas for their testimony. *See Report, Together with Minority and Supplemental Views, A resolution recommending that the House of Representatives find William P. Barr, Attorney General of the United States, and Wilbur L. Ross, Jr., Secretary of Commerce, in Contempt of Congress for Refusal to Comply with Subpoenas Duly Issued by the Committee on Oversight and Reform*, 116th Cong. (June 24, 2019), 23–24 (hereinafter "Contempt Report"), *appended as* **Exhibit III**.  During the transcribed interviews, the Commerce Department's counsel instructed the witnesses not to answer hundreds of the Committee's substantive questions.  *See* Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Interview of James Uthmeier on Addition of Citizenship Question to Census*, 1, 3–4 (June 25, 2019), https://perma.cc/3YGA-E2CY, *appended as* **Exhibit HH**; Transcript, Interview with Peter Davidson, Dep't of Com. (June 18, 2019), https://perma.cc/8VLB-8JQL; Transcript, Interview with Earl Comstock, Dep't of Com. (June 21, 2019), https://perma.cc/K4ZJ-XZKC.

[156] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Mar. 29, 2019), https://perma.cc/T4HF-7AVA, *appended as* **Exhibit JJJ**.

[157] *See* Press Release, *Committee Approves Subpoenas in Security Clearance and Census Investigations*, Comm. on Oversight and Reform (Apr. 2, 2019), https://perma.cc/V9J4-R8UT?type=image, *appended as* **Exhibit KKK**.  The Ross Subpoena is appended as **Exhibit LLL** to this Complaint.

documents.  Many of the documents it did produce were heavily redacted, did not include

attachments, or were not responsive to the Ross Subpoena.

96.    On May 8, 2019, Chairman Cummings again wrote to Secretary Ross, this time

requesting a personal meeting to discuss the Commerce Department's actions:

> I am writing to request a meeting to discuss the Department's
> refusal to produce documents pursuant to a subpoena authorized by
> the Committee on a bipartisan basis regarding your decision to add
> a citizenship question to the 2020 Census.  I would like to meet
> with you in person, preferably in the next two weeks, to ensure that
> you are fully apprised of the actions of your staff and to determine
> whether there is any way to resolve this impasse before initiating
> potential enforcement action.[158]

97.    Secretary Ross responded on May 20, 2019, declining to meet with Chairman

Cummings.  Instead, he reiterated the Commerce Department's already fulfilled demand for the

"particularized legislative need" for each of the documents and reasserted vague claims of

Executive Branch confidentiality interests (*see supra* ¶ 93).[159]

98.    Committee staff spoke to Commerce Department staff on May 31, 2019, to seek a

resolution of these issues.  Commerce Department staff did not commit to providing any of the

key unredacted documents.  Committee staff warned that if the Commerce Department did not

cooperate with the investigation, the Committee would consider taking further action.

99.    On June 3, 2019, the Committee notified Secretary Ross that it was scheduling a

vote to hold him in contempt of Congress for failing to comply with the Ross Subpoena.  The

---

[158] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (May 8, 2019), https://perma.cc/VH2X-FJZQ, *appended as* **Exhibit MMM**.

[159] Letter from Wilbur L. Ross Jr., Secretary of Commerce, to the Honorable Elijah E. Cummings, U.S. House of Representatives (May 20, 2019), https://perma.cc/U77L-AH4S, *appended as* **Exhibit NNN**.  While the Committee has described its need for these documents in detail, it was not required to do so.

Committee offered to postpone the vote if the 11 priority documents identified in Item 1 of the Ross Subpoena were produced without redactions by June 6, 2019.[160]

100.    The Commerce Department produced no additional documents by the Committee's June 6 deadline.  In a letter to the Committee that evening, the Commerce Department claimed that holding Secretary Ross in contempt was "premature" but refused to provide unredacted copies of any of the key documents required by the Ross Subpoena and offered no accommodation with respect to those documents.[161]  As described below, *see infra* ¶ 120, the Commerce Department later notified the Committee, on the day of the Committee's contempt vote, that the President had asserted a blanket claim of Executive Privilege over the remaining documents, including "an additional, significant number of documents responsive to the Committee's request" that the Commerce Department acknowledged it possessed and had been "prepared to provide" to the Committee.[162]  The Commerce Department has made no additional productions in response to the Ross Subpoena since the Committee's June 12, 2019, contempt vote.[163]

---

[160] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (June 3, 2019), https://perma.cc/65J6-US8A, *appended as* **Exhibit OOO**.

[161] Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 6, 2019), https://perma.cc/Y27K-WJHC, *appended as* **Exhibit PPP**.

[162] Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/9MB7-6TL9, *appended as* **Exhibit QQQ**.

[163] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 8 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

### 2.      DOJ Has Refused to Produce Key Documents Required by the Barr Subpoena

101.     Like the Commerce Department, DOJ has refused to produce documents in response to document requests, and ultimately a Subpoena, from the Committee.[164]

102.     In connection with the Committee's investigation, Chairman Cummings renewed his earlier request for documents from DOJ on February 12, 2019.[165]  Among other categories of documents, the Committee's letter requested "[a]ll documents and communications within the Department of Justice and with outside entities regarding the request to add a citizenship question to the census, including but not limited to the White House, the Commerce Department, the Republican National Committee, the Trump Campaign, or Members of Congress."[166]  The Committee understood that this request would encompass drafts of the Gary Letter.

103.     In the weeks that followed, the Committee worked to accommodate DOJ and thereby to facilitate the production.  On March 1, the Committee identified a subset of "high-priority" documents to be produced first, including an unredacted copy of the Uthmeier Memorandum and the communications of several Commerce Department and DOJ officials regarding the citizenship question.[167]

104.     DOJ did not provide the Uthmeier Memorandum or unredacted copies of the other priority documents.  Instead, DOJ produced court filings and other documents relating to its

---

[164] The Barr Subpoena demands documents that partially overlap with those demanded by the Ross Subpoena, including the Uthmeier Memorandum and communications between DOJ and the Commerce Department.  Barr Subpoena, *appended as* **Exhibit RRR**.

[165] *See supra* n. 9.

[166] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Matthew Whitaker, Acting Att'y Gen., Dep't of Justice (Feb. 12, 2019), 2, https://perma.cc/5MK3-DQKQ, *appended as* **Exhibit SSS**.

[167] Email from Staff, Comm. on Oversight and Reform, to Staff, Dep't of Justice, "RE: Letter from Chairman Elijah E. Cummings, House Committee on Oversight and Reform" (Mar. 1, 2019 7:13 PM), *appended as* **Exhibit TTT**.

ongoing litigation, including documents that were heavily redacted and already largely publicly available.[168]

105.    On March 20, 2019, Committee staff contacted DOJ staff and again requested the production of the priority documents.  Committee staff noted that if DOJ could not commit to producing them, "the Committee will have no choice but to consider taking additional steps to ensure compliance."[169]  DOJ responded on March 22, 2019, stating only that it would "continue to reevaluate" the Committee's requests.[170]

106.    On April 2, 2019, Chairman Cummings sent a letter to DOJ explaining that the Supreme Court has made clear that ongoing litigation does not preclude Congress from investigating an issue.[171]

107.    Later that day, after the Committee took a bipartisan vote in support of the Chairman compelling the production of these documents, the Chairman issued the Barr Subpoena.  The Barr Subpoena reiterated the Committee's demand for the Uthmeier Memorandum and its February 12, 2019 request for "[a]ll documents and communications … within the Department of Justice and with outside entities regarding the request to add a

---

[168] *See* Contempt Report, 23, *appended as* **Exhibit III**.

[169] Email from Staff, Comm. on Oversight and Reform, to Staff, Dep't of Justice, "RE: Transcribed Interview Follow Up" (Mar. 20, 2019, 7:25 PM), *appended as* **Exhibit UUU**.

[170] Email from Staff, Dep't of Justice, to Staff, Comm. on Oversight and Reform, "RE: Transcribed Interview Follow Up" (Mar. 22, 2019, 3:27 PM), *appended as* **Exhibit VVV**.

[171] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice (Apr. 2, 2019), https://perma.cc/PH7Q-XNW9 (citing *Hutcheson v. United States*, 369 U.S. 599, 618 (1962)), *appended as* **Exhibit WWW**.

citizenship question."  In a further accommodation, the Committee narrowed the latter request to

the time frame of January 20, 2017, to December 12, 2017.[172]

108.    Since that time, DOJ has produced some documents, but many are heavily

redacted, do not include attachments, or are not responsive to the Barr Subpoena.  Of particular

note, DOJ has refused to produce the Uthmeier Memorandum or drafts of the Gary Letter,

despite the clear importance of these documents to the Committee's investigation and

understanding of how the Commerce Department and DOJ developed a false rationale to justify

the addition of the citizenship question.

109.    In addition, DOJ has not produced privilege logs.  Instead, the cover letters

accompanying DOJ's productions all contain the same broad and general disclaimers, stating that

DOJ "may have made redactions relating to ongoing investigations, enforcement activities, and

certain law enforcement operations, methods or techniques," and "may have made limited

redactions to preserve the deliberative, attorney-client, and/or attorney-work product

protections."[173]

110.    On June 3, 2019, the Committee notified Attorney General Barr that it was

scheduling a vote to hold him in contempt of Congress for failing to comply with the Barr

Subpoena.  The Committee offered to postpone the vote if a subset of the documents identified in

---

[172] Press Release, *Committee Approves Subpoenas in Security Clearance and Census Investigations*, Comm. on Oversight and Reform (Apr. 2, 2019), https://perma.cc/V9J4-R8UT?type=image, *appended as* **Exhibit KKK**. The Barr Subpoena is appended as **Exhibit RRR**.

[173] *See, e.g.*, Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Apr. 11, 2019), https://perma.cc/R2ZF-FMHF, *appended as* **Exhibit XXX**.

the Barr Subpoena—in particular, the Uthmeier Memorandum and all drafts of the Gary Letter—was produced by June 6, 2019.[174]

111.    On June 6, DOJ sent a letter to the Committee that called a contempt vote "premature" but refused to produce the documents identified in the Barr Subpoena and did not offer any accommodation with respect to those documents.[175]  DOJ's letter asserted that drafts of the Gary Letter were "appropriately withheld based on the deliberative process privilege," and, repeating the position DOJ had taken in civil litigation, that the Uthmeier Memorandum was "appropriately withheld on attorney-client privilege grounds."[176]  The letter also noted that DOJ had "identified tens of thousands more responsive pages that it [was] in the process of producing" and promised to "continue to produce documents to the Committee as appropriate."[177]  DOJ has since made no further productions despite its admission that it has identified additional responsive documents.

### 3.    The Attorney General Ordered a Subordinate to Defy the Committee's Deposition Subpoena

112.    On May 18, 2018, then-Acting Assistant Attorney General John Gore testified at a Committee hearing.  Citing "pending litigation, the potential effect of public statements on ongoing court cases and the Department's litigation constraints," Mr. Gore refused to disclose

---

[174] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice, 6 (June 3, 2019), https://perma.cc/3PSZ-C4ZR, *appended as* **Exhibit YYY**.

[175] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform, 2 (June 6, 2019), https://perma.cc/Q5HG-2R5A, *appended as* **Exhibit J**.

[176] *Id.*

[177] *Id.*

any information beyond what was already included in the Gary Letter or "other publicly available information."[178]

113.    During a transcribed interview with Committee staff on March 7, 2019, DOJ counsel directed Mr. Gore not to answer any questions about the content of conversations or documents relating to the citizenship question.  DOJ counsel cited "ongoing litigation" and "other executive branch confidentiality interests" as the basis for instructing Mr. Gore not to answer the Committee's questions.  In total, Mr. Gore refused to answer more than 150 questions asked by Committee staff.[179]

114.    On April 2, 2019, following a bipartisan vote of the Committee, the Chairman issued a subpoena compelling Mr. Gore to testify.[180]  In response, DOJ wrote to the Committee that Attorney General Barr had personally directed Mr. Gore not to comply with the subpoena and not to appear for the deposition because of the Committee's longstanding deposition rule prohibiting agency counsel from attending—a rule that was adopted unanimously by the Committee in January 2019 and which has been in place for more than a decade under both Republican and Democratic Chairmen.  During that period, no Executive Branch official or

---

[178] *Hearing Before H. Comm. on Oversight and Gov't Reform: Progress Report on the 2020 Census*, 115th Cong., 2–3 (May 18, 2018), *webcast available at* https://tinyurl.com/t6aw6r8, *excerpt appended as* **Exhibit ZZZ**.  Mr. Gore further explained: "Pending litigation is a limitation in these circumstances.  Other limitations include the need for the Department of Justice to facilitate open and robust discussion before decisions are made.  For that reason, the department does not talk about deliberations or privileged conversations that might happen in an attorney-client context."  *Id.* at 5.

[179] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 8 (Mar. 7, 2019), https://perma.cc/BXT5-KF8C; *see also* Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Supplemental Memo on Transcribed Interview with John Gore Regarding Addition of Citizenship Question to Census* (Mar. 14, 2019), https://perma.cc/KJP5-9538, *appended as* **Exhibit AAAA**.

[180] Press Release, *Committee Approves Subpoenas in Security Clearance and Census Investigations*, Comm. on Oversight and Reform (Apr. 2, 2019), https://perma.cc/V9J4-R8UT?type=image, *appended as* **Exhibit KKK**.

private sector individual has ever refused to attend a deposition on these grounds,[181] and some of the most senior aides to previous Presidents have attended depositions without agency counsel.[182] DOJ nevertheless claimed that the bipartisan rule "unconstitutionally encroaches on fundamental Executive Branch interests." DOJ concluded: "As a result, the Attorney General has determined that Mr. Gore will not appear at the April 11 deposition unless a Department representative may accompany him."[183]

115.   Despite extensive efforts by the Committee in the ensuing months to negotiate with DOJ and accommodate its purported interests,[184] Attorney General Barr refused to permit Mr. Gore to testify and continued to instruct him to defy a congressional subpoena.[185]

116.   This was but one instance among many in which DOJ or the Commerce Department impeded interviews with Committee staff. Over the course of this investigation, the Departments' lawyers have directed witnesses not to answer hundreds of questions. DOJ and

---

[181] Contempt Report, 25–26, *appended as* **Exhibit III**.

[182] Memorandum, *Committee Depositions in the House of Representatives: Longstanding Republican and Democratic Practice of Excluding Agency Counsel*, Comm. on Oversight and Reform, 1 (Nov. 5, 2019), https://perma.cc/G68P-GK4H, *appended as* **Exhibit BBBB**; *see also id.* at 5 (explaining that the rule is designed to ensure that Committees "are able to depose witnesses in furtherance of [an] investigation without having in the room representatives of the agency or office under investigation").

[183] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform, 3 (Apr. 9, 2019), https://perma.cc/3AKZ-2EAY, *appended as* **Exhibit I**.

[184] *See, e.g.*, Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice (Apr. 10, 2019) (offering to accommodate DOJ's interests by making a separate room available for DOJ counsel during the deposition and permitting Mr. Gore or his counsel to request breaks to consult with DOJ counsel), https://perma.cc/V9KA-8XTT, *appended as* **Exhibit CCCC**.

[185] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Apr. 24, 2019), https://perma.cc/RWF3-MPZR, *appended as* **Exhibit DDDD;** Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 6, 2019), https://perma.cc/Q5HG-2R5A, *appended as* **Exhibit J**.

Commerce Department witnesses have repeatedly refused to provide basic, non-privileged information, including non-substantive information about which government officials were involved in developing or discussing policies.[186]  In addition, the White House directed a non-government witness to withhold basic information about his interactions with government officials regarding the citizenship question.[187]

### D.    The House Held Defendants in Contempt and Authorized This Suit

117.    On June 11, 2019, the evening before the scheduled date of the Committee's business meeting to consider the resolution holding Defendants Barr and Ross in contempt, and while negotiations were ongoing, the Committee received a letter from Assistant Attorney General Stephen E. Boyd stating:  "In the face of [the Committee's] threatened contempt vote, the Attorney General is now compelled to request that the President invoke executive privilege with respect to the materials subject to the subpoena to the Attorney General and the subpoena to the Secretary of the Department of Commerce."  The letter requested that the Committee "hold the subpoenas in abeyance and delay any vote on whether to recommend a citation of contempt … pending the President's determination of this question," but it did not provide a

---

[186] *See generally, e.g.*, Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, (Mar. 7, 2019), https://perma.cc/BXT5-KF8C; Transcript, Interview of Gene Hamilton, Comm. on Oversight and Reform (May 30, 2019), https://perma.cc/WB2Y-9EMU; Transcript, Interview of James Uthmeier, Comm. on Oversight and Reform (June 11, 2019), https://perma.cc/88AW-AB9W; Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Interview of James Uthmeier on Addition of Citizenship Question to Census*, 1, 3–4 (June 25, 2019), https://perma.cc/3YGA-E2CY, *appended as* **Exhibit HH** (summarizing Commerce Department counsel's directions to Mr. Uthmeier during his interview).

[187] Transcript, Tel. Interview with Kris Kobach, Comm. on Oversight and Reform, 17–18 (June 3, 2019), https://perma.cc/3CNN-4FQA; *see also* Memorandum from Majority Staff, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: White House Interference with Oversight Committee Interview of Kris Kobach*, 4–5 (June 7, 2019), https://perma.cc/GE57-U5Y7, *appended as* **Exhibit P** (summarizing White House's instructions to Kris Kobach regarding cooperation with the Committee).

timeline for such determinations or suggest that the process could be expedited in light of the Committee's needs.  Mr. Boyd threatened that, should the Committee "proceed in spite of this request … the Department will be obliged to advise that the President assert executive privilege with respect to certain of the subpoenaed documents, and to make a protective assertion of executive privilege over the remainder of the documents," and would "be forced to reevaluate its current production efforts in ongoing matters."  The letter did not offer to accommodate the Committee's requests for priority documents.  Instead, it reiterated that a "subset of the [subpoenaed] documents is protected from disclosure" by various privileges.[188]

118.    At the time of this letter, Defendants were aware that the President, who had previously vowed that his Administration would "fight all the subpoenas,"[189] was unlikely to accommodate Congressional interests.

119.    Nevertheless, Chairman Cummings continued to seek accommodation.  On the same day he received the Boyd letter, Chairman Cummings wrote to Attorney General Barr to point out that, "without making any recognizable counter-offer with respect to the documents under subpoena," the letter had "indicat[ed] that [DOJ] may stop producing responsive documents over which even the Department concedes no privilege exists—and that the Department may also withhold documents in other investigations."  The Chairman also emphasized that the Committee had given DOJ months to respond to the Barr Subpoena and, eight days before, had promised to postpone the vote if DOJ and the Commerce Department began producing a small subset of high-priority documents.  The Chairman explained that the

---

[188] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 11, 2019), https://perma.cc/D439-FJZ9, *appended as* **Exhibit EEEE**.

[189] Kevin Breuninger and Christina Wilkie, "Trump: 'We're fighting all the subpoenas' from House Democrats," *CNBC* (Apr. 24, 2019), https://perma.cc/43AY-AD3X.

Committee could not accept continued delay due to the Committee's "responsibility under the Constitution to conduct rigorous oversight of the Census." But the Chairman offered to delay the contempt vote for Attorney General Barr if he produced, on the following day, the Uthmeier Memorandum and drafts of the Gary Letter, and further offered to delay the contempt vote for Secretary Ross if he produced, on the following day, unredacted copies of the 11 priority documents.[190]

120.    On June 12, 2019, the day of the Committee's meeting, the Committee received follow-up letters from the Commerce Department and DOJ, both stating "that the President has asserted executive privilege" over the subpoenaed documents.[191] The letters both added that until the Committee sought a contempt resolution, the Departments were "prepared to provide" an additional, "significant" number of documents responsive to the Committee's requests.[192] DOJ's letter attached a memorandum from Attorney General Barr to President Trump; this memorandum included a new conclusion that *all* of the 11 priority documents, the Uthmeier Memorandum, and drafts of the Gary Letter were subject to the deliberative process privilege.[193]

---

[190] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice (June 11, 2019), https://perma.cc/EE4S-96EM, *appended as* **Exhibit FFFF**.

[191] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**; Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/9MB7-6TL9, *appended as* **Exhibit QQQ**.

[192] *Id*.

[193] Letter from Attorney General William P. Barr, Dep't of Justice, to President Donald Trump (June 11, 2019), https://perma.cc/VF3J-S67M (enclosure), *appended as* **Exhibit GGGG**.

121.    The Committee voted on June 12, 2019, on a bipartisan basis to recommend that the House hold Defendants Ross and Barr in contempt of Congress.[194]

122.    The Supreme Court announced its decision voiding the addition of the citizenship question on June 27, 2019.[195]  But even after the Supreme Court ruled—and despite their repeated insistence that their refusal to produce documents had been based on the unresolved litigation—Secretary Ross and Attorney General Barr refused to produce the key documents subpoenaed by the Committee.

123.    After first implying that he would defy the Supreme Court's order, President Trump acquiesced on July 11, 2019, announcing that the Administration would comply with the Supreme Court's order and end attempts to add the citizenship question to the 2020 Census.[196]

124.    President Trump nevertheless issued an Executive Order directing the Census Bureau to collect citizenship data through other means.  The Executive Order explained that President Trump's purpose in collecting the information is to allow "States to design State and local legislative districts based on the population of voter-eligible citizens."[197]  When announcing the Executive Order, the President again explained that "[s]ome states may want to

---

[194] *See* Comm. on Oversight and Reform, *Resolution recommending that the House of Representatives find William P. Barr, Attorney General of the United States, and Wilbur L. Ross, Jr., Secretary of Commerce, in Contempt of Congress for Their Refusal to Comply with Subpoenas Duly Issued by the Committee on Oversight and Reform*, 116th Cong. (June 12, 2019), https://perma.cc/3J3J-SCUL, *appended as* **Exhibit HHHH**; 165 Cong. Rec. 98 (daily ed. June 12, 2019), https://perma.cc/7Z6R-JS8M.

[195] *Dep't of Com. v. New York*, 139 S. Ct. 2551; *see supra* Section II(B).

[196] Katie Rogers et al., "Trump Says He will Seek Citizenship Information From Existing Federal Records, Not the Census," *N.Y. Times* (July 11, 2019), https://perma.cc/S4ER-32VV.

[197] *Executive Order on Collecting Information about Citizenship Status in Connection with the Decennial Census*, The White House (July 11, 2019), https://perma.cc/D24K-JKDD, *appended as* **Exhibit IIII**.

draw state and local legislative districts based upon the voter-eligible population"[198]—further

undermining Secretary Ross's March 2019 testimony to Congress in which he insisted that he

had decided to add the question "solely" in response to DOJ's request for assistance with VRA

enforcement.[199]

125.    Two weeks after the Supreme Court decision, on July 11, 2019, Chairman

Cummings issued a statement:  "I urge Attorney General Barr and Secretary Ross to change

course and produce the documents we have subpoenaed on a bipartisan basis, so the House is not

forced to hold them in contempt of Congress."[200]  Neither Attorney General Barr nor Secretary

Ross took steps to comply with the Subpoenas.

126.    On July 15, 2019, Committee staff reached out to DOJ and the Commerce

Department, hoping to resolve the dispute without a contempt vote of the full House.[201]

However, after DOJ and the Commerce Department refused to produce further documents or

even offer to produce further documents, the full House voted to hold Defendants Ross and Barr

in contempt on July 17, 2019.[202]

---

[198] *Remarks by President Trump Before Marine One Departure* (July 5, 2019), https://perma.cc/QK6V-833H, *appended as* **Exhibit WW**.

[199] *Hearing with Commerce Secretary Ross Before the H. Comm. on Ways and Means*, 115th Cong. 51 (Mar. 22, 2018), https://perma.cc/Y3H3-F8MA, *excerpt appended as* **Exhibit B**; *see Hearing Before the H. Appropriations Subcomm. on Com., Justice, Science, & Related Agencies: FY19 Budget – Department of Commerce*, 115th Cong. 14–15 (Mar. 20, 2018), *webcast available at* https://tinyurl.com/rnzty5f; *excerpt appended as* **Exhibit C**.

[200] Press Release, *House Schedules Floor Vote to Hold AG and Commerce Secretary in Contempt,* Comm. on Oversight and Reform (July 11, 2019), https://perma.cc/EF6C-U6UR, *appended as* **Exhibit JJJJ**.

[201] *See* Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice and Secretary Wilbur L. Ross, Jr., Dep't of Com. (July 23, 2019), https://perma.cc/B7SW-57RY, *appended as* **Exhibit KKKK**.

[202] *See* 165 Cong. Rec. H5977 (daily ed. July 17, 2019), https://perma.cc/2R9V-NRBA.

127.    On the same day, Secretary Ross and Attorney General Barr wrote directly to Speaker of the House Nancy Pelosi to express their opposition to the contempt resolution.  Their letter stated that DOJ, like the Commerce Department, had "intended to provide a significant number of additional documents identified as responsive to the Committee's subpoena" before the Committee decided to pursue a contempt resolution.[203]  However, the letter did not offer to produce any of the priority documents or make any other specific offer of accommodation.

128.    Pursuant to her obligations under 2 U.S.C. § 194, Speaker Pelosi referred the contempt resolution to the U.S. Attorney for the District of Columbia for prosecution for contempt of Congress.

129.    Only one day after receiving the referral, the Department of Justice cited the President's nebulous assertion of Executive Privilege in declining to prosecute either Secretary Ross or Attorney General Barr for contempt of Congress.  On July 24, 2019, Deputy Attorney General Jeffrey Rosen cited "[t]he Department of Justice's long-standing position … that we will not prosecute an official for contempt of Congress for declining to provide information subject to a presidential assertion of executive privilege," announcing that "the Department will not bring the congressional contempt citations before a grand jury or take any other action to prosecute the Attorney General or the Secretary."[204]

130.    Defendants' continued defiance of their legal obligations has resulted in an impasse.  They have indicated through their blanket, indiscriminate assertion of Executive Privilege that they will make no further productions, regardless of whether any particular

---

[203] Letter from Attorney General William P. Barr, Dep't of Justice, and Secretary Wilbur L. Ross, Jr., Dep't of Com., to Speaker Nancy Pelosi, House of Representatives (July 17, 2019), https://perma.cc/V359-6XXV, *appended as* **Exhibit L**.

[204] Letter from Deputy Attorney General Jeffrey A. Rosen, Dep't of Justice, to Speaker Nancy Pelosi, House of Representatives (July 24, 2019), https://perma.cc/G3YA-NFR9, *appended as* **Exhibit LLLL**.

document is even plausibly subject to privilege.  Since that "protective" privilege assertion,

Defendants have produced no additional documents in response to the Subpoenas, nor have they

conveyed anything further with respect to privilege determinations over the remaining

responsive documents.  As a result of this impasse, the Committee has no choice but to seek

judicial enforcement of the Subpoenas.

### E.     The Committee Has Continued Its Investigation Following the Contempt Vote and Uncovered Corroborating Information, Reinforcing the Committee's Concerns

131.    The Commerce Department and DOJ have continued to obstruct the Committee's

factfinding by refusing to honor the Subpoenas and by directing a witness not to appear.

Nevertheless, the Committee has pressed forward in its investigation and has uncovered new

information—including a number of documents relating to Mr. Neuman and Mr. Hofeller—that

heightens concerns about the integrity of the Census process under Secretary Ross.

132.    The Committee sent a document request to the Executive Director of the Trump

Transition Team on June 18, 2019, seeking all Transition Team documents and communications

relating to the citizenship question, including those involving Mr. Hofeller, Mr. Kobach, Mr.

Hamilton, Mr. Neuman, and others.[205]

133.    The Transition Team identified responsive documents prior to the July 2, 2019

deadline but did not produce any to the Committee.  On July 8, the Transition Team informed

Committee staff that the documents had been sent to the White House Counsel's Office for

review.  More than a month later, the Transition Team indicated that White House review for

---

[205] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Ken Nahigian, Trustee and Executive Director, Trump for America, Inc. (June 18, 2019), https://perma.cc/ZZS8-CYMZ, *appended as* **Exhibit MMMM**.

"potential Executive Branch equities or confidentiality interests" was ongoing[206]—even though

the Committee's request is limited to a period from before President Trump took office.  Since

that time, none of the requested transition documents have been produced.

134.    The Committee also sent a letter on June 18, 2019, to Mr. Neuman, requesting his

communications about the citizenship question with Mr. Hofeller and others.[207]  On July 2, 2019,

Mr. Neuman produced previously undisclosed documents to the Committee.  These new

documents included direct communications about the citizenship question between Mr. Neuman,

Mr. Hofeller, and Mr. Hofeller's business partner, the Republican National Committee's

gerrymandering attorney Dale Oldham, as described in paragraphs 57 to 59.[208]

135.    The Committee requested documents going back to January 2014 from Ms. Jones

at the Census Bureau, after news reports indicated that she had direct communications with Mr.

Hofeller as early as 2015.[209]

136.    In response to that separate request, Ms. Jones and the Commerce Department

produced to the Committee a limited set of redacted emails from Ms. Jones's official and

---

[206] Email from Counsel for Statecraft PLLC, to Staff, Comm. on Oversight and Reform (Aug. 14, 2019, 12:00 PM), *appended as* **Exhibit NNNN**.

[207] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Mark Neuman (June 18, 2019), https://perma.cc/4ADM-CRW6, *appended as* **Exhibit OOOO**.

[208] Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 10–12 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**; *see also* Jonathan Oosting, "Supreme Court rejects GOP delay bid in gerrymandering lawsuit," *The Detroit News* (Feb. 4, 2019), https://perma.cc/5QAS-A27F (describing Dale Oldham coauthoring a memorandum on redistricting with Mr. Hofeller to help the Republican party "make sure the Democrats cannot take [Republican 2010 election victories] away from us in 2011 and 2012").

[209] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Christa Jones, Chief of Staff, Off. of the Director, Census Bureau (June 18, 2019), https://perma.cc/CH6W-3X9E, *appended as* **Exhibit PPPP**.

personal accounts, but these productions were incomplete and omitted any documents from earlier than 2018, even though Ms. Jones had worked at the Census Bureau for many years and her communications in 2015 with Mr. Hofeller had been the subject of public reporting.[210]

137.    In a transcribed interview with Committee staff on July 31, 2019, Ms. Jones explained that Mr. Hofeller and his partner, Mr. Oldham, had for years expressed interest in a citizenship question to assist with "the Republican redistricting effort."[211]

138.    On July 24, 2019, the Committee's Subcommittee on Civil Rights and Civil Liberties held a hearing regarding preparations for the Census.  In this hearing, which included testimony from the director of the Census Bureau, the subcommittee inquired about the Bureau's ongoing efforts to gather citizenship data, its efforts to remediate damage to the accuracy of the count of immigrant populations caused by the effort to add a citizenship question, its efforts to communicate with the public regarding the confidentiality and permissible uses of census data, and its failure to apply its full budget to remediate chronic undercounting among communities of color.[212]

139.    On September 20, 2019, the Committee sent another letter to Mr. Gore asking whether, in light of changed circumstances and the Supreme Court's decision, he was now willing to comply with the subpoena for his testimony.  The letter noted the importance of his

---

[210] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 12 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[211] Transcribed Interview of Christa Jones, Comm. on Oversight and Reform, 18 (July 31, 2019), https://perma.cc/8UMP-82FA; *see also supra* n. 58.

[212] *Hearing Before the Comm. on Oversight and Reform, Subcomm. on Civil Rights and Civil Liberties: Beyond the Citizenship Question:  Repairing the Damage and Preparing to Count "We the People" in 2020*, 116th Cong., 3–7 (July 24, 2019), *webcast available at* https://tinyurl.com/vzwm6oh, *excerpt appended as* **Exhibit QQQQ**.

testimony and explained that the Committee's investigation is "urgent in light of the ongoing preparations for the 2020 Census."[213]

140.     On September 27, 2019, Mr. Gore's attorney responded that Mr. Gore "remains unable to be deposed."  The letter explained that the "Justice Department has confirmed to Mr. Gore that Attorney General Barr maintains his prior instruction," prohibiting Mr. Gore from complying with the Committee's subpoena.[214]

141.     The Commerce Department, meanwhile, has continued to take action to obtain citizenship data.  On September 6, 2019, the Census Bureau stated that an interagency working group had already been formed and that it would announce a plan for the release of additional administrative citizenship data on March 31, 2020—the day before Census Day.[215]

**F.     Defendants' Defiance of the Subpoenas Is Causing Immediate and Irreparable Injury to the Committee**

142.     Since the House voted to hold Secretary Ross and Attorney General Barr in contempt, the Commerce Department and DOJ have stopped all productions in response to the Subpoenas.  They and President Trump have refused to narrow their baseless, blanket "protective" assertion of Executive Privilege, raising questions about the veracity of DOJ's

---

[213] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to John Gore (Sept. 20, 2019), https://perma.cc/XA8C-QX37, *appended as* **Exhibit RRRR**.

[214] Letter from John D. Adams to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (Sept. 27, 2019), https://perma.cc/X4RX-SLX4, *appended as* **Exhibit SSSS**.

[215] John M. Abowd, Chief Scientist and Associate Director for Research and Methodology, Census Bureau, *Census Bureau Citizenship Data Research and Product Development* (Sept. 6, 2019), https://perma.cc/6ALQ-PXRE?type=image.

position that the assertion was necessary to provide the President time to "make a final decision whether to assert privilege following a full review of these materials."[216]

143.     By refusing to provide the Committee with the critical information it has requested, Defendants are preventing the Committee from fulfilling its most essential Article I functions.  Defendants' conduct interferes with the House's institutional prerogative to compel compliance with Congressional subpoenas.  Courts have recognized that the House's power to obtain the production of papers and testimony from witnesses through compulsory process is integral to its constitutional mandate to legislate and to oversee the Executive.  Permitting Defendants to impede the Committee's subpoena power would imperil the separation of powers essential to the Constitution's structure of lawful governance.

144.     As explained below, the Committee has been, and will continue to be, injured by Defendants' refusal to comply with the Subpoenas.

**1.     The Committee's Investigation Is Critical to Its Constitutional Oversight and Legislative Responsibilities**

145.     The Committee has pursued this investigation and demanded production of documents in furtherance of two of its most foundational responsibilities under Article I.

146.     First, as the principal oversight body of the House of Representatives, the Committee is charged with overseeing the operations of the Executive Branch.  Where, as two federal courts have concluded here, the evidence reveals bad faith and outright dishonesty by Executive Branch officials on a matter as critical as the administration of the census, the Committee has a responsibility to "probe[] into departments of the Federal Government to

---

[216] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**.

expose corruption"[217] and to understand whether the malfeasance has infected other aspects of census administration such that remedial measures are warranted.

147.    The Committee's oversight interest is particularly compelling in this case because the Executive Branch, on multiple occasions, has provided false information to Congress. Indeed, even the Executive Branch has long recognized that Congress has "legitimate oversight interests" in such circumstances, and executive agencies have therefore produced documents without assertion of privilege when those documents would shed light on how Congress was misled.[218]  Secretary Ross provided false testimony under oath to multiple committees of Congress, mispresented to the American people the reasons for his attempt to add the citizenship questions, and then attempted to continue that false narrative when his actions were challenged in federal court.  The Committee has an undeniable interest in understanding the origins and extent of that dishonesty in order to redress the harm it has caused.

148.    From the outset of this investigation, the Committee has emphasized its oversight interest not only in understanding the circumstances that led Secretary Ross to make false statements to Congress,[219] but also in determining how DOJ and the Commerce Department

---

[217] *Watkins v. United States*, 354 U.S. 178, 187 (1957).

[218] Memorandum from Attorney General Eric H. Holder, Jr., Dep't of Justice, to President Barack Obama, *Assertion of Executive Privilege Over Documents Generated in Response to Congressional Investigation Into Operation Fast and Furious*, 1, 6 (June 19, 2012), https://perma.cc/NP39-LDXZ (indicating that DOJ had shared more than 1,300 pages of internal deliberative material with a Congressional committee "in acknowledgment that [a previous letter from DOJ] contained inaccurate information"), *appended as* **Exhibit TTTT**.

[219] *See, e.g.*, Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Com. (Jan. 8, 2019), https://perma.cc/9V2P-3JN4, *appended as* **Exhibit XX** ("The Committee also has serious concerns about new evidence … [that] appears to contradict your previous testimony to Congress"); Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Acting Attorney General Matthew Whitaker, Dep't of Justice (Feb. 12, 2019), https://perma.cc/5MK3-DQKQ, *appended as* **Exhibit SSS** ("[N]ew information has come to light that casts grave doubts on the veracity of

developed the pretextual rationale for the citizenship question,[220] how and why Secretary Ross

dismissed the Census Bureau's concerns about the citizenship question,[221] and whether the

Commerce Department is attempting to manipulate the census process to advance improper

goals.[222]  As Chairman Cummings explained in response to a letter from the Commerce

Department:

> Our need for these documents and interviews is clear.  The
> Committee is seeking to understand the real reason that you added
> a citizenship question to the 2020 Census ….   The requested
> documents and interviews may provide contemporaneous evidence
> of the real reason that you added the citizenship question and the
> process you followed.[223]

149.    There is clear and substantial evidence of procedural defects relating to the

Census and serious maladministration by senior government officials.  The Committee is being

---

Secretary Ross's testimony and assertions in the December 2017 letter from DOJ to the Census
Bureau.").

[220] *See, e.g.*, Letter from Chairman Elijah E. Cummings, Comm. on Oversight and
Reform, to Acting Attorney General Matthew Whitaker, Dep't of Justice (Feb. 12, 2019)
https://perma.cc/5MK3-DQKQ, *appended as* **Exhibit SSS** (requesting documents to "help
understand the substance of DOJ's justification" for requesting the citizenship question and "the
process by which its request was made"); Letter from Chairman Elijah E. Cummings, Comm. on
Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Commerce (Mar. 29, 2019),
https://perma.cc/T4HF-7AVA, *appended as* **Exhibit JJJ** (explaining the Committee's interest in
discussions "leading to the issuance of the pretextual decision memorandum in March 2018").

[221] *See* Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to
Secretary Wilbur L. Ross, Jr., Dep't of Com. (Jan. 8, 2019), https://perma.cc/9V2P-3JN4,
*appended as* **Exhibit XX** (requesting evidence regarding "[Secretary Ross's] decision to add a
citizenship question … despite warnings from the Census Bureau that it could seriously harm the
accuracy of the count").

[222] *See* Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to
Secretary Wilbur L. Ross, Jr., Dep't of Com. (Mar. 29, 2019), https://perma.cc/T4HF-7AVA,
*appended as* **Exhibit JJJ** (requesting documents to identify "contemporaneous evidence of the
real reason that [Secretary Ross] added the citizenship question and the process [Secretary Ross]
followed" to do so).

[223] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to
Secretary Wilbur L. Ross, Jr., Dep't of Commerce (Mar. 29, 2019), https://perma.cc/T4HF-
7AVA, *appended as* **Exhibit JJJ**.

blocked from determining the scope and nature of those issues and has been unable to confirm whether such defects have been remediated or are in need of remediation. The Committee's concerns are compounded by the fact that many of the same officials who attempted to add the illegal citizenship question are still in place today and may be involved with executing various components of the 2020 Census.[224]

150.    Second and related, the Committee's investigation is furthering a critical legislative function. Congress has plenary power to prescribe the administration of the census "in such Manner as [Congress] shall by Law direct."[225] The Committee, in turn, has responsibility within the House of Representatives both for "population and demography generally, including the Census," and the "[o]verall economy, efficiency, and management of government operations and activities."[226]

151.    The Committee has previously described "a wide range of legislative reforms" that may be appropriate, depending on the content of the subpoenaed materials and the Committee's ultimate findings.[227] The troubling conduct unearthed thus far—Secretary Ross's insistence on adding a citizenship question, his maladministration of the Census Bureau, and his willingness to fabricate reasons for his actions—has caused the Committee to consider whether

---

[224] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 3, 7 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[225] U.S. Const. Art. I § 2, cl. 3.

[226] U.S. Const. Art. I § 2, cl. 3; House Rule X, cl. 1(n)(6), (n)(8).

[227] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 14–15 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

Title 13 of the U.S. Code, which delineates the scope of the Secretary's authority over the census, may require amendment.[228]  The Secretary's interactions with the Census Bureau and other entities may require legislative measures to curb political influence on the census or may require new, judicially enforceable reporting obligations to increase visibility into how the census is being administered.[229]  Further evidence of improper influences, objectives, or considerations in how the Commerce Department is conducting the 2020 Census may prompt consideration of emergency legislation to safeguard the accuracy of the count and the integrity of the process.[230]

152.    As Chairman Cummings explained in connection with the contempt vote, the Committee is responsible for ensuring that "[t]he Census [is] run by nonpartisan experts based on their professional experience—not manipulated by political appointees as part of a political

---

[228] *See id.* at 14 ("[I]f the [subpoenaed] evidence demonstrates severe malfeasance and deception, Congress could revisit the Census Act's broad delegation of authority to the Secretary of Commerce.").

[229] *See id.* at 14 ("[D]epending on what the [subpoenaed] documents reveal concerning the process for soliciting and evaluating input with respect to the citizenship question, Congress could enhance current requirements for reporting  …. or make disclosure requirements judicially enforceable. …  Depending on what the documents reveal concerning the source and extent of political influences on the development of the citizenship question, Congress could prohibit the Commerce Department from taking steps based solely on outside entities' requests, prohibit the Census Bureau from collecting or releasing data from the Department of Homeland Security, increase penalties for unlawful use of Census data, or prohibit the collection or release of citizenship data for legislative apportionment purposes.")

[230] *See, e.g., id.* at 14–15  ("Depending on what the documents reveal regarding the Commerce Department's efforts to further the accuracy of the enumeration, Congress could consider legislation to ensure the Census Bureau hires the workers needed for an accurate count, including requiring certain language thresholds.  Congress could also mandate the hiring of additional personnel, require more interagency resource-sharing, or require consultation with career Census Bureau officials at various stages of proposed procedural changes.").

influence and interference operation."[231]   Throughout its investigation, the Committee has

repeatedly explained that the documents it seeks may inform a range of legislative responses

intended to further that goal.   For example, the Committee wrote to Attorney General Barr in

June 2019 that "[t]he Committee's investigation may lead to legislation, including but not limited

to … requiring disclosure of census questions proposed by third parties … [or] mandating

additional non-response follow-up to prevent an undercount …."[232]   In July, the Committee

reiterated to both Defendants that "[the subpoenaed] documents are critical to the Committee's

ongoing investigation into how and why the Trump Administration sought to add a citizenship

question to the 2020 Census based on a pretext," and that "the Committee's investigation may

lead Congress to pursue legislation pursuant to its broad Constitutional authority to carry out the

Census 'in such manner as they shall by law direct.'"[233]   In a November 2019 memorandum, the

---

[231] Press Release, *Committee Votes on Bipartisan Basis to Hold Barr and Ross in Contempt*, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/9ZX8-W45R, *appended as* **Exhibit UUUU**.

[232] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice (June 3, 2019), https://perma.cc/3PSZ-C4ZR, *appended as* **Exhibit YYY**; *see also* Contempt Report at 6, *appended as* **Exhibit III** (providing "illustrative examples" of potential legislation).

[233] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Secretary Wilbur L. Ross, Jr., Dep't of Commerce, and Attorney General William P. Barr, Dep't of Justice (July 23, 2019) , https://perma.cc/B7SW-57RY, *appended as* **Exhibit KKKK**. Multiple Committee members have introduced census-related bills since the beginning of this Congress.  *See, e.g.*, 2020 Census IDEA Act, H.R.732, 116th Cong. (2019) (bill to prohibit the Department of Commerce, in the 2020 Census and subsequent censuses, from implementing major new features without three years of research and testing and requiring certifications by the Government Accountability Office); Ensuring Full Participation in the Census Act of 2019, H.R. 1734, 116th Cong. (2019) (bill to prohibit questions regarding citizenship, nationality, and immigration status of a Census respondent or their family members); Correct the Census Count Act, H.R. 794, 116th Cong. (2019) (amendment to Title 13 to attribute to prisoners their last place of residence before incarceration for purposes of the census).

Committee identified specific examples of remedial legislation already introduced in the House and related to the subpoenaed documents.[234]

## 2.   The Subpoenaed Documents Are Necessary to the Committee's Investigation

153.   To fulfill its oversight, investigative, and legislative responsibilities, the Committee needs the full and unredacted documents it has subpoenaed.  Those documents reflect the reasons and process for developing the citizenship question, the coordination between the Commerce Department and DOJ to create a pretextual rationale, and the involvement of outside parties in implementing the question.[235]

154.   The Ross Subpoena focuses on the 11 priority documents, one of which—the Uthmeier Memorandum—was also included in the Barr Subpoena.[236]  The Subpoenas also demand from both Defendants all internal and external documents and communications, from January 20, 2017 through December 20, 2017, regarding the addition of a citizenship question. That category encompasses DOJ's drafts of the Gary Letter.

155.   The 11 priority documents reflect significant developments in the Commerce Department's efforts to add the citizenship question.  The unredacted portions are likely to shed additional light on unresolved factual issues central to the Committee's oversight and legislative purposes:  what were Secretary Ross's true reasons for pursuing the question, as communicated to his staff; whom outside of the Commerce Department did he interact with in his efforts to add

---

[234] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 3, 7 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[235] *See id.*

[236] *See supra* ¶ 107.

the question; how and why did Secretary Ross overrule independent Census Bureau experts and deny them critical information; and how and why did Secretary Ross and DOJ collaborate in concealing from Congress and the public their true objectives.

156.    The Uthmeier Memorandum, for example, is a substantive communication from the Commerce Department to DOJ that goes to the heart of the interactions between the two agencies in creating the VRA pretext.  The Memorandum's delivery method—by hand and accompanied by a handwritten note, with the goal of avoiding any digital fingerprints—suggests a contemporaneous effort to conceal the Uthmeier Memorandum's contents.

157.    Eight of the 11 priority documents similarly reflect communications among high-level Commerce Department officials about the citizenship question before receipt of the Gary Letter, which purportedly "initiated" the process of adding the question.

158.    The remainder of the 11 documents (the December Emails and the February 2018 Emails) concern the Commerce Department's messaging to Congress and the public regarding the false rationale for adding the citizenship question.  Access to the full context and content of those communications is necessary for the Committee to assess whether it can credit assertions by the Commerce Department on census matters, or whether Congress must instead impose new reporting requirements.

159.    The Commerce Department has withheld the Uthmeier Memorandum entirely.  It has produced the other 10 priority documents with significant redactions that obscure critical context.[237]  For example, the May 2 Emails contain the following comment from Secretary Ross: "Worst of all they emphasize that they have settled with congress on the questions to be asked.  I am mystified why nothing have [sic] been done in response to my months old request that we

---

[237] The produced versions of those 10 priority documents are appended as **Exhibits VVVV** through **EEEEE**.

include the citizenship question.  Why not?"  Mr. Comstock responds that "we will get that in

place."  Large blocks of text are completely redacted on both sides of Secretary Ross's

statement, preventing the Committee from determining to whom the "they" referred, seeing

additional information regarding the Secretary's "months-old request," or understanding the

follow-up process he directed be put "in place."  The privilege log that the Commerce

Department provided states that the redacted materials in the May 2 Emails refer to "[p]re-

decisional opinions re: census," despite the Secretary's statement in the email itself that he had

long since decided to add the citizenship question.[238]

160.    Similarly, in the August Emails, Secretary Ross stated:  "They seem dig [sic] in

about not sling [sic] the citizenship question and that raises the question of where is the DOJ in

their analysis?"  The beginning of that email is redacted, which may conceal the identity of

individuals or entities to which the Secretary refers.

161.    In another exchange, a sentence in the September 1 Emails begins, "To run

census," followed by a comma.  The clause that immediately follows is redacted, as are several

additional lines of text.  The related privilege log entries cite "[r]edacted predecisional discussion

about status of various matters unrelated to census" and "[r]edacted information with no

relevance to census."[239]  That explanation is dubious—the redacted text appears to be about the

census—and calls into question the reliability of Defendants' other redactions.

162.    The Subpoenas' broader categories relate to the involvement of internal and

external parties in the Commerce Department's and DOJ's process for adding the citizenship

question.  These categories may encompass communications that are as significant as, or more

---

[238] Privilege Log from Dep't of Com. (Feb. 19, 2019) at 117, *appended as* **Exhibit FFFFF**.

[239] *Id.* at 58, 68.

significant than, the 11 key documents, but that remain unknown to the Committee because the Commerce Department and DOJ have withheld them.  Responsive, unredacted documents will help the Committee understand the nature of the maladministration that resulted in the citizenship question being added over the concerns of experts and in DOJ providing a false pretext for the question.  The information will also permit accurate evaluation of the competence and faithfulness of government officials, including the Secretary of Commerce, in discharging their duties; illuminate the reasons for Commerce Department and DOJ officials' inaccurate statements to Congress and to the public; identify active risks to the independence of the Census Bureau from entities or individuals within and outside the Commerce Department; and illuminate the degree to which the Census process has been politicized, which may negatively affect efforts to count portions of the population or may result in the misuse of other data collected by the Commerce Department.  Both the Commerce Department and DOJ have acknowledged that documents responsive to this request remain outstanding,[240] and DOJ has volunteered that the number of these outstanding responsive documents is "significant."[241]

163.    The Barr Subpoena also encompasses drafts of the Gary Letter.  As explained above, see supra ¶ 57, one of the apparent inputs into what became the Gary Letter was a document—"a draft letter that would request reinstatement of the citizenship question on the census questionnaire"—that Mr. Neuman, the Trump transition official who was advising

---

[240] Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/9MB7-6TL9, *appended as* **Exhibit QQQ**; Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**.

[241] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**.

Secretary Ross, provided to Mr. Gore, the Gary Letter's principal author.[242]  That draft letter contained language that matched, word-for-word, a document that had been created on August 30, 2017, and was found on the hard drive of Mr. Hofeller, the Republican gerrymandering expert.[243]

164.    Drafts of the Gary Letter would clarify the connection with Mr. Hofeller's draft— and with Mr. Hofeller's conclusion that redistricting based on citizenship data would politically benefit "Republicans and Non-Hispanic whites."[244]  DOJ, however, has refused to produce such drafts, and like the Commerce Department, has declined to produce the hand-delivered Uthmeier Memorandum or the hand-written note from Mr. Uthmeier to Mr. Gore.

165.    Finally, both DOJ and the Commerce Department acknowledge that there are additional responsive documents they possess but will not produce, in reliance on faulty and overbroad assertions of Executive Privilege.[245]

### 3.    The Injury to the Committee Is Irreparable

166.    The injury to the Committee is immediate and irreparable for at least two reasons.

---

[242] Transcript, Interview with John M. Gore, Comm. on Oversight and Reform, 26 (Mar. 7, 2019), https://perma.cc/BXT5-KF8C.

[243] *See* Letter from John A. Freedman, Arnold & Porter Kaye Scholer LLP, to the Honorable Jesse M. Furman, United States District Court for the Southern District of New York, 3 (May 30, 2019), https://perma.cc/4MS8-77RG, *appended as* **Exhibit JJ**; *see also* Michael Wines, "Deceased G.O.P. Strategist's Hard Drives Reveal New Details on the Census Citizenship Question," *N.Y. Times* (May 30, 2019), https://perma.cc/CRA6-WB8C.

[244] Thomas Hofeller, *The Use of Citizen Voting Age Population in Redistricting* (2015), https://perma.cc/5X28-4AP5, *appended as* **Exhibit M**.

[245] Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/9MB7-6TL9, *appended as* **Exhibit QQQ**; Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 12, 2019), https://perma.cc/K73K-H82P, *appended as* **Exhibit K**.

167.    First, because the House is not a continuing body, the Committee's investigation will necessarily end on January 3, 2021.  Even assuming a future Committee were to decide to continue the investigation—of which there is no guarantee—it would have to reissue similar requests and subpoenas.  This would result in further unnecessary and harmful delay, interfering with the Committee's ability to conduct oversight and craft responsible, timely legislation.

168.    Second, as described above, the evidence uncovered to date indicates that the Committee must urgently consider whether legislation is necessary to ensure the integrity of the 2020 Census, which is already in process. Any legislative reforms to safeguard this Census must be considered immediately.  The 2020 Census begins in Alaska on January 21, 2020, and in the rest of the country on April 1, 2020.[246]

169.    The House has delegated to the Committee the responsibility of analyzing "conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation" concerning "the Census" and the "management of government operations," and of "assist[ing] the House" in its "formulation, consideration, and enactment of changes in Federal laws, and of such additional legislation as may be necessary or appropriate."[247]

170.    The Committee's investigation has already identified "conditions and circumstances" warranting immediate legislative attention.  The Secretary of Commerce has in the course of administering the 2020 Census engaged in a broad range of conduct that suggests improper influence and bias:  He has tried to mislead Congress, the American people, and federal courts; rejected the views of experts at the Census Bureau; collaborated with other agencies to

---

[246] *Why the U.S. Census Starts in Alaska's Most Remote, Rural Villages,* National Public Radio (Jan. 21, 2019), https://perma.cc/AB7C-GC4E.

[247] House Rule X, 1(n)(6), 1(n)(8), 2(a).

conceal his true purposes; directed his staff to create a pretextual distraction from his true

reasons for departing from decades of census practice; and refused to share information with the

Census Bureau about his actions.  This aspect of the Secretary's conduct was caught in time and

exposed by the Committee as well as by three district courts and, ultimately, the Supreme

Court,[248] and the attempt to add the citizenship question was thwarted.

171.    But that attempt manifests a troubling course of conduct.  While the evidence of

this course of conduct surfaced in the course of examining one aspect of census administration—

the attempt to add a citizenship question—it highlights a far broader concern:  that the census

process as a whole may be vulnerable to, and already infected with, improper political influence

under the current Commerce Department leadership.  The facts revealed thus far also raise the

possibility that Congress's current delegation to the Secretary of Commerce of its authority to

conduct the Census may be undermining and endangering the integrity of the 2020 Census and

the reliability of its results.

172.    Commerce Department personnel will oversee certain key steps of the 2020

Census process and preparations for its administration.  For example, in addition to hiring

temporary staff to conduct the Census and implementing technical infrastructure to safeguard the

personal information it collects, the Census Bureau is preparing for the first phase of its

communications campaign, which is essential to increasing participation among minority and

hard-to-count populations that are traditionally less likely to respond.[249]  This effort is

particularly important because the Administration's previous efforts to add the citizenship

---

[248]*See Kravitz v. Dep't of Commerce*, 336 F. Supp. 3d 545 (D. Md. 2018); *California v. Ross*, 358 F. Supp. 3d 965 (N.D. Cal. 2019); *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019); *Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019).

[249] Census Bureau, *Census Barriers, Attitudes, and Motivators Study Survey and Focus Groups Report Findings Presentation* (Feb. 1, 2019), https://perma.cc/5BVA-QAFY.

question may have already discouraged some communities from participating.[250]  As

Subcommittee Chairman Jamie Raskin explained at the July 24, 2019 hearing:  "aggressive

steps" are needed "to repair the damage caused by this ill-considered campaign."[251]

173.    An immediate legislative response could take a variety of forms, depending on the

further evidence the investigation uncovers.[252]  For example, documents may reveal information

about the adequacy of the resources the Commerce Department is devoting to the 2020 Census,

in which case Congress could consider legislation to ensure the Census Bureau is making

sufficient efforts to hire workers needed for an accurate count, including requiring certain

language thresholds.[253]  Congress also could mandate the hiring of additional personnel, require

more interagency resource-sharing, or require consultation with career Census Bureau officials at

various critical stages of the process.[254]  Congress also may determine that additional funding or

legislative direction is necessary to carry out a robust and effective communications plan to

encourage participation in the 2020 Census.[255]  Legislation could increase resources for

communications, require that the Census Bureau launch a media campaign in languages other

---

[250] *Local Groups: 'Damage Has Already Been Done' by Census Citizenship Question*, National Public Radio (July 4, 2019), https://perma.cc/H4EL-KCHN.

[251] *Hearing Before the Comm. on Oversight and Reform, Subcomm. on Civil Rights and Civil Liberties: Beyond the Citizenship Question:  Repairing the Damage and Preparing to Count "We the People" in 2020*, 116th Cong. 2–3 (July 24, 2019), *webcast available at* https://tinyurl.com/vzwm6oh, *excerpt appended as* **Exhibit QQQQ**.

[252] *See* Memorandum from Carolyn B. Maloney, Acting Chairwoman, Comm. on Oversight and Reform, to Members, Comm. on Oversight and Reform, *Re: Update on Investigation of Census Citizenship Question Since House Held Attorney General Barr and Commerce Secretary Ross in Contempt of Congress*, 14–15 (Nov. 12, 2019), https://perma.cc/88XZ-YNAJ, *appended as* **Exhibit G**.

[253] *Id.* at 14.

[254] *Id.* at 14–15.

[255] *Id.* at 15.

than English, or require the Bureau to use additional media platforms to reach hard-to-count

populations.[256]

174.     To be effective, these steps must be implemented quickly.  The administration of

the decennial census is enormously time- and resource-intensive, and any emergency legislation

could be burdensome and disruptive.  The Committee must immediately review all relevant

evidence that would inform the need for and minimum necessary scope of such legislation.  The

Committee's investigation is therefore urgent; the injury to the Committee—and to its

constitutional role of ensuring the integrity of the census—increases with each passing day.

### G.     The Defendants' Justifications for Defying the Subpoenas Are Invalid

175.     Defendants have sought to invoke a number of privileges and purported

confidentiality interests—"ongoing litigation," deliberative process privilege, attorney-client

privilege, and Executive Privilege—as grounds to defy the Subpoenas.  None of those rationales

justifies withholding information from the Committee.

### 1.     Defendants Cannot Withhold Information from the Committee Based on Parallel Civil Litigation

176.     Both DOJ and the Commerce Department have cited confidentiality concerns

arising from ongoing civil litigation as a basis for refusing to comply with the Subpoenas.[257]

---

[256] *Id.*

[257] *See, e.g.*, Email from Staff, Dep't of Justice, to Staff, Comm. on Oversight and Reform, "RE: Transcribed Interview Follow Up" (Mar. 22, 2019, 3:27 PM), *appended as* **Exhibit VVV**; *Hearing Before H. Comm. on Oversight and Reform: Progress Report on the 2020 Census*, 115th Cong. (May 18, 2018), *webcast available at* https://tinyurl.com/t6aw6r8, *excerpt appended as* **Exhibit ZZZ** (in which Gore refused to answer numerous questions, citing in part his concerns about "pending litigation, the potential effect any public statement might have on ongoing court cases and the department litigation constraints"); *Hearing with Commerce Secretary Ross Before the H. Comm. on Oversight and Reform*, 116th Cong. (Mar. 14, 2019), https://perma.cc/WL25-NTHU, *excerpts appended as* **Exhibit S** (in which Secretary Ross refused to provide key information or documents requested by the Committee, stating:  "I will

There is no "ongoing litigation privilege" that would permit Defendants to defy a Congressional subpoena, and in any event, the purported confidentiality concerns no longer apply here.

177.    The Constitution provides Congress with the responsibility to conduct oversight of, and to pass laws relating to, the census, and the Committee has authority that is separate and independent from any litigation being pursued in civil courts.

178.    The Supreme Court has clearly and repeatedly ruled that parallel litigation does not preclude Congress from investigating an issue and is not a valid reason to withhold information from Congress.  The Court explained in *Hutcheson v. United States*:

> [S]urely a congressional committee which is engaged in a legitimate legislative investigation need not grind to a halt whenever responses to its inquiries might potentially be harmful to a witness in some distinct proceeding, or when crime or wrongdoing is disclosed.[258]

179.    The Court also held in *Sinclair v. United States*:

> It may be conceded that Congress is without authority to compel disclosures for the purpose of aiding the prosecution of pending suits; but the authority of that body, directly or through its committees, to require pertinent disclosures in aid of its own constitutional power is not abridged because the information sought to be elicited may also be of use in such suits.[259]

180.    Consistent with that authority, under both Republican and Democratic leadership, the Committee has routinely conducted investigations concurrent with parallel litigation and has received documents and testimony from federal and state agencies and private entities.[260]

---

certainly address the question to my staff and to my counsel.  To the degree that this is involved in pending litigation, there may be problems.").

[258] 369 U.S. 599, 618 (1962) (internal citations omitted) (citing *McGrain v. Daugherty*, 273 U.S. 135, 179–180, and *Sinclair v. United States*, 279 U.S. 263, 295 (1929), *overruled on other grounds by United States v. Gaudin*, 515 U.S. 506 (1995)).

[259] 279 U.S. at 295.

[260] See Contempt Report, *appended as* **Exhibit III**, *supra* n. 155, pp. 27–31 (citing examples).

181.     In any event, the Supreme Court has already resolved the challenge to the citizenship question, affirming the District Court's ruling that Secretary Ross's decision to add that question to the 2020 Census was illegal absent a genuine rationale.[261]  Defendants have since abandoned their effort to pursue addition of the question, and the Trump Administration has instead issued an Executive Order declaring that it will seek to obtain citizenship information through other means.[262]  In light of these developments, the litigation that purportedly paralleled the Committee's investigation is substantially complete.[263]  Accordingly, Defendants no longer have any plausible basis to assert confidentiality concerns arising from ongoing litigation as a reason to withhold information from the Committee.

**2.     Attorney-Client Privilege, the Deliberative Process Privilege, and the Attorney Work Product Doctrine Are Not Valid Grounds for Defying a Congressional Subpoena**

182.     Defendants have asserted that the documents they have withheld are "covered by a variety of privileges, including the deliberative process privilege, the attorney-client privilege, and the attorney work product" doctrine.[264]  Those common-law privileges and doctrines do not justify refusing to produce responsive information to Congress, which derives its authority from the Constitution.

---

[261] *Dep't of Com. v. New York*, 139 S. Ct. 2551 (2019).

[262] *Executive Order on Collecting Information about Citizenship Status in Connection with the Decennial Census*, The White House (July 11, 2019), https://perma.cc/D24K-JKDD, *appended as* **Exhibit IIII**.

[263] The only remaining aspects of the litigation are sanctions motions, which are pending in *New York v. U.S. Dep't of Com.. See, e.g.*, NYIC Plaintiff's Reply Brief in Support of Motion for Sanctions, Docket No. 654, 18-cv-2921 (S.D.N.Y. 2019).

[264] Letter from Charles Kolo Rathburn, Performing the Duties of the Assistant Secretary for Legislative and Intergovernmental Affairs, Dep't of Com., to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 6, 2019), https://perma.cc/Y27K-WJHC, *appended as* **Exhibit PPP**; *see also* Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform, 2 (June 6, 2019), https://perma.cc/Q5HG-2R5A, *appended as* **Exhibit J**.

183.     Then-Chairman Chaffetz and Ranking Member Cummings articulated the

longstanding, bipartisan position of the Committee in a May 2017 letter:

> The House of Representatives derives its authority from the United
> States Constitution and is bound only by the privileges derived
> therefrom.… [N]either the Committee nor the United States House
> of Representatives recognizes purported non-disclosure privileges
> associated with the common law.  Further, the mere possibility that
> a common law privilege may apply in a judicial proceeding is not,
> in and of itself, a legal justification to withhold documents from
> this Committee or the Congress.[265]

184.     Similarly, this Committee has never recognized the deliberative process privilege

as a valid reason to withhold documents from Congress.  The D.C. Circuit has held that the

deliberative process privilege is "primarily a common law privilege," contrasting it with the

Presidential communications privilege, which the court reasoned was "rooted in constitutional

separation of powers principles and the President's unique constitutional role."[266]

185.     Not only is the deliberative process privilege unavailable in response to

Congressional subpoenas as a general matter, but that privilege has no application in this specific

dispute.  That is so for at least three reasons.

186.     First, very little, if any, of the information covered by the Subpoenas even falls

within the scope of the deliberative process privilege.  As the District Court for the Southern

District of New York concluded, and the evidence confirms, Secretary Ross made the decision to

add the citizenship question early in his tenure at the Commerce Department.[267]  By May 2017,

---

[265] Letter from Chairman Jason Chaffetz, *et al.*, Comm. on Oversight and Gov't Reform, to Huban Gowadia, Acting Administrator, Transportation Security Administration, 1 (May 2, 2017), https://perma.cc/HSA7-ZWJ8, *appended as* **Exhibit GGGGG**.

[266] *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997); *but see Comm. on Oversight & Gov't Reform v. Holder*, No. 12-1332, 2014 WL 12662665, *2 (D.D.C. Aug. 20, 2014) (entertaining an assertion of deliberative process privilege in response to a Congressional subpoena).

[267] *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 568, 571.

Secretary Ross was venting frustration at his staff for their lack of execution on that decision—which even then he described as "months old."[268]  The deliberative process privilege covers only information that is both "deliberative" and "predecisional."[269]  It does not encompass communications that were created after an agency decision has been made.  Thus, all of the communications after Secretary Ross instructed his staff to secure the inclusion of the citizenship question lie outside the privilege.

187.    Second, to the extent it is deemed to apply, the deliberative process privilege is a "qualified privilege, and it can be overcome by a sufficient showing of need."[270]  That showing is easily satisfied here.

188.    As explained above, the Committee's investigation is critical both from the perspective of legislative response and effective oversight.  In addition to legislation that may affect the decennial census in 2030 and beyond, the Committee may, on the basis of its findings, need to act urgently to identify deficiencies in the 2020 Census and to craft responsive legislation.

189.    From an oversight perspective, the Committee's investigation has revealed that the Executive Branch has made misleading statements to Congress and the American people.  Both the Supreme Court and the District Court for the Southern District of New York have concluded that the record reflects "a strong showing of bad faith" on Defendants' part.[271]  Where "there is reason to believe the documents sought may shed light on government misconduct, the

---

[268] *See supra* ¶ 46.

[269] *In re Sealed Case*, 121 F.3d at 737.

[270] *Comm. on Oversight & Gov't Reform v. Holder*, No. 12-1332, 2014 WL 12662665, at *2 (D.D.C. Aug. 20, 2014); *see also In re Sealed Case*, 121 F.3d at 737.

[271] *Dep't of Com. v. New York*, 139 S. Ct. at 2574; *see New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d at 529.

[deliberative process] privilege is routinely denied" and "disappears altogether."[272]  That is

certainly the case here, where the Committee's investigation has raised serious questions about

whether, among other things, the Trump Administration had an unconstitutional motive—such as

drawing legislative boundaries that were "advantageous" to "Non-Hispanic Whites"—when it

added the citizenship question to the Census.  President Trump's comments that the goal of the

question was "districting" make that inquiry all the more pressing.[273]

190.    Third, Defendants have waived any claim to the deliberative process privilege by

releasing numerous public statements regarding their decision-making and selectively denying

certain allegations.  For example, DOJ stated in May that Mr. Hofeller's study "played no role in

the Department's December 2017 request to reinstate a citizenship question to the 2020

decennial census,"[274] but it has refused to produce emails and drafts that would allow the

Committee to examine whether that claim is true.  The Administration cannot hide behind

"deliberative process privilege" to deny Congress these documents while simultaneously making

public representations about this very issue.

### 3.    Executive Privilege Does Not Justify Defendants' Noncompliance with the Committee's Subpoenas

191.    For similar reasons, there is no validity to the last-minute attempt—made on the

day of the Committee's meeting to consider the contempt resolution—to assert Executive

Privilege over the information the Committee seeks.

---

[272] *In re Sealed Case*, 121 F.3d at 738, 746 (internal citations omitted).

[273] *Remarks by President Trump Before Marine One Departure* (July 5, 2019), https://perma.cc/QK6V-833H (stating that the attempt to add the citizenship question was motivated by "districting.  You need it for appropriations.  Where are the funds going?  How many people are there?  Are they citizens?  Are they not citizens?"), *appended as* **Exhibit WW**.

[274] "GOP Redistricting Strategist Played Role in Push for Census Citizenship Question," *NPR* (May 30, 2019), https://perma.cc/S9HQ-99Y5.

192.     DOJ and the Commerce Department reported that the White House had asserted the privilege over certain subpoenaed documents, including the individual priority documents and the drafts of the Gary Letter, and had claimed a blanket "protective assertion of executive privilege" over the remainder of the documents responsive to the Subpoenas.[275]

193.     The assertion is procedurally invalid, coming well after "the scheduled date of testimony or appearance" or a "due date" provided by the Committee Chair, as Committee Rules require.[276]

194.     The assertion also fails on the merits.  As to the "protective assertion," the only ground offered for casting an indiscriminate, all-encompassing cloak over the remaining documents was the purported need for additional time to review each document to determine whether privilege actually applies.  But months have passed with no apparent effort to undertake that review and no further productions of any documents in response to the Subpoenas—despite additional outreach from the Committee following the Departments' privilege assertion and the House's contempt vote.[277]

195.     The President is not alleged to have been a party to the communications identified in the Subpoenas, nor have the Defendants asserted that Presidential communications are among the responsive documents.  To the contrary, Secretary Ross has explicitly represented to the

---

[275] Letter from Stephen E. Boyd, Assistant Att'y Gen., Dep't of Justice, to Chairman Elijah E. Cummings, Comm. on Oversight and Reform (June 11, 2019), https://perma.cc/D439-FJZ9, *appended as* **Exhibit EEEE**.

[276] Rule 16(c) of the Committee on Oversight and Reform, 116th Cong.

[277] Letter from Chairman Elijah E. Cummings, Comm. on Oversight and Reform, to Attorney General William P. Barr, Dep't of Justice, and Secretary Wilbur L. Ross, Jr., Dep't of Com. (July 23, 2019), https://perma.cc/B7SW-57RY, *appended as* **Exhibit KKKK** (urging Secretary Ross and Attorney General Bar to "reconsider your position and comply with the Committee's subpoenas").

Committee in writing that "[n]o officials from the White House were a part of" the process of adding a citizenship question to the 2020 Census.[278]

196.    In light of that representation, there are only two possibilities:  Either Secretary Ross's statement is accurate, in which case the constitutionally-based Presidential communications privilege does not apply, or Secretary Ross's statement is inaccurate, in which case the Secretary deliberately provided yet more false information to Congress and the privilege is vitiated.

197.    More generally, it is axiomatic that Executive Privilege may not be invoked to conceal government wrongdoing.[279]  The Executive Branch itself has acknowledged that when, as here, inaccurate information has been provided to Congress, Executive Privilege cannot bar Congress from investigating the genesis of the inaccuracies.  In the Committee's investigation of Operation Fast and Furious, for example, DOJ requested that the President assert Executive Privilege over a number of documents, but excluded from that request internal deliberative communications that shed light on how DOJ furnished Congress with inaccurate information.[280]

---

[278] Letter from Wilbur L. Ross Jr., Secretary of Commerce, to the Honorable Elijah E. Cummings, U.S. House of Representatives (Dec. 21, 2018), https://perma.cc/HG4Y-4367, *appended as* **Exhibit HHHHH**.

[279] *In re Sealed Case*, 121 F.3d at 738 ("Where there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.") (internal citations and quotation marks omitted).

[280] Memorandum from Eric H. Holder, Jr., *Attorney General of the United States, to Barack Obama, President of the United States, Assertion of Executive Privilege Over Documents Generated in Response to Congressional Investigation Into Operation Fast and Furious*, 1, 6 (June 19, 2012), https://perma.cc/NP39-LDXZ (noting the Committee's "legitimate oversight interests" in understanding the origins of inaccurate information contained in a DOJ letter and emphasizing that the Department had shared more than 1,000 pages of internal deliberative material with the Committee "in acknowledgment that the [letter] contained inaccurate information"), *appended as* **Exhibit TTTT**.

Similarly, in this case, Executive Privilege cannot shield documents and communications that reveal how and why the Commerce Department made numerous false and misleading statements to the public, Congress, and the courts about the genesis of the citizenship question.

198.    Indeed, the assertion of Executive Privilege is uniquely inappropriate in this case. Among the government misconduct here—the reason the Supreme Court found bad faith in this record—is the very same attempt at concealment that the Defendants are now seeking to advance by cloaking their communications in the protection of the Constitution.  This Court should not permit Defendants to continue their concealment in yet another forum.  The Committee is entitled to complete its investigation and consider appropriate legislative responses.

## SPECIFIC CLAIMS FOR RELIEF

## COUNT I

## ARTICLE I OF THE CONSTITUTION

199.    The Committee incorporates by reference and re-alleges the preceding paragraphs, as if set forth fully herein.

200.    The Barr Subpoena was duly authorized, issued, and served pursuant to the Committee's authority under Article I of the Constitution of the United States.

201.    The Barr Subpoena was issued as part of the Committee's investigation of matters squarely within its legislative and oversight jurisdiction and pursuant to the Committee's legitimate legislative purpose.

202.    The Barr Subpoena requires Attorney General Barr to produce, in unredacted form, all documents set forth in the schedules attached to the Barr Subpoena, yet Attorney General Barr continues to refuse to do so.

203.    The Committee has repeatedly offered reasonable accommodations to facilitate the required productions, but the accommodations process is at an impasse.

204.     Attorney General Barr has violated and continues to violate his legal obligations by refusing to produce the unredacted documents as required by the Barr Subpoena.

205.     None of the bases and privileges asserted for withholding the subpoenaed documents is valid.

206.     Any applicable privileges have been waived by the Executive Branch's extensive prior statements concerning the decision to add a citizenship question to the Census.

207.     The Committee has been, and will continue to be, injured as a result of Attorney General Barr's defiance of the duly-authorized Barr Subpoena.

## COUNT II

## ARTICLE I OF THE CONSTITUTION

208.     The Committee incorporates by reference and re-alleges the preceding paragraphs, as if set forth fully herein.

209.     The Ross Subpoena was duly authorized, issued, and served pursuant to the Committee's authority under Article I of the Constitution of the United States.

210.     The Ross Subpoena was issued as part of the Committee's investigation of matters squarely within its legislative and oversight jurisdiction and pursuant to the Committee's legitimate legislative purpose.

211.     The Ross Subpoena requires Secretary Ross to produce, in unredacted form, all documents set forth in the schedule attached to the Ross Subpoena, yet Secretary Ross continues to refuse to do so.

212.     The Committee has repeatedly attempted to make reasonable accommodations for the required productions, but those efforts are at an impasse.

213.     Secretary Ross has violated and continues to violate his legal obligations by refusing to produce the unredacted documents as required by the Ross Subpoena.

214.    None of the bases and privileges asserted for withholding the subpoenaed documents is valid.

215.    Any applicable privileges have been waived by the Executive Branch's extensive prior statements concerning the decision to add a citizenship question to the Census.

216.    The Committee has been, and will continue to be, injured as a result of Attorney General Barr's defiance of the duly-authorized Barr Subpoena.

## PRAYER FOR RELIEF

Wherefore, the Committee respectfully prays that this Court:

A.    Enter declaratory and injunctive relief as follows:

a.    Declare that the Defendants' objections to the Subpoenas are invalid; and

b.    Declare that the Defendants' failure to produce the documents responsive to the Subpoenas either in their entirety or in unredacted form is without legal justification.

c.    Order the Defendants to produce immediately to the Committee, in unredacted form and including all emails and attachments in each email chain, copies of:

i.    The Uthmeier Memorandum;

ii.    The other 10 priority documents described in paragraph 91, *supra*;

iii.    All drafts of the Gary Letter;

iv.    All other communications from January 20, 2017, through December 12, 2017, between or among officials from the Commerce Department, the Census Bureau, and any other office or entity inside or outside of the government regarding the addition of the citizenship question; and

    v.  All other documents and communications from January 20, 2017

through December 12, 2017 within DOJ and with outside entities

regarding the request to add a citizenship question to the census,

including, but not limited to, communications between DOJ and

the White House, the Commerce Department, the Republican

National Committee, the Trump Campaign, and Members of

Congress.

B.    Retain jurisdiction to review and resolve additional disputes relating to Defendants'

compliance with any order or orders by this Court.

C.    Grant all other and further relief that is just and proper under the circumstances.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (D.C. Bar No. 253492),
    *General Counsel*
Todd B. Tatelman (VA Bar No. 66008),
    *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854),
    *Associate General Counsel*
Josephine Morse (D.C. Bar No. 1531317),
    *Associate General Counsel*
Adam A. Grogg (D.C. Bar No. 1552438)
    *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL[*]
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
Douglas.Letter@mail.house.gov

---

[*]Attorneys for the Office of General Counsel for the U.S. House of Representatives are entitled, for the purpose of performing the counsel's functions, to enter an appearance in any proceeding before any court of the United States or of any State or political subdivision thereof without compliance with any requirements for admission to practice before such court.  2 U.S.C. § 5571.

David A. O'Neil (D.C. Bar No. 1030615)
Anna A. Moody (D.C. Bar No. 1047647)
Laura E. O'Neill (D.C. Bar No. 1033764)
Nathaniel Johnson (D.C. Bar No. 241433) (*D.D.C. admission application pending*)
DEBEVOISE & PLIMPTON, LLP
801 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone:  (202) 383-8000

*Counsel for Plaintiff the Committee on Oversight and Reform, U.S. House of Representatives*

November 26, 2019