IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON OVERSIGHT AND REFORM,
UNITED STATES HOUSE OF REPRESENTATIVES
2157 Rayburn House Office Building
Washington, D.C. 20515,

                *Plaintiff*,

                v.

WILLIAM P. BARR, in his official capacity as
Attorney General of the United States,
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530; and

WILBUR L. ROSS, JR., in his official capacity as
Secretary of Commerce,
United States Department of Commerce,
1401 Constitution Avenue, N.W.
Washington, D.C. 20230,

                *Defendants*.

Case No. _____

# Exhibit J



**U.S. Department of Justice**

Office of Legislative Affairs

Office of the Assistant Attorney General			Washington, D.C. 20530

JUN 0 6 2019

The Honorable Elijah E. Cummings
Chairman
Committee on Oversight and Reform
U.S. House of Representatives
Washington, DC 20515

Dear Chairman Cummings:

    We write regarding the Committee on Oversight and Reform's (Committee) June 3, 2019 letter to the Department of Justice (Department) stating that the Committee intends to schedule a vote on a resolution to hold the Attorney General in contempt of Congress based on the Department's response to Committee requests for documents and testimony regarding the reinstatement of a citizenship question on the 2020 United States Census. The Committee's action is premature and we are disappointed by the Committee's mischaracterization of the Department's continued and ongoing efforts to accommodate the Committee's oversight interests.

    Since receiving the Committee's February 12, 2019 document request, and the April 2, 2019 subpoena that followed, the Department has sought to identify and to produce responsive documents and information to the Committee. Specifically, the Department has made eight submissions to the Committee in its ongoing, rolling document production totaling more than 17,000 pages (productions on February 25, 2019, March 15, 2019, March 29, 2019, April 11, 2019, April 16, 2019, April 26, 2019, May 10, 2019, and May 24, 2019). The Department has also identified tens of thousands more responsive pages that it is in the process of producing. At the same time, the Department has made two senior officials available for transcribed interviews by Committee staff. Last week, on May 30, 2019, Gene Hamilton, Counselor to the Attorney General, spent several hours answering all of the Committee's questions regarding the reinstatement of the citizenship question on the 2020 Census. Prior to that, John Gore, Principal Deputy Assistant Attorney General for the Civil Rights Division, voluntarily testified before the Committee on May 18, 2018 and appeared for a lengthy transcribed interview on March 7, 2019.

    Despite the Department's significant and ongoing efforts to accommodate the Committee's requests, your June 3 letter alleges lack of compliance by the Attorney General based on (1) the Committee's dissatisfaction with the Department's ongoing document production; and (2) the Attorney General's instruction that Mr. Gore not appear before the Committee for a third time, for a deposition, unless the Committee allows him to be accompanied by Department counsel.

    Let us address first the Attorney General's instruction concerning Mr. Gore's appearance. The Committee's oversight inquiries relate to Executive Branch decision-making. As we

The Honorable Elijah E. Cummings
Page Two

previously explained in our April 9, 2019 letter, the Executive Branch must be able to protect privileged information and to provide appropriate supervision to employees in connection with congressional communications regarding such matters. The Committee's exclusion of agency counsel from a compelled deposition of a Department official on these topics therefore would unconstitutionally infringe upon the prerogatives of the Executive Branch. As we indicated then, and as we reiterate now, the Department is willing to make Mr. Gore available for the requested deposition (or another transcribed interview) if the Committee permits agency counsel to accompany Mr. Gore.

With respect to the Department's ongoing document production, the Department has been working diligently and in good faith to make documents available, and it plans to continue its review and production in an effort to accommodate the Committee's requests. However, your June 3 letter indicates the Committee will consider postposing its contempt vote *only* if the Department immediately produces certain documents. These specific documents—a memorandum from a Commerce Department attorney to Mr. Gore and all drafts of a Department letter to the Census Bureau—are protected from disclosure by the attorney-client privilege, deliberative process privilege, and/or the attorney work product doctrine. Indeed, a federal court has already held the memorandum and note from a Commerce Department attorney to Mr. Gore and drafts of the Department's letter to the Census Bureau to be protected by such privileges.[1] Accordingly, the Committee's insistence that the Department immediately turn over these documents, in the face of a judicial order protecting them from disclosure, is improper. However, the Department intends to continue its substantial production of documents consistent with Executive Branch confidentiality interests.

As to both of these issues, the Department remains willing to continue working with the Committee to find a resolution that would balance Congress's "legitimate need for information that will help it legislate"[2] and the Department's "legitimate, constitutionally recognized need to keep certain information confidential."[3] One challenge, of course, has been the Committee's desire to conduct oversight of the Commerce Department's decision to reinstate the citizenship question on the 2020 Census while the matter is being actively litigated, rather than waiting a short period of time until the matter is resolved. Nonetheless, as discussed, the Department will continue to produce documents to the Committee as appropriate.

Given the ongoing accommodation efforts by the Department, we believe that a vote on contempt would be entirely premature. We hope that the Committee will not take such an abrupt

---

[1] The deliberative drafts of the letter from the Department to the Census Bureau were found to be appropriately withheld based on the deliberative process privilege. Order, Docket No. 369 at 5, *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (Oct 5, 2018) ("the Court concludes that the drafts of the 'Gary Letter' . . . are protected by the deliberative process privilege and, given DOJ's subordinate role in Secretary Ross's decision to add the citizenship question, need not be disclosed"). The memorandum and note provided by a Commerce Department attorney to Mr. Gore were found to be appropriately withheld on attorney-client privilege grounds. *See* Min. Order, Docket No. 361, *State of New York, et al. v. U.S. Dep't of Commerce, et al.*, 18-CV-2921 (Sept. 30, 2018) ("The Court upholds Defendants' invocation of the attorney-client privilege with respect to the remaining disputed documents, substantially for the reasons stated in Defendants' opposition").

[2] *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 157 (1989).

[3] *Id.* at 157-58.

The Honorable Elijah E. Cummings
Page Three

measure to terminate the accommodation process, but will instead work in good faith to respect the legitimate prerogatives of each of our co-equal branches.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General

cc:     The Honorable Jim Jordan
        Ranking Member

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON OVERSIGHT AND REFORM,
UNITED STATES HOUSE OF REPRESENTATIVES
2157 Rayburn House Office Building
Washington, D.C. 20515,

      *Plaintiff*,

    v.

WILLIAM P. BARR, in his official capacity as
Attorney General of the United States,
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530; and

WILBUR L. ROSS, JR., in his official capacity as
Secretary of Commerce,
United States Department of Commerce,
1401 Constitution Avenue, N.W.
Washington, D.C. 20230,

      *Defendants*.

Case No. _____

# Exhibit K



*Office of the Assistant Attorney General*

**U.S. Department of Justice**

Office of Legislative Affairs

*Washington, D.C. 20530*

June 12, 2019

The Honorable Elijah E. Cummings
Chairman
Committee on Oversight and Reform
U.S. House of Representatives
Washington, DC  20515

Dear Chairman Cummings:

  Yesterday, the Department of Justice (Department) requested that Committee on Oversight and Reform (Committee) postpone today's scheduled vote recommending a resolution citing the Attorney General and the Secretary of Commerce for contempt, and permit the accommodation process to continue.  We received your response shortly before 7:30 p.m. last night in which you declined our request that you hold the subpoenas in abeyance and delay any vote on whether to recommend a citation of contempt for noncompliance with the subpoenas, pending the President's determination of an assertion of executive privilege.

  You offered the Department until 9:00 p.m. last night to agree to produce, by today, unredacted copies of the priority documents identified in items 1 and 2 of the schedules for the subpoenas.  But the Department has explained to the Committee on several occasions that these identified documents consist of attorney-client communications, attorney work product, and deliberative communications, and a federal court has already held many of these documents to be privileged in litigation.  The Committee has made no effort to square its demands with these established confidentiality interests, or the parallel privileges that were already upheld by a federal judge.

  While the Department is currently unable to produce these privileged materials, the Department has made ongoing and continued efforts toward accommodation.  Specifically, the Department has offered to make John Gore available for an additional interview, so long as he may be accompanied by Department counsel, and to continue to produce tens of thousands of additional pages of documents we have identified as responsive to the subpoena.  Contrary to the Committee's characterization of the Department's document productions to date, these submissions have included non-public, internal communications—including a number of emails that were introduced by Committee staff as exhibits in the recent transcribed interview of a Counselor to the Attorney General.  Further, the additional documents the Department had been planning to produce would have included similar communications.  Nonetheless, we understand

The Honorable Elijah E. Cummings
Page Two

that our counter-offer towards accommodation has not been accepted, and that the Committee will accept nothing but obviously privileged materials. We regret that the Committee has elected to proceed in this fashion.

By proceeding with today's vote, you have abandoned the accommodation process with respect to your requests and subpoenas for documents concerning the Secretary's decision to include a citizenship question on the 2020 Census. The Executive Branch has engaged in good-faith efforts to satisfy the legislative needs of the Committee. Moreover, until the Committee's abrupt decision to seek a contempt resolution, the Department was prepared to provide a significant number of additional documents responsive to the Committee's April 2, 2019 subpoena. Unfortunately, rather than allowing the Department to complete its document production, you have chosen to go forward with an unnecessary and premature contempt vote.

Accordingly, this letter is to advise you that the President has asserted executive privilege over certain subpoenaed documents identified by the Committee in its June 3, 2019 letters to the Attorney General and the Secretary—specifically, the documents listed in item 1 of the schedules for each of the subpoenas, as well as drafts of the Department's December 12, 2017 letter to the U.S. Census Bureau. These documents are protected from disclosure by the deliberative process, attorney-client communications, or attorney work product components of executive privilege. In addition, the President has made a protective assertion of executive privilege over the remainder of the subpoenaed documents. As I indicated in my letter to you yesterday, this protective assertion ensures the President's ability to make a final decision whether to assert privilege following a full review of these materials. *See* Letter for the President, from William P. Barr, Attorney General at 1–2 (May 8, 2019); *Protective Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 1 (1996) (opinion of Attorney General Janet Reno). Regrettably, you have made these assertions necessary by your insistence upon scheduling a premature contempt vote.

Very truly yours,

Stephen E. Boyd
Assistant Attorney General

Enclosure

cc:   The Honorable Jim Jordan
      Ranking Member



# The Attorney General
Washington, D.C.

June 11, 2019

The President
The White House
Washington, D.C.  20500

Dear Mr. President,

    The Secretary of Commerce and I are requesting that you assert executive privilege with respect to documents responsive to a subpoena served on the Department of Justice and a subpoena served on the Department of Commerce by the Committee on Oversight and Reform of the United States House of Representatives ("Committee") on April 2, 2019.  The subpoenas relate to the Committee's investigation into the Secretary's decision to include a citizenship question on the 2020 decennial census questionnaire.  The Committee has scheduled a meeting for June 12, 2019, to vote on a resolution holding the Secretary and me in contempt of Congress for failing to comply with the subpoenas.  This letter formally requests you assert executive privilege and explains the legal basis for such an assertion.[1]

## I.

    On December 12, 2017, the General Counsel of the Justice Management Division sent a letter to the U.S. Census Bureau requesting the reinstatement of a question regarding citizenship on the 2020 decennial census questionnaire.  The letter stated that citizenship data is critical to the Department of Justice's enforcement of the Voting Rights Act and its protections against racial discrimination in voting.  The Department explained that, to enforce the Act's requirements, it needs a reliable calculation of the citizen voting-age population in localities where voting rights violations are alleged or suspected, and that the census is the most appropriate vehicle for collecting that data.  Approximately three months later, on March 26, 2018, the Secretary announced that he was reinstating a citizenship question on the census in response to the Department's request.

    On January 8, 2019, the Committee sent a letter to the Secretary requesting an extremely broad set of documents regarding the Secretary's decision to include the citizenship question on the census questionnaire.  On February 12, 2019, the Committee sent a letter to the Acting Attorney General requesting similar documents regarding the Department of Justice's role in that decision.  The Departments promptly began producing thousands of responsive documents to the Committee on a rolling basis, and made multiple witnesses available for interviews.

---

[1] The Secretary of Commerce has made a parallel request. *See* Letter for the President, from Wilbur Ross, Secretary, Department of Commerce (June 11, 2019).

Despite these efforts, the Committee issued separate subpoenas to the Secretary and me on April 2, 2019, seeking many of the documents requested in the Committee's January 8 and February 12 letters. The subpoena issued to the Secretary requested eleven specific documents, including emails between the Secretary and his close advisers, as well as emails and documents produced by or sent to an attorney in the Department of Commerce's Office of General Counsel. The subpoena also requested all communications from January 20, 2017 through December 12, 2017 among Department of Commerce officials or between such officials and outside entities concerning the citizenship question. The subpoena issued to me requested a memorandum and note to the Acting Assistant Attorney General for the Department of Justice's Civil Rights Division from the same Department of Commerce attorney regarding the citizenship question. The subpoena also requested all documents and communications from January 20, 2017 through December 12, 2017 within the Department of Justice and with outside entities regarding the Department of Justice's request to include the citizenship question.

The Department of Justice and the Department of Commerce have made substantial efforts to accommodate the Committee's oversight interests concerning the citizenship question. To date, the Department of Commerce has produced almost 14,000 pages of responsive documents. The Secretary testified before the Committee for nearly seven hours, and the Department of Commerce also agreed to make available for voluntary transcribed interviews its General Counsel, a senior advisor to the Secretary, and a former senior counsel to the General Counsel. The Department of Justice, meanwhile, has made eight document submissions to the Committee between February and May of 2019 that total more than 17,000 pages. In addition, the Principal Deputy Assistant Attorney General for the Civil Rights Division voluntarily appeared for a transcribed interview, as did a Counselor to the Attorney General.

While the Department of Justice and the Department of Commerce have produced an extensive amount of material, both Departments have withheld from production a limited number of documents that are covered by components of executive privilege, including the deliberative process, attorney-client, and attorney work product components. A federal court has held that many of these same documents are privileged from disclosure in ongoing litigation over the inclusion of the citizenship question on the census. *See State of New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 451 n.7 (S.D.N.Y. 2018) (noting denials of motions to compel on, *inter alia*, "deliberative-process-privilege grounds" and "attorney-client-privilege grounds"). Despite the Executive Branch's good-faith efforts at accommodating the Committee's information needs, on June 3, 2019, the Committee sent separate letters to the Secretary and me stating that it would schedule a vote to hold each of us in contempt of Congress as a result of our purported failures to comply with the April 2 subpoenas. Although the Committee demanded an immediate production of all subpoenaed documents in unredacted form, it stated that it would consider postponing the contempt vote if the Secretary and I produced certain documents of priority to the Committee. Those documents include (i) the eleven documents specified in the Committee's subpoena to the Secretary; and (ii) the memorandum and note to the Acting Assistant Attorney General for the Civil Rights Division from the Department of Commerce attorney, as well as all drafts of the Department of Justice's December 2017 letter to the U.S.

Census Bureau requesting the inclusion of a citizenship question. The Committee's contempt vote is currently scheduled for June 12, 2019.[2]

## II.

In my view, production of the priority documents identified in the Committee's June 3 letters—all of which involve predecisional deliberative material, attorney-client communications, or attorney work product—would have a significant chilling effect on future deliberations among senior executive branch officials, and would compromise the confidentiality on which the Executive Branch's attorney-client relationships depend. These confidentiality concerns are heightened at this time because, as noted above, a federal court has held that a number of these documents are protected by privilege in ongoing litigation. Accordingly, the Secretary and I respectfully request that you assert executive privilege over the specific documents identified in the Committee's June 3 letters. We also request that you make a protective assertion of executive privilege with respect to the remainder of the subpoenaed documents in order to give the Departments of Commerce and Justice time to determine whether a conclusive assertion of executive privilege would be necessary with respect to any of the remaining documents.

### A.

The priority documents requested in the Committee's June 3 letters fit squarely within the scope of executive privilege. Executive privilege flows from the authorities vested in the President by Article II of the Constitution and "has been asserted by numerous Presidents from the earliest days of our Nation." *Congressional Requests for Confidential Executive Branch Information*, 13 Op. O.L.C. 153, 154 (1989) ("*Requests for Confidential Information*"). It is "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974).

One category of documents protected by executive privilege is "Executive Branch deliberative communications." *Assertion of Executive Privilege Over Communications Regarding EPA's Ozone Air Quality Standards and California's Greenhouse Gas Waiver Request*, 32 Op. O.L.C. 1, 2 (2008) ("*EPA Assertion*") (opinion of Attorney General Michael B. Mukasey).[3] The Supreme Court has recognized "the valid need for protection of

---

[2] The Committee has also indicated that it scheduled the contempt vote based on my instruction to a Department of Justice official not to appear for a deposition without the assistance of agency counsel. As the Department has explained, the Committee may not constitutionally prohibit agency counsel from accompanying agency employees called to testify about matters that potentially involve information protected by executive privilege. *See Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 43 Op. O.L.C. __ (May 23, 2019). Therefore, the congressional subpoena purporting to require the Department official to appear without agency counsel was legally invalid, and my instruction to the Department official was lawful and necessary to prevent such a constitutional violation.

[3] *See also Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1, 2 (2007) ("*U.S. Attorneys Assertion*") (opinion of Acting Attorney General Paul D. Clement); *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 1–2 (1999) ("*Clemency Assertion*") (opinion of Attorney General Janet Reno); *Assertion of Executive*

communications between high Government officials and those who advise and assist them in the performance of their manifold duties," concluding that "the importance of this confidentiality is too plain to require further discussion." *Nixon*, 418 U.S. at 705. "Threat of compelled disclosure of confidential Executive Branch deliberative material can discourage robust and candid deliberations, for '[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process.'" *Assertion of Executive Privilege Over Documents Generated in Response to Congressional Investigation into Operation Fast and Furious*, 36 Op. O.L.C. __, at *3–4 (June 19, 2012) ("*Fast and Furious Assertion*") (opinion of Attorney General Eric H. Holder, Jr.) (quoting *Nixon*, 418 U.S. at 705). It is for this reason that Presidents have repeatedly asserted executive privilege to protect confidential deliberative materials of senior executive branch officials from congressional disclosure.[4]

The priority documents requested in the Committee's June 3 letters—the eleven documents identified in the subpoena to the Secretary, the memorandum and note concerning the citizenship question drafted by a Department of Commerce attorney, and drafts of the Department of Justice's 2017 letter requesting the inclusion of the citizenship question—are deliberative communications protected by executive privilege. Each of these documents or communications was generated in the course of the deliberative process concerning either the Secretary's decision to reinstate a citizenship question or the Department of Justice's decision to request that such a question be reinstated, and reflect the internal advice, opinions, or recommendations of senior executive branch officials. All of the Commerce documents predate the Secretary's March 2018 decision to reinstate a citizenship question, and all of the Justice documents predate its 2017 letter requesting the inclusion of the question. To protect the integrity of executive branch decision-making, department heads and their advisers must be able to engage in full and candid discussions about the advantages and disadvantages of significant and sensitive decisions, such as the Secretary's decision to include the citizenship question on the census questionnaire. Indeed, a federal court has already held that some of these priority documents, such as certain of the drafts of the 2017 letter requesting the inclusion of the citizenship question, are protected by the deliberative process privilege for substantially similar reasons. *See* Memorandum Opinion and Order at 5, *State of New York v. U.S. Dep't of Commerce*, No. 18-CV-2921 (S.D.N.Y. Oct. 5, 2018) (Dkt. No. 369).

Executive privilege also protects attorney-client communications and attorney work product. *Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 2, 3 (1996) (opinion of Attorney General Janet Reno). In the common law, the attorney-client privilege "is the oldest of the privileges for confidential communications." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and

---

*Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 2, 3 (1996) (opinion of Attorney General Janet Reno).

[4] *See, e.g., Fast and Furious Assertion*, 36 Op. O.L.C. at *2–5; *EPA Assertion*, 32 Op. O.L.C. at 2–3; *Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 8–11 (2008); *Assertion of Executive Privilege with Respect to Prosecutorial Documents*, 25 Op. O.L.C. 1, 1–2 (2001); *Clemency Assertion*, 23 Op. O.L.C. at 1–4; *Assertion of Executive Privilege in Response to a Congressional Subpoena*, 5 Op. O.L.C. 27, 29–31 (1981) (opinion of Attorney General William French Smith).

frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* As for attorney work product, in the ordinary case, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). Were attorney work product "open to opposing counsel on mere demand, . . . [i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial . . . , [a]nd the interests of the clients and the cause of justice would be poorly served." *Id.* at 511. These considerations apply with even greater force where senior executive branch officials are the clients. These officials must be able to have free and frank consultations with their attorneys about the scope of their legal authorities and responsibilities, without fear that these discussions, or attorney work product generated in preparation for potential litigation, will be publicized.

Some of the priority documents requested by the Committee are covered by the attorney-client-communications or attorney-work-product components of executive privilege. Specifically, the memorandum and note drafted by an attorney in the Department of Commerce's Office of General Counsel contain legal analysis, recommendations, and advice concerning the reinstatement of a citizenship question. Versions of this memorandum were transmitted to the Secretary as well as to the Acting Assistant Attorney General for the Department of Justice's Civil Rights Division, and in both instances offered advice to a client regarding the legal authority and pertinent case law for various potential courses of action and the strengths and weaknesses of these alternatives. Moreover, the attorney was asked to prepare the memorandum precisely because the Departments expected that litigation would follow a decision to include the citizenship question. If the attorney-work-product doctrine is to have any force, then an executive branch agency may not be required to disclose attorney work product developed in preparation for potential litigation while that very litigation is ongoing. For these reasons, the memorandum drafted by the Department of Commerce attorney, and the note ancillary to it, fit comfortably within the attorney-client-communications and attorney-work-product components of executive privilege. This conclusion, too, is consistent with a federal court's holding that the memorandum is protected by the common-law attorney-client privilege. *See* Order, *New York*, No. 18-CV-2921 (Sept. 30, 2018) (Dkt. No. 361).

Accordingly, I conclude that the subpoenaed materials identified as priority documents in the Committee's June 3, 2019 letters clearly fall within the scope of executive privilege.

### B.

I next explain the need for you to make a protective assertion of executive privilege with respect to the remainder of the documents requested in the Committee's April 2 subpoenas to the Secretary and me. In cases "where a committee has declined to grant sufficient time to conduct a full review, the President may make a protective assertion of privilege to protect the interests of the Executive Branch pending a final determination about whether to assert privilege." Letter for the President, from William P. Barr, Attorney General at 1–2 (May 8, 2019); *Protective Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 1 (1996) ("*Protective Assertion of Executive Privilege*") (opinion of Attorney General Janet Reno). The remainder of the requested documents—identified in item 2 of the schedule for each of the subpoenas—include all documents and communications between Department of

5

Commerce and Department of Justice officials within and outside of the Executive Branch through most of 2017 regarding the decision to include a citizenship question on the census questionnaire. That extremely broad request sweeps in many tens of thousands of pages of information, much of which has already been produced to the Committee, but much of which the Departments of Justice and Commerce are still continuing to process. These materials, which may include documents withheld on privilege grounds during ongoing litigation, undoubtedly have the potential to include additional deliberative, attorney-client, or attorney work product documents protected by executive privilege.

Consistent with paragraph 5 of President Reagan's 1982 memorandum about assertions of executive privilege, the Department of Justice has requested that the Chairman of the Committee hold the subpoenas in abeyance and delay any vote recommending that the House of Representatives approve contempt resolutions for failing to comply with the subpoenas, pending a final presidential decision on whether to invoke executive privilege as to the remainder of the documents. *See* Memorandum for the Heads of Executive Departments and Agencies, *Re: Procedures Governing Responses to Congressional Requests for Information* at 2 (Nov. 4, 1982). The Chairman, however, has not agreed to adjourn the markup session scheduled for 10 a.m. on June 12 on a resolution recommending findings of contempt. In these circumstances, where a department lacks sufficient time to review the requested documents, you may properly assert executive privilege with respect to the entirety of the remaining materials that the Committee has demanded, pending a final decision on the matter. You would be making only a preliminary, protective assertion of executive privilege designed to ensure your ability to make a final assertion, if necessary, over some or all of the remaining materials. *See Protective Assertion of Executive Privilege*, 20 Op. O.L.C. at 1. I conclude that such a preliminary, protective assertion is legally permissible.

### III.

A congressional committee "may overcome an assertion of executive privilege only if it establishes that the subpoenaed documents are '*demonstrably critical* to the responsible fulfillment of the Committee's functions.'" *Assertion of Executive Privilege Concerning the Special Counsel's Interviews of the Vice President and Senior White House Staff*, 32 Op. O.L.C. 7, 11 (2008) (quoting *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731 (D.C. Cir. 1974) (en banc)) (emphasis added).[5] "Those functions must be in furtherance of Congress's legitimate legislative responsibilities," *id.*, because "[c]ongressional oversight of Executive Branch actions is justifiable only as a means of facilitating the legislative task of enacting, amending, or repealing laws," *Assertion of Executive Privilege in Response to a Congressional Subpoena*, 5 Op. O.L.C. 27, 29–31 (1981) ("*1981 Assertion*") (opinion of Attorney General William French Smith); *see McGrain v. Daugherty*, 273 U.S. 135, 176 (1927) (congressional oversight power may be used only to "obtain information in aid of the legislative function"). The Committee has not satisfied that high standard here.

---

[5] *See also, e.g., U.S. Attorneys Assertion*, 31 Op. O.L.C. at 2; *Clemency Assertion*, 23 Op. O.L.C. at 2; *Nixon*, 418 U.S. at 707 ("[I]t is necessary to resolve those competing interests in a manner that preserves the essential functions of each branch.").

The Committee has asserted that it needs the subpoenaed documents because it is investigating "the actual reasons behind the Trump Administration's decision to add a citizenship question to the 2020 Census." Letter for Wilbur L. Ross, Jr., Secretary, Department of Commerce, from Elijah E. Cummings, Chairman, Committee on Oversight and Reform, U.S. House of Representatives at 2–3 (June 3, 2019) ("Cummings Letter to Ross"); *see* Letter for William P. Barr, Attorney General, from Elijah E. Cummings, Chairman, Committee on Oversight and Reform, U.S. House of Representatives at 2–3 (June 3, 2019) ("Cummings Letter to Barr") (similar). According to the Committee, the Secretary "began a secret campaign to add the citizenship question just days after assuming [his] post and several months before any request from the Department of Justice." Cummings Letter to Ross at 2; *see* Cummings Letter to Barr at 2 (similar). The Committee believes that "the real reason the Trump Administration sought to add the citizenship question was not to help enforce the Voting Rights Act at all, but rather to gerrymander congressional districts in overtly racist, partisan, and unconstitutional ways." Cummings Letter to Ross at 2; *see* Cummings Letter to Barr at 2 (similar). The Committee has stated that its investigation "may lead to legislation" concerning the processes and notification requirements for adding questions to the census. Cummings Letter to Ross at 6; *see* Cummings Letter to Barr at 6 (similar).

The Constitution authorizes Congress to enact laws governing the census. *See* U.S. Const. art. I, § 2. Thus, I recognize that the Committee has legitimate oversight interests in this area generally. It is not sufficient, however, that the subpoenaed documents may, at some level, relate to a legitimate oversight interest. To overcome an assertion of executive privilege, a congressional committee must "point[] to . . . specific legislative decisions that cannot responsibly be made without access to [the privileged] materials." *Senate Select Comm.*, 498 F.2d at 733. "While fact-finding by a legislative committee is undeniably a part of its task, legislative judgments normally depend more on the predicted consequences of proposed legislative actions and their political acceptability, than on precise reconstruction of past events." *Id.* at 732; *see also Requests for Confidential Information*, 13 Op. O.L.C. at 159 ("Congress will seldom have any legitimate legislative interest in knowing the precise predecisional positions and statements of particular executive branch officials.").

The Committee has yet to identify any specific legislative need for the subpoenaed documents, much less a "demonstrably critical" one. *Senate Select Comm.*, 498 F.2d at 731. It is difficult to conceive how the Secretary's deliberative emails regarding the inclusion of the citizenship question, or an attorney's legal analysis and assessment regarding that inclusion, are necessary predicates to Congress's enactment of legislation regarding the census. Rather, the Committee appears to believe it may investigate any and all processes of decision-making in the Executive Branch regarding the census, regardless of whether that investigation has any bona fide relationship to possible legislation, and regardless of whether that investigation intrudes on executive branch prerogatives.

Thus, what the Committee appears to seek is a "precise reconstruction of past events," not because there are "specific legislative decisions that cannot responsibly be made without" it, but simply for the sake of the information itself. *Id.* at 732–33. That purpose does not clear the high bar required to overcome an assertion of executive privilege. The "informing function" that Congress possesses under Article I "is that of informing itself about subjects susceptible to legislation, not that of informing the public." *Miller v. Transamerican Press, Inc.*, 709 F.2d 524,

531 (9th Cir. 1983) (citing *Hutchinson v. Proxmire*, 443 U.S. 111, 132–33 (1979)); *see also Assertion of Executive Privilege Concerning the Dismissal and Replacement of U.S. Attorneys*, 31 Op. O.L.C. 1, 4 (2007) ("Broad, generalized assertions that the requested materials are of public import are simply insufficient under the 'demonstrably critical' standard."). The Committee has not identified any "specific legislative decisions that cannot responsibly be made without access" to the privileged materials. *Senate Select Comm.*, 498 F.2d at 733.

The Departments of Justice and Commerce, moreover, have already made extensive efforts to accommodate the Committee's requests. As discussed above, each Department has produced tens of thousands of pages of responsive documents and has made senior officials available for hearings and transcribed interviews—and that process remains ongoing. Except where the Committee unconstitutionally demanded that executive branch officials appear without agency counsel, the Executive Branch has made every official requested by the Committee in this investigation available to testify, declining to answer only those questions that implicated a protected privilege. *See Attempted Exclusion of Agency Counsel from Congressional Depositions of Agency Employees*, 43 Op. O.L.C. __ (May 23, 2019). In my view, through these efforts, the two Departments have been fulfilling in good faith their constitutional "obligation . . . to make a principled effort to acknowledge, and if possible to meet, the [Committee's] legitimate needs." *1981 Assertion*, 5 Op. O.L.C. at 31.

Accordingly, when I balance the Committee's attenuated legislative interest in the subpoenaed documents against the Executive Branch's strong interest in protecting the confidentiality of its internal deliberations and the integrity of attorney-client communications and attorney work product, I conclude that the Committee has not established that the subpoenaed documents are "demonstrably critical to the responsible fulfillment" of the Committee's legitimate legislative functions. *Senate Select Comm.*, 498 F.2d at 731.

### IV.

For the reasons set forth above, I have concluded that you may properly assert executive privilege over the priority subpoenaed documents identified in the Committee's June 3, 2019 letters, and may properly make a protective assertion of executive privilege with respect to the remainder of the subpoenaed documents to give the Departments of Commerce and Justice time to determine whether any remaining documents may be subject to privilege. I respectfully request that you do so.

Sincerely,

William P. Barr
Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON OVERSIGHT AND REFORM, UNITED STATES HOUSE OF REPRESENTATIVES 2157 Rayburn House Office Building Washington, D.C. 20515, <br><br> *Plaintiff*, <br><br> v. <br><br> WILLIAM P. BARR, in his official capacity as Attorney General of the United States, United States Department of Justice 950 Pennsylvania Avenue, N.W. Washington, D.C. 20530; and <br><br> WILBUR L. ROSS, JR., in his official capacity as Secretary of Commerce, United States Department of Commerce, 1401 Constitution Avenue, N.W. Washington, D.C. 20230, <br><br> *Defendants*. | Case No. _____ |

# Exhibit L

 

July 17, 2019

The Honorable Nancy Pelosi
Speaker
U.S. House of Representatives
Washington, DC 20515

Dear Madam Speaker:

We write to strongly oppose the pending resolution of the Committee on Oversight and Reform ("Committee") concerning the decision to reinstate a citizenship question on the 2020 Census. It is unfortunate that in spite of our Departments' substantial efforts to accommodate the Committee's interests, the Committee—and now the House of Representatives—has chosen to go forward with an unjustified contempt vote regarding a citizenship question that, as you know, will not be asked on the 2020 Census questionnaire.

We regret that the Committee continues to recommend the House wield its criminal contempt authority even though we remain willing to work towards an appropriate accommodation notwithstanding the privileged status of the documents at issue and the active litigation that remains pending in this matter. By taking this action, the House is both unnecessarily undermining inter-branch comity and degrading the constitutional separation of powers and its own institutional integrity.

Our Departments are committed to working to accommodate the oversight needs of the Congress in a manner that is consistent with our respective responsibilities, while also protecting the Executive Branch's confidentiality interests and privileges. In the spirit of that commitment, the Departments have made significant efforts to accommodate requests from the Committee concerning the Census matter. We strongly disagree with any suggestion that our Departments have obstructed this investigation.

It is unfortunate that the House has scheduled a vote to hold two sitting members of the President's Cabinet in contempt of Congress given the clear record of cooperation. As the Committee well knows, the limited materials still at issue are subject to a number of legal privileges that have been upheld in the pending litigation, as well as the President's assertion of executive privilege. Our Departments' records of cooperation with the Committee over the past several months demonstrates our commitments to the constitutionally required accommodation process and demonstrates that any contempt vote is, at best, premature.

The Departments' engagement with the Committee in a good-faith accommodation process is rooted in the separation of powers. As part of that process, both Departments have made multiple witnesses available for voluntary transcribed interviews and have produced more than 30,000 pages of documents to the Committee. Before the Committee abruptly and prematurely terminated the accommodation process last month, the Department of Justice intended to provide a significant number of additional documents identified as responsive to the Committee's subpoena.

Rather than seriously engage in the constitutionally mandated accommodation process, the Committee instead recommended that the House vote on a contempt resolution regarding the Departments' purported failure to comply with the Committee's subpoenas (including, notably, a number of "priority" documents identified by the Committee). These "priority" documents identified by the Committee are within a limited subset that is firmly protected from disclosure by the deliberative process, attorney-client communications, or attorney work product components of executive privilege. The Departments have been consistent—as have the courts considering the reinstatement of the citizenship question on the 2020 Decennial Census—that the documents the Committee seeks are protected from disclosure by these time-honored privileges. In order to ensure the free-flow of advice and decision making and to avoid compromising the ongoing litigation, we have not waived those privileges.

The Departments have already accommodated numerous Committee requests. The key remaining issue is how the Departments and the Committee will address the material that is protected by privileges that have been repeatedly reaffirmed by the courts. There is no information to hide; there are institutional integrities to preserve. Given that the Departments have been responsive and accommodating to the Committee's requests, it is unreasonable, counterproductive, and contrary to the constitutionally mandated accommodation process that the Committee would do so little to accommodate the Executive Branch's legitimate confidentiality interests.

Accordingly, we urge that the House postpone the contempt vote in order to allow the constitutionally mandated accommodation process to continue. And we respectfully remind the Committee that the constitutionally required obligation to engage in good-faith accommodation cuts both ways.

Sincerely,

William P. Barr
Attorney General

Wilbur L. Ross, Jr.
Secretary of Commerce

cc: The Honorable Kevin McCarthy, Republican Leader
The Honorable Elijah Cummings, Chairman, Committee on Oversight and Reform
The Honorable Jim Jordan, Ranking Member, Committee on Oversight and Reform