# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMMITTEE ON OVERSIGHT AND REFORM, UNITED STATES HOUSE OF REPRESENTATIVES<br><br>*Plaintiff,*<br><br>v.<br><br>WILLIAM P. BARR, in his official capacity as Attorney General of the United States, *et al.*,<br><br>*Defendants.* | Case No. 1:19-cv-3557-RDM |

## DEFENDANTS' MOTION TO HOLD BRIEFING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION OR FOR EXPEDITED SUMMARY JUDGMENT IN ABEYANCE PENDING FORTHCOMING DC CIRCUIT OPINION ADDRESSING THE COURT'S JURISDICTION, OR IN THE ALTERNATIVE, FOR A REASONABLE BRIEFING SCHEDULE

### INTRODUCTION

On January 3, 2020 — approximately three weeks from now — the Court of Appeals for this Circuit will hear oral argument in *Committee on the Judiciary of the United House of Representatives v. McGahn*, No. 19-5331 (D.C. Cir. 2019), which the court ordered the parties to brief and argue on an extremely expedited schedule. *See* Order, Doc. No. 18118063. That case — like this one — presents substantial and complex questions implicating the court's authority to hear this suit, including whether the House of Representatives has Article III standing to sue to enforce a congressional subpoena against the Executive Branch, *see Raines v. Byrd*, 521 U.S. 811 (1997); whether district courts have statutory subject matter jurisdiction to hear subpoena-enforcement suits brought by the House against the Executive Branch under 28 U.S.C. § 1331;

1

and whether there exists an implied cause of action for the House to judicially enforce its subpoenas directly under Article I.  The D.C. Circuit in *McGahn* has already issued an administrative stay of a district court order rejecting the Executive Branch's positions on these issues, *see* Order, *supra*, and its decision in *McGahn* will control whether this Court has the power to hear this case. Given the extraordinarily expedited proceedings in *McGahn*, the circuit court will undoubtedly issue a swift ruling that will either eliminate this case entirely or dramatically reduce the number of issues this Court must resolve.  Accordingly, the Court should hold this matter in abeyance pending the Circuit's decision in *McGahn*.

At the same time, there is no urgency that could possibly warrant expedited briefing of these weighty constitutional issues over the upcoming holidays.  The Committee on Oversight and Reform ("the Committee") has identified no legislation with a prospect of soon becoming law based on the subpoenaed documents (which are related to the permanently enjoined and now-abandoned effort to add a citizenship question to the 2020 census, *see* Complaint ¶ 6), and the Committee made no effort whatsoever to judicially enforce the subpoenas at issue between July 17, 2019, when it held Defendants in contempt, *id.* ¶ 126, and November 26, 2019, when it suddenly commenced this litigation.  After waiting nearly five months to seek relief, the Committee cannot now be heard to claim "irreparable injury" sufficient to justify the extraordinarily compressed briefing schedule it will apparently seek here. Instead, this Court should (1) await the forthcoming decision in *McGahn* before proceeding further in this matter; or alternatively, (2) set a briefing schedule whereby the government responds to the Committee's

forthcoming Motion for a Preliminary Injunction or for Expedited Summary Judgment no sooner than January 31, 2019 (60 days from service of the Complaint).[1] *Cf.*, Fed. R. Civ. P. 12(a)(2).

## LEGAL STANDARD

This Court has the inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). That broad discretion includes the "inherent power to control the sequence in which it hears matters on its calendar." *United States v. W. Elec. Co.*, 46 F.3d 1198, 1207 n.7 (D.C. Cir. 1995). Such authority applies "especially in cases of extraordinary public moment," when "a plaintiff may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (citation omitted). In evaluating a motion such as this, the "key interests to consider" are "hardship to the parties and benefits to judicial economy." *Nat'l Indus. for the Blind v. Dep't of Veterans Affairs*, 296 F. Supp. 3d 131, 137 (D.D.C. 2017). As is the case here, the discretion to stay proceedings "may be appropriately exercised where a separate proceeding bearing upon the case is pending." *Hulley Enterprises Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 276 (D.D.C. 2016).

The Court's inherent power to control its docket is not diminished when a litigant invokes the court's emergency powers under Federal Rule of Civil Procedure 65. Local Rule 65.1 provides that, upon request of the moving party, "together with a statement of the facts which make expedition essential," the Court will hear an application for preliminary injunction within 21 days

---

[1] During the parties' conference in preparation for their Joint Status Report, counsel for defendants advised counsel for the Committee of their intention to file this motion. Counsel for the Committee stated that they oppose this motion, and indicated their intention to move this week for a preliminary injunction or in the alternative, for expedited summary judgment. *See* Joint Status Report (Dec. 11, 2019) (ecf #7).

of filing.  Importantly, however, no hearing is required if the Court "makes a finding that a later hearing date will not prejudice the parties."  L. Civ. R.  65.1(d); *see M.M.M. on behalf of J.M.A. v. Sessions*, 318 F. Supp. 3d 310, 312 (D.D.C. 2018) (holding in abeyance motion for preliminary injunction due to upcoming proceedings in another case that presented the same issues as those in the preliminary injunction motion).  Here, where any alleged emergency is manufactured, and expedition is neither essential nor justified, there is no barrier to the Court holding the Committee's motion in abeyance pending the forthcoming decision in *McGahn,* or setting a reasonable briefing schedule appropriate to the importance and complexity of the issues.

## ARGUMENT

I. **THE DECISION IN *MCGAHN* WILL ALMOST CERTAINLY CONTROL THE COURT'S POWER TO HEAR THIS CASE, AND THE COURT SHOULD THEREFORE AWAIT ITS OUTCOME.**

This Court should hold this matter in abeyance pending the decision in *McGahn*, a ruling that will bind this Court and almost certainly determine whether this Court has the power to hear this case.  The jurisdictional issues pending before the D.C. Circuit are the same as those presented here and include (i) whether a subpoena-compliance dispute between Congress and the Executive Branch presents a justiciable Article III controversy; (ii) whether there exists statutory subject matter jurisdiction over a subpoena-enforcement suit such as this brought by the Committee; and (iii) whether there exists a cause of action for such a suit.  *See McGahn*, No. 19-5331 (D.C. Cir. 2019).  Given the gravity and complexity of these dispositive threshold issues, holding this matter temporarily in abeyance presents the most sensible way to manage this litigation, for at least three reasons.

*First*, this case, brought by the House of Representatives against Cabinet officials in the Executive Branch to enforce document subpoenas, presents the same threshold jurisdictional

issues as those presented in *McGahn*. Indeed, the parties have devoted hundreds of pages to addressing these important separation of powers issues in *McGahn* and similar cases, and the district judges who have addressed these issues have likewise done so at extraordinary length. It makes little sense for the parties to brief those issues again — and, more importantly, for the Court to invest the substantial resources required to assess the arguments and produce an opinion — when the D.C. Circuit will hear oral argument in a matter of weeks and undoubtedly issue its own binding decision soon thereafter.

Moreover, briefing a preliminary injunction motion makes little sense when, even if the Court were able to digest the arguments and issue a decision prior to the D.C. Circuit's ruling in *McGahn*, this Court's decision on the preliminary injunction motion would be immediately appealable to the D.C. Circuit (which has already issued a stay in the underlying district court decision and would be likely to enter a similar stay here were the Court to enter injunctive relief against the Executive Branch). And because the identical jurisdictional issues are already before the D.C. Circuit, both parties have every incentive to appeal. Depending on how the *McGahn* court rules, the jurisdictional briefing will have been wholly unnecessary — either the D.C. Circuit will affirm the *McGahn* decision, in which case little if any jurisdictional briefing will be required here,[2] or it will reverse, in which case this Court would almost certainly be required to dismiss this case. In either event, no reason exists for either the parties or the Court to expend valuable resources in a wholly unnecessary endeavor that in no circumstance will expedite actual resolution of the case.

---

[2] It is possible that whichever party loses in *McGahn* would seek further review. The Court and the parties in this case can reconvene to determine appropriate next steps at that time.

*Second*, even were the parties to simply replicate their book-length jurisdictional briefing for this Court (imposing the greatest burden on the Court, which would then need to disentangle it), the Committee apparently also seeks to force defendants to respond to the merits of their Complaint, within a time frame wholly unsuited to the complexity of the issues. According to the Complaint, the ultimate relief the Committee seeks is the "immediate" production, in "unredacted form," of five categories of documents, some of which are broad requests for "all communications" over the course of a year between the defendant agencies and anyone "inside or outside of the government" regarding the reinstatement of a citizenship question to the census. Complaint, Prayer for Relief. The Committee identifies no cause of action encompassing that sweeping claim, other than the alleged, doubly-implied constitutional power to issue subpoenas and enforce them in Court under "Article I of the Constitution." And even assuming jurisdiction and cause of action, the Committee identifies no basis for its claim that, the Committee should be able to demand documents in unredacted form, without any allowances for claims of privilege. Thus, with its promised motion for preliminary injunction or for summary judgment, the Committee will be asking this Court not only to wade through complex jurisdictional issues already pending before the D.C. Circuit, but to find that, across a potentially broad swath of documents, long established executive branch privileges grounded in the Constitution and repeatedly upheld by the Supreme Court may not be asserted against Congress.[3]  Briefing separation of powers issues of such

---

[3] The Committee alleges that executive branch privileges such as the deliberative process privilege are generally unavailable against Congress, and that executive privileges are specifically unavailable here due to (a) the agencies' alleged "misconduct," and (b) because the Committee's need for the information outweighs the need for executive branch confidentiality. *See* Complaint, ¶¶ 182-198. Those sorts of factual allegations, including a request to balance the respective needs of co-equal branches of government, would need to be resolved on a document by document basis, and underscore both the non-justiciable nature of the case and its non-suitability for emergency relief. Given the obvious presence of material and disputed facts, summary judgment on the merits is plainly premature.

6

consequence in a matter of mere weeks, and in the context of a preliminary injunction motion, would be a disservice to both this Court and the gravity of the issues at stake.

The most recent court to address the merits of these privilege issues, moreover, ruled that executive branch privileges—including the deliberative process privilege—remain fully available to executive branch agencies in response to congressional subpoenas for documents. *See Committee on Oversight and Government Reform, U.S. House of Representatives v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013). Adjudicating a motion for preliminary injunction would thus serve little purpose, as the Committee can neither establish a likelihood of success on the merits, nor, as explained below, identify any exigency justifying immediate relief. Rather than require briefing of a meritless motion for preliminary injunction, this Court should await the decision in *McGahn*, and depending on its outcome, either dismiss this action or set a schedule to adjudicate the merits in an orderly fashion.

*Finally*, as a matter of first principles, a court should not address the merits of a case when there is a serious dispute as to the court's power to even hear it. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 110 (1998) (O'Conner, J., concurring) ("[F]ederal courts should be certain of their jurisdiction before reaching the merits of a case."). For this reason, other courts in this district that have addressed the issue of whether Congress may enlist Article III courts to enforce document subpoenas have bifurcated the jurisdictional issues from the merits. In *Holder*, the Department of Justice moved to dismiss the Complaint on jurisdictional grounds sixty days following service. Judge Amy Berman Jackson "determined that it is appropriate to resolve the pending motion to dismiss for lack of jurisdiction before establishing a schedule for the briefing and consideration of motions on the merits." *Holder*, Civil Action No. 12-1332, Minute Order (Oct. 24, 2012). Similarly, Judge McFadden recently denied as premature the Committee on Ways

7

and Means' motion for summary judgment in a suit seeking to enforce a demand to the Treasury Department for production of the President's tax returns. There, the court held that, "[t]he requirement that a federal court assure itself of its jurisdiction to hear a case before proceeding to the merits is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (quotation omitted). Without prejudging the predicate issues the Defendants intend to raise, they seem unlikely to be so trivial as to justify a rush to the merits of the case." *Committee on Ways and Means, U.S. House of Representatives v. Treasury, et al.*, Civil Action 19-1974 (D.D.C.), Memorandum and Order (Aug. 29, 2019) (ECF #38).

There is even more reason in this case to hold briefing in abeyance. Here, the D.C. Circuit will soon issue its decision in *McGahn*, a decision that will likely obviate the need for this Court to address the complex jurisdictional and cause-of-action issues presented by this inter-branch dispute. Nor is there reason to expect the D.C. Circuit to tarry in issuing its decision. It issued an administrative stay and set an extraordinarily expedited schedule for briefing and argument, with briefing that began December 9 and ends December 19, and oral argument on January 3, 2020. Given the speed at which the circuit court has proceeded, its decision is likely to issue on a similarly expedited basis, and indeed likely before this Court could issue its own opinion. Accordingly, it makes little sense to proceed with expedited briefing in this case in advance of that forthcoming, binding decision.

## II.    NO EXIGENT CIRCUMSTANCES EXIST TO JUSTIFY EMERGENCY RELIEF OR EXPEDITED BRIEFING

The Committee has indicated that it intends to invoke this Court's emergency powers to demand a preliminary injunction or, alternatively, expedited briefing on the merits. Preliminary injunctive relief, of course, is an extraordinary remedy that should be sparingly exercised. That is particularly true when the injunction sought, like in this case, is a mandatory one that seeks to

change the status quo.  *Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006); *Dorfmann v. Boozer,* 414 F.2d 1168, 1173 (D.C. Cir. 1969).  The Committee has thus far utterly failed to establish any need for expedition.  Indeed, its delay in seeking emergency relief— waiting nearly *five months* after the Committee declared the accommodation process at an impasse by holding Defendants in contempt of Congress—defeats any possible claim to emergency relief.  *See, e.g.*, *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90–91 (D.D.C. 2014) (finding that delay of thirty-six days before filing motion for preliminary injunction with request for further delay to find new counsel was inconsistent with irreparable harm); *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (finding that two month delay in bringing action undermined motion for preliminary injunction); *Delmatoff, Greow, Morris Langhans, Inc. v. Children's Hosp. Nat'l Med. Ctr.,* No. 89–0219, 1989 WL 168856, at *3 (D.D.C. May 3, 1989) (finding, in trademark action, that "a substantial delay in moving for a preliminary injunction indicates that no irreparable harm will result if such relief is denied"); *Nat'l Council of Arab Ams. v. City of New York,* 331 F. Supp. 2d 258, 265–66 (S.D.N.Y.2004) (finding delay in filing for injunctive relief "argues strongly against granting a preliminary injunction").

The Committee provides no explanation for its delay, and to recite its stated reasons for requiring emergency relief suffices to refute them.  The Committee claims, for example, that it suffers irreparable harm because its term ends on January 3, 2021, Complaint ¶ 167; that urgent legislation is needed to ensure the integrity of the 2020 census which begins in Alaska in January 2020, *id* at ¶ 168; that alleged past misconduct by the Secretary of Commerce may indicate "bias" requiring "legislative attention," *id* at ¶ 170; and because, to be effective, legislation must be "implemented quickly," *id* at ¶ 174.

Each of these purported justifications undermines, rather than supports, the need for emergency relief. At the outset, the documents that the Committee seeks pertain to the administrative effort to reinstate a citizenship question on the 2020 census. But the Supreme Court issued its decision in the citizenship questions case on June 27, 2019, and final judgments enjoining the addition of citizenship questions on the 2020 questionnaire were issued by mid-July. *See, e.g.*, *State of New York v. U.S. Dep't of Commerce*, 1:18-cv-02921-JMF (S.D.N.Y.), ECF No. 634 (July 16, 2019). The Committee's speculation that the defendants nevertheless may currently be engaged in some other, unknown, wholly undefined conduct that may compromise the integrity of the 2020 census is not a legally sufficient basis on which to seek emergency injunctive relief.

If, following the Supreme Court's decision, the Committee truly felt that the integrity of the 2020 census nevertheless was imperiled, it would have acted immediately to bring this suit, not waited over four months to file an 83-page, 216-paragraph complaint and nearly five months before seeking emergency relief. Moreover, it is fanciful to believe that the proceedings in this case could somehow result in unspecified, and apparently unwritten, legislation passing both chambers of Congress and signed into law before "[t]he 2020 Census begins in Alaska on January 21, 2020." Complaint, ¶ 168. A true emergency would have triggered immediate action, not months of delay. And having taken its time to file this suit, the Committee cannot now demand emergency proceedings over the upcoming holidays to avert supposed irreparable harm, particularly when the D.C. Circuit will decide within weeks whether it was entitled to bring this suit in the first place.

### III.  ALTERNATIVELY THIS COURT SHOULD SET A REASONABLE BRIEFING SCHEDULE TO BEGIN NOT BEFORE THE END OF JANUARY

For all the reasons explained above, the Court should hold this matter in abeyance pending the forthcoming decision in *McGahn*. If the Court decides to move forward irrespective of

*McGahn*, however, it should at least set a reasonable briefing schedule that gives the agency defendants an opportunity to brief the issues in this case with due regard for their constitutional significance. The Committee's Complaint spans 83 pages, with 216 numbered paragraphs, 280 footnotes, and 112 exhibits that extend four and a half times through the alphabet (A through HHHHH). Defendants require reasonable time to review the complaint and the exhibits, consult with their clients, review the various documents at issue, and prepare an appropriate response. Given the upcoming holidays, responding to the Committee's Complaint by the end of January would give the defendants approximately 30 working days in which to oppose the Committee's motion and file their own motion to dismiss and for summary judgment. Given the lack of any genuine urgency, the Court is best served by permitting a reasonable schedule that allows for the appropriate treatment of the issues.

## CONCLUSION

For all the reasons stated above, the Court should hold this matter in abeyance pending the D.C. Circuit's decision in *McGahn*, or alternatively set a reasonable briefing schedule to begin no soon than the end of January.

Dated: December 12, 2019　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　JOSEPH H. HUNT
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　JAMES M. BURNHAM
　　　　　　　　　　　　　　　　　　　　Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　JAMES J. GILLIGAN
　　　　　　　　　　　　　　　　　　　　Special Litigation Counsel


　　　　　　　　　　　　　　　　　　　　 /s/ *Elizabeth J. Shapiro*
　　　　　　　　　　　　　　　　　　　　ELIZABETH J. SHAPIRO (DC Bar 418925)
　　　　　　　　　　　　　　　　　　　　STEVEN A. MYERS (NY Bar No. 4823043)
　　　　　　　　　　　　　　　　　　　　SERENA M. ORLOFF (CA Bar No. 260888)

United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-5302
Fax: (202) 616-8470
Email: elizabeth.shapiro@usdoj.gov
*Counsel for Defendants*