**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COMMITTEE ON OVERSIGHT AND REFORM, UNITED STATES HOUSE OF REPRESENTATIVES,<br><br>        *Plaintiff*,<br><br>  v.<br><br>WILLIAM P. BARR, in his official capacity as Attorney General of the United States, *et al.*,<br><br>        *Defendants*. | No. 19-cv-3557 (RDM) |

## JOINT STATUS REPORT

Pursuant to the Court's instruction at the January 30, 2020, hearing and the Court's Minute Entry of the same date, the parties respectfully submit this joint status report concerning their efforts since January 30 to resolve their differences over the subpoenas served on Defendants by the Plaintiff Committee on Oversight and Reform of the U.S. House of Representatives (the "Committee").

The parties have continued to confer since January 30 concerning both the priority documents (identified at ECF No. 23 at 3 n.2) and the remaining documents sought by Plaintiff's subpoenas.  The parties exchanged several written proposals and conferred at length by telephone on February 12, 2020.  The parties' respective statements of position concerning the priority documents are set forth below.  With respect to the remaining documents, the parties are continuing discussions and propose updating the Court again by joint status report on February 27, 2020.

**Plaintiff's Statement Concerning the Priority Documents**

Continued discussions between the Committee and Defendants have confirmed that the parties remain at an impasse with respect to the priority documents. The parties have a fundamental legal dispute that no accommodations process can resolve.

In its report, memos, letters, and legal briefs, the Committee has repeatedly and comprehensively explained its legislative purpose in investigating Defendants' misconduct and bad faith in attempting to add a citizenship question to the census and in developing a pretextual rationale to cover up the real reason for doing so.[1] At every turn, Defendants have insisted that the Committee's showing does not meet Defendants' standard for disclosure of the unredacted priority documents. Shortly after the Committee identified its priority documents to the Commerce Department and sought unredacted versions in March 2019, for example, Commerce asked the Committee to "identify [the Committee's] specific, particularized information needs that … cannot be satisfied without access to" the materials. Ex. FFF at 1; *see id.* at 2. No matter the information the Committee has provided since then, Defendants have repeated this refrain. *See, e.g.*, Ex. NNN at 1 (asserting that Commerce "must better understand the Committee's particularized legislative need for each sensitive portion of the information"); *id.* at 1 n.1 (collecting additional examples); *see also* Ex. III at 20-21 (same). The parties' recent exchanges about the priority documents are no exception. In a February 11, 2020 email, for example, counsel for Defendants continued to insist that "the Committee must articulate a particularized need for each piece of withheld information" in the priority documents.

---

[1] *See, e.g.*, Ex. G at 2-3, 7-9, 14-15 (Nov. 12, 2019 memorandum); Ex. III pt. 1, at 3-6 (June 24, 2019 contempt report); Ex. OOO at 6 (June 3, 2019 letter); Ex. JJJ at 3 (Mar. 29, 2019 letter). All exhibits Plaintiff cites are appended to the Declaration of Todd B. Tatelman in Support of Plaintiff's Motion for Expedited Summary Judgment (Dec. 17, 2019), ECF No. 17-1.

Defendants have given every indication that, in their view, the Committee will never be able to satisfy their heightened, redaction-by-redaction standard for disclosure of the priority documents.  *See* ECF No. 19 at 54-60; ECF No. 27 at 36-39; Hr'g Tr. at 86-91 (Jan. 30, 2020); *see, e.g.*, ECF No. 19 at 57 (characterizing the Committee's "interests" as "negligible").  The Committee has explained why Defendants are wrong.  *See* ECF No. 17 at 36-42; ECF No. 24 at 26-35, 47-51; Hr'g Tr. at 15-16, 124-25.  Courts do not apply a standard like Defendants'.  To the contrary, once courts determine that a Congressional investigation concerns a subject "upon which legislation could be had, [courts] must not entangle [themselves] in judgments about the investigation's scope or the evidence sought."  *Trump v. Comm. on Oversight & Reform*, 380 F. Supp. 3d 76, 92 (D.D.C. 2019), *aff'd sub nom. Trump v. Mazars USA, LLP*, 940 F.3d 710 (D.C. Cir. 2019), *cert. granted*, No. 19-715 (Dec. 13, 2019) (to be argued Mar. 31, 2020).  "Importantly"—and as particularly relevant here—"it is not the judicial officer's job to conduct a line-by-line review of the Committee's requests."  *Id.* at 93 (quotation marks omitted).  And just as "[t]here is no requirement that every piece of information gathered in [a Congressional] investigation be justified before the judiciary," *id.* (quoting *McSurely v. McClellan*, 521 F.2d 1024, 1041 (D.C. Cir. 1975)), there is no basis for Defendants' insistence that the Committee justify before them "each piece of withheld information"—none of which, of course, are known to the Committee.

The parties' dispute is clear and concrete.  Under any standard, the Committee has made a sufficient showing for disclosure of the priority documents.  Defendants disagree, and they have never indicated a willingness to disclose to the Committee any portions of the priority documents that they have withheld.  In the parties' recent exchanges, Defendants even rejected the Committee's proposed accommodation of *in camera* review by a limited number of House

staff of the withheld portions of the priority documents that Defendants claim are irrelevant to the Committee's investigation. *But see United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 394 (D.C. Cir. 1976) ("Since Congress wishes to investigate executive abuse of the warrantless national security wiretap authority claimed by the President, Congress puts it that it should not be required to take the Executive's word for the accuracy of the generic description of the targets in the expurgated backup memos. This has an element of strength."). Where Defendants have discussed a hypothetical accommodation, such as in their February 11 email—again, contingent on the Committee "offer[ing] a particularized explanation of its need for specific items of withheld information"—Defendants have not offered to disclose any of the withheld materials, but rather have suggested that they might instead generate a new "written explanation" responding to Defendants' assessment of the Committee's need. This only confirms Defendants' unwillingness to consider producing unredacted copies of any of the priority documents.

The accommodations framework only functions if both sides seek a resolution without insisting on insurmountable—or legally incorrect—standards. In their opening brief in this case, after referencing "the Committee's designated 'priority' documents," Defendants stated that "[t]he parties have reached an impasse only as to these specified documents, over which the President has made a formal invocation of executive privilege." ECF No. 19 at 60; *see id.* at 60-62 (similar). The parties remain at an impasse as to the priority documents today.

### Defendants' Statement Concerning the Priority Documents

Defendants acknowledge that the parties are in disagreement regarding the legal standard the Committee must meet in order to compel the production of information over which the President has made a formal claim of executive privilege. It is not enough for the Committee to show that the withheld information is relevant to a legitimate legislative inquiry (even assuming

that jurisdiction lies here, and that the Committee has a cause of action).  A showing of relevance is only the minimum required of the Committee in order to establish that information falls within the reach of Congress's implied power of inquiry.  *Trump v. Mazars USA, LLP*, 940 F.3d 710, 723-24, 739-41 (D.C. Cir. 2019).   To overcome a presidential claim of executive privilege, the Committee must also make a showing of particularized need for each item of withheld information, akin to the "demonstrably critical" standard required in *Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 498 F.2d 725, 731-33 (D.C. Cir. 1974).

In Defendants' view, however, the parties' disagreement over legal standards does not foreclose an accommodation regarding the priority documents.  If the Committee were to explain its need for specific items of withheld information, Defendants are still prepared to explore various possible means of providing the Committee with information it seeks, while still protecting the confidentiality of internal Executive Branch deliberations.[2]  Regardless of the parties' dispute over legal standards, proceeding in this fashion remains a possible avenue by which the Committee could obtain information that it states it desires, without infringing on Executive Branch interests in the confidentiality of its decision-making processes.

---

[2]  For example, the Committee has argued that it requires access to deliberative information redacted from Ross subpoena document (j) to understand how the Executive Branch interpreted the Census Act's congressional notification requirements, when the Executive Branch determined that the Justice Department's submission of the Gary Letter on December 12, 2017, did not itself require notification to Congress that the Secretary might decide to restore a citizenship question to the 2020 census.  *See* Pl.'s Reply in Supp. of Its Mot. for Summ. J. & Opp. to Defs.' Cross-Mot. (ECF Nos. 23, 24) at 51.  If the Committee wished, Defendants could provide a written explanation of the basis on which the Executive Branch concluded that the Census Act did not require notification at that time, and that notification was not required until the Secretary issued his formal decision in March 2018.  Thus, the Committee could be provided with the information desired, without exposing inter-agency deliberations on the subject.

**Joint Statement Concerning the Remaining Documents**

As noted above, since January 30 the parties have also conferred in writing and by telephone concerning the remaining documents. The parties' discussions regarding the remaining documents are continuing. The parties respectfully suggest, therefore, that they submit a further report on their efforts to resolve their differences over the remaining documents in two weeks' time, on February 27, 2020.

        Respectfully submitted,

        /s/ Douglas N. Letter
        Douglas N. Letter (DC Bar No. 253492)
           *General Counsel*
        Todd B. Tatelman (VA Bar No. 66008)
           *Principal Deputy General Counsel*
        Megan Barbero (MA Bar No. 668854)
           *Deputy General Counsel*
        Josephine Morse (DC Bar No. 1531317)
           *Deputy General Counsel*
        Adam A. Grogg (DC Bar No. 1552438)
           *Associate General Counsel*

        OFFICE OF GENERAL COUNSEL
        U.S. HOUSE OF REPRESENTATIVES
        219 Cannon House Office Building
        Washington, D.C. 20515
        Telephone: (202) 225-9700
        douglas.letter@mail.house.gov

        David A. O'Neil (DC Bar No. 1030615)
        Anna A. Moody (DC Bar No. 1047647)
        Laura E. O'Neill (DC Bar No. 1033764)
        Nathaniel Johnson (DC Bar No. 241433)

        DEBEVOISE & PLIMPTON, LLP
        801 Pennsylvania Ave. NW
        Washington, D.C. 20004
        Telephone: (202) 383-8000

        *Counsel for Plaintiff the Committee on Oversight*
           *and Reform, U.S. House of Representatives*

JOSEPH H. HUNT
Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ James J. Gilligan*
JAMES J. GILLIGAN
Special Litigation Counsel

GARY D. FELDON (DC Bar No. 987142)
STEVEN A. MYERS (NY Bar No. 4823043)
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
P.O.  Box 883
Washington, D.C.  20044
Telephone: (202) 514-3358
Fax:         (202) 616-8470
E-mail:     james.gilligan@usdoj.gov

*Attorneys for Defendants*

February 13, 2020