IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

COMMITTEE ON OVERSIGHT AND
   REFORM, UNITED STATES HOUSE
   OF REPRESENTATIVES,

                     *Plaintiff*,

      v.

WILLIAM P. BARR, in his official capacity
   as Attorney General of the United
   States, *et al.*,

                    *Defendants*.

No. 19-cv-3557 (RDM)

## JOINT STATUS REPORT

The parties respectfully submit this joint status report in compliance with the Court's order of August 7, 2020, directing the parties to address "their position or respective positions regarding the next steps in the litigation in light of the D.C. Circuit's en banc decision in Committee on the Judiciary of the United States House of Representatives v. Don McGahn, No. 19-5331 (D.C. Cir. Aug. 7, 2020)."

**Plaintiff's Statement**: The Committee on Oversight and Reform respectfully requests that the Court resolve the parties' pending cross-motions and order Defendants to produce the priority documents to the Committee. The Court should reject Defendants' attempt to further delay the Committee's investigation into the maladministration and politicization of the census, and deny their request that the Court await further proceedings in *McGahn*. The Court denied Defendants' initial such request, *see* Minute Order (Dec. 13, 2019), and Defendants' arguments have only weakened since. The en banc D.C. Circuit has now confirmed that the Committee has standing to sue to enforce its subpoenas, *Comm. on the Judiciary v. McGahn*, -- F.3d --, 2020

WL 4556761 (D.C. Cir. Aug. 7, 2020), which have been pending since April 2019. In the intervening sixteen months, the Committee's investigation has grown substantially more urgent as the Trump Administration has redoubled its efforts to interfere with an accurate count and a lawful reapportionment. The Court should not permit Defendants to run out the clock on the Committee's inquiry and to shield their actions from scrutiny.

**1.** The Committee has an ongoing "responsibility to exercise its oversight authority to ensure that the Trump Administration acts to further the Census's constitutional goals—not to hinder them." ECF No. 17-1 (Tatelman Decl. (Dec. 17, 2019)), Ex. G at 3. Toward that end, the Committee has been investigating Defendants' illegal attempt to add a citizenship question to the 2020 Census and to conceal their actual reasons for doing so, including by providing false testimony to Congress. To craft appropriate remedial legislation the Committee must understand what Defendants' actions reveal about the integrity of the census process in the face of the Administration's efforts to politicize it and impair its accuracy. The priority documents, *see* ECF No. 23 at 3-4 n.2, are particularly crucial to the Committee's investigation. *See, e.g.*, ECF No. 17 at 7-19, 31-33, 36-42; Tatelman Decl., Ex. G at 1-3, 7-15; *id.*, Ex. OOO at 2-3, 6.

Since the Supreme Court rejected Defendants' stated rationale for adding a citizenship question as pretextual—an explanation "contrived" after the fact to "distract[]" from their real reasons, *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575-76 (2019)—the Administration's actions have compounded the Committee's concerns. After the Supreme Court's decision, the President instructed the Commerce Department to obtain citizenship data in part "to generate an estimate of the aggregate number of aliens unlawfully present in each State." 84 Fed. Reg. 33,821, 33,823 (July 11, 2019). Last month, the President ordered the exclusion of noncitizens "who are not in a lawful immigration status" from the reapportionment following the

2020 Census, 85 Fed. Reg. 44,679, 44,680 (July 23, 2020), in violation of the Constitution and implementing statutes, *see, e.g.*, *New York v. Trump*, No. 20-cv-5770 (S.D.N.Y. filed July 24, 2020) (challenging the order).  And earlier this month, notwithstanding its own previous acknowledgment of delays caused by the coronavirus pandemic, the Census Bureau abruptly announced that it would be pretermitting efforts to follow-up with non-respondents and populations at risk of being undercounted.[1]  The Administration's inexplicable rush to complete the 2020 Census in just six weeks hampers the Bureau's ability to count immigrant populations and communities of color and to compile and publish accurate apportionment data.

      These actions provide further evidence that the Trump Administration is manipulating the census to enhance the political representation of "Republicans and Non-Hispanic Whites." Tatelman Decl., Ex. OOO at 2 (quoting Tatelman Decl., Ex. M at 9).  That poses a direct institutional threat to the House, which draws its legitimacy from the accuracy and integrity of the census by which its composition is determined.  For that reason and many others, the Committee's need for information to conduct oversight and consider legislative reforms, including "to safeguard the 2020 Census and to prevent similar maladministration in the future," Tatelman Decl., Ex. G at 3, is more critical than ever.

      **2.**  The Court should proceed to decide the parties' cross-summary judgment motions. The Supreme Court has instructed that suits concerning Congressional subpoenas should "be

---

[1] Stephanie Ebbs, *2020 Census to End Data Collection Sept. 30, Raising Concerns About Undercounting*, ABC News (Aug. 4, 2020), https://perma.cc/54KX-NUUB.  Previously, the Secretary of Commerce and the Census Bureau had requested an *extension* of census deadlines to ensure an accurate count and apportionment amidst the pandemic.  Press Release, *U.S. Department of Commerce Secretary Wilbur Ross and U.S. Census Bureau Director Steven Dillingham Statement on 2020 Census Operational Adjustments Due to COVID-19* (Apr. 13, 2020), https://perma.cc/PA6B-PZYW.  The House passed legislation in response to that request, *see* Heroes Act, H.R. 6800, § 70201, 116th Cong. (2020), but the Administration now appears to have withdrawn it.

given the most expeditious treatment" so as not to "frustrate[] a valid congressional inquiry." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975). In keeping with that admonition and in light of the stated importance of the Committee's investigation, this Court denied Defendants' motion to hold briefing in this case in abeyance pending a ruling in *McGahn*. Minute Order (Dec. 13, 2019).[2] Since then, the full D.C. Circuit has rejected Defendants' primary jurisdictional objection, *McGahn*, 2020 WL 4556761, at *1, emphasizing that "[f]or more than forty years this circuit has held that a House of Congress has standing to pursue a subpoena enforcement lawsuit in federal court," *id.* at *10. The fact that the en banc court remanded to the panel for consideration of other threshold issues, *id.* at *15, should not cause this Court to stay its hand now. Nor, contrary to Defendants' assertion below, is that remand analogous to the D.C. Circuit's order granting rehearing en banc and vacating the panel's judgment that House committees lack standing to enforce their subpoenas. That order might reasonably have caused the Court to wait. *See* ECF No. 39 at 1-2 (Committee's statement); *accord id.* at 3 (Defendants' statement). The remand should not.

Defendants' additional reasons for delay lack merit. First, Defendants' statements about the accommodations process ring hollow in light of their actions. They have obstructed the Committee's investigation since January 2019. *See* ECF No. 17 at 19-31. It took this litigation to reveal that the documents Defendants did provide to the Committee before they ceased productions in July 2019 either were already public or had already been produced to plaintiffs in

---

[2] *See* ECF No. 14 at 29:16-22 (The Court: "I'm going to deny the motion to hold the case in abeyance …. [G]iven the fact that there is a coordinate branch of government here that is at least telling us that they have some urgency and this is important to them to move forward with this, that strikes me as an appropriate reason for us—the other two branches[—]to do our best to move forward as quickly as we can."); *see also* Minute Order (Dec. 13, 2019) (expediting briefing and argument on the parties' dispositive motions).

a separate case. *See* ECF No. 23 at 2, 4-5, 55-56. It likewise took this litigation to prompt Defendants to resume productions to the Committee, and even then (once again) largely of documents already produced elsewhere, and *not* of the priority documents. While Defendants have allowed Committee staff to review a subset of priority documents *in camera*, Defendants have not produced unredacted copies of any of the priority documents to the Committee.

Defendants assert that they "are continuing to work through the Committee's remaining requests." But Defendants neglect that even some of those more recent accommodation requests—which prioritize a small percentage of the documents at issue—have been pending for five months, and they ignore that the Committee's initial document requests have been pending since January 2019. Defendants even declined a recent invitation to attempt additional progress. In response to the Court's August 7, 2020 Minute Order, the Committee proposed to Defendants that the parties jointly request a short, three-week window to resolve outstanding issues before suggesting how the Court should proceed. While stating a willingness to continue the accommodations process, Defendants rejected the Committee's proposal.

Second, as explained above, the Committee's investigation remains critically important. The Committee has pursued it earnestly while this litigation has been pending, holding hearings and briefings,[3] requesting transcribed interviews,[4] contributing to legislation to enhance Congressional oversight of census operations—legislation that the House subsequently passed,[5]

---

[3] *See, e.g.*, Press Release, *Oversight Committee Held Emergency Hearing on Trump Administration's Unconstitutional Politicization of 2020 Census* (July 29, 2020), https://perma.cc/9YWA-PRGJ; Press Release, *Census Director Briefs Committee on Impact of Coronavirus on Census* (Apr. 27, 2020), https://perma.cc/MU7G-T2N2.

[4] Letter from Chairwoman Carolyn B. Maloney to Census Bureau Director Steven Dillingham (Aug. 4, 2020), https://perma.cc/L28L-Z37Q.

[5] *See* Heroes Act, H.R. 6800, § 70202, 116th Cong. (2020) (passed by the House on May 15, 2020); Press Release, *Heroes Act Includes Top Oversight Committee Priorities* (May 12,

and issuing reports and statements.[6]  The Committee's work continues regardless of the House's legislative schedule.[7]  Defendants' contrary assertions are false.

Third, Defendants are likewise mistaken in claiming that Congress has never successfully obtained information from an Executive Branch official in a lawsuit.[8]  Where Defendants also claim to "have provided a significant number of additional documents to the Committee" since it filed *this* lawsuit, it is difficult to understand Defendants' point.  Defendants may mean to assert that Congress has never obtained Executive Branch information as a result of a court order, over claims of privilege, but that is wrong.  As the Department of Justice informed the D.C. Circuit in litigation over the Committee's subpoena concerning Operation Fast and Furious, after the district court held "that the Committee had made a sufficient showing of need to overcome" the Department's claim of privilege, "[p]ursuant to the district court's … order … the Department produced to the Committee all previously withheld deliberative materials, subject only to [certain] non-deliberative redactions."  Br. for Appellee at 8-9, *Comm. on Oversight & Gov't*

---

2020), https://perma.cc/E2YL-5RYL; *see also* Fair and Accurate Census Act, H.R. 7034, § 3, 116th Cong. (2020) (introduced and referred to the Committee on May 27, 2020).

[6] Staff Report, H. Comm. on Oversight & Reform and Subcomm. on Civil Rights & Civil Liberties, *It's Time to Fill Out Your 2020 Census Form: Why a Complete Count Is Essential for New York City* (June 2020), https://perma.cc/7552-N5LJ; Press Release, *Chairs Maloney and Raskin Issue Statements on Trump Administration's Unconstitutional Attempt to Exclude Undocumented Immigrants from 2020 Census Count* (July 21, 2020), https://perma.cc/Y4JJ-V3LM; Press Release, *Chairwoman Maloney's Remarks at Press Conference on the Start of the 2020 Census* (Mar. 5, 2020), https://perma.cc/5BLZ-NU38.

[7] *See also* Press Release, *Dear Colleague on House Returning to Save the Postal Service* (Aug. 16, 2020), https://perma.cc/P3S9-89UC (curtailing the recess that Defendants reference below).

[8] In context, Judge Griffith's statement to that effect in his *McGahn* dissent may be limited to lawsuits (like *McGahn*) concerning Congressional subpoenas for testimony.  *See* 2020 WL 4556761, at *27.  *But cf.* Joint Status Report, *Comm. on the Judiciary v. Miers*, No. 08-5357 (D.C. Cir. Sept. 8, 2009) (stating, in the context of the *Miers* litigation over Congressional subpoenas for testimony and documents and an "Agreement Concerning Accommodation," that a Congressional committee completed interviews with Karl Rove and Harriet Miers).  Only documents are at issue here.

*Reform v. Lynch*, No. 16-5078 (D.C. Cir. Dec. 20, 2016); *see* 156 F. Supp. 3d 101 (D.D.C. 2016).  In any event, neither Defendants' predictions about other courts' future actions nor their sense—contrary to the Committee's—that it is too late for this Court's adjudication to matter justify granting their renewed request that the Court await further rulings in *McGahn*.

**Defendants' Statement**:  In *Committee on the Judiciary v. McGahn*, --- F.3d ----, 2020 WL 4556761 (D.C. Cir. Aug. 7, 2020) (en banc), the D.C. Circuit held that informational disputes between the House of Representatives and the Executive Branch may constitute Article III cases or controversies.  *Id.* at *1.  Defendants acknowledge that, at this time, the en banc opinion controls the Article III question in this case.

Yet the limits of Article III are not the only reason why this case is not justiciable.  In both *McGahn* and this case, Defendants have asserted additional threshold defenses beyond the absence of Article III jurisdiction. As in *McGahn*, Defendants have argued here that Congress has neither conferred statutory subject matter jurisdiction nor created a cause of action permitting a House committee to enforce its subpoenas against the Executive Branch in federal court.  *See* Defs.' Mot. to Dismiss or for Summ. J., ECF No. 18, at 22-35.  The en banc court did not reach these questions, and instead remanded them for resolution by the panel.  *See McGahn*, 2020 WL 4556761, at *15 ("Consideration of McGahn's other contentions — including threshold pre-merits objections that there is no subject matter jurisdiction and no applicable cause of action . . . — remain to be decided and are remanded to the panel to address in the first instance.").  And the vacated panel opinion, while grounding its ruling under Article III, left little doubt that the panel took Defendants' arguments on these additional points quite seriously.  *See Comm. on the Judiciary v. McGahn*, 951 F.3d 510, 522 (2020) ("The current statutory regime for enforcement of congressional subpoenas

7

reflects Congress's judgment that information disputes between the political branches do not belong in federal court.").

Given the importance of the issues remaining to be decided by the D.C. Circuit, this Court should continue to await definitive resolution by the D.C. Circuit as a matter of basic judicial efficiency. As the Committee told this Court after the D.C. Circuit agreed to hear *McGahn* en banc, "this Court should not proceed in a way . . . that pays no heed to the D.C. Circuit's order granting rehearing en banc in *McGahn*"; instead, "the Court should await the en banc D.C. Circuit's decision in *McGahn* before adjudicating the parties' cross-motions in this case." March 2020, 2020 Joint Status Report, ECF No. 39 at 2. The exact same logic applies here; the Court should wait for definitive guidance from the D.C. Circuit on the remaining dispositive threshold issues before proceeding further.[9]

Three additional points bear emphasis. *First*, continuing to await guidance from *McGahn* would permit the parties to continue to engage in the accommodation process that they have been pursuing for the past six months. Consistent with Defendants' good-faith participation in that process, both the Department of Commerce and the Department of Justice have provided a significant number of additional documents to the Committee; among other things, the Department of Justice has, with the President's authorization, permitted "*in camera*" review by Committee staff of the draft Gary Letters that the Committee sought as priority documents, and over which

---

[9] *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 511 n.17 (1975), cited above by the Committee, *supra* at 3-4, does not counsel or require otherwise. *Eastland* was a case brought *against* the chairman of a Senate subcommittee and nine other senators (among others) seeking to enjoin them from trying to enforce a congressional subpoena, 421 U.S. at 495, and every facet of the Supreme Court's analysis, including its discussion of expeditious treatment, was grounded in the senators' immunity from suit under the Speech or Debate clause. *Id.* at 501, 503, 511. Here, the Committee is not a defendant, and Defendants have not asked the Court to "halt" or "interfere" with its functions; rather, it is the Committee that has brought this case, meaning that considerations of legislative immunity under the Speech or Debate clause are not implicated.

the President previously made a conclusive assertion of executive privilege. Both the Department of Commerce and the Department of Justice are continuing to work through the Committee's remaining requests. The Committee expresses discontent with the pace of the accommodation process since the case was last heard in January 2020, *supra* at 5, but it has not previously voiced such complaints to Defendants in the intervening months. If the Court continues to give the parties room to work out their disputes through the time-honored accommodation process, the parties may be able to further narrow the issues requiring resolution by this Court.

*Second*, any need that the Committee once may have had for an urgent resolution of this action no longer exists. This suit seeks to enforce a July 2019 subpoena for documents concerning the effort to reinstate a citizenship question on the 2020 census. When the Committee filed this suit in November 2019, it had already been apparent for months that no such question would appear on the census. The Committee nevertheless alleged that it required urgent resolution of this case because "legislative reforms to safeguard this Census must be considered immediately," given that the "2020 Census begins in Alaska on January 21, 2020, and in the rest of the country on April 1, 2020." Compl. (ECF No. 1) ¶ 168. Nine months have now passed, during which time no emergency legislation has been enacted; nor has the Committee identified above any legislation introduced, hearings held, or any other activity to which years-old documents concerning the restoration of a citizenship question to the decennial census have any discernible relevance. *Supra* at 5-6. And with the 2020 census due to end on September 30, *see* U.S. Census Bureau, Statement from U.S. Census Bureau Director Steven Dillingham: Delivering a Complete and Accurate 2020 Census Count, https://www.census.gov/newsroom/press-releases/2020/delivering-complete-accurate-count.html, the House plans to spend three of the next six weeks in recess. *See* Majority Leader Steny Hoyer, Calendar, https://www.majorityleader.gov/calendar (last visited Aug. 14,

9

2020). There was a vanishingly small chance of Congress enacting legislation affecting the 2020 census in November 2019, and there is zero chance of it doing so today.

*Third* and finally, even if the Committee could claim a legitimate interest in the subpoenaed documents absent a legitimate legislative purpose (and it cannot), that interest could not justify a rush to judgment here. As Judge Griffith noted in his dissent from the en banc opinion in *McGahn*, "Congress has never successfully obtained information from an executive-branch official in a lawsuit." *McGahn*, 2020 WL 4556761, at *27 (Griffith, J., dissenting). One reason why is that when the Executive Branch has appealed from lower court orders to produce information to Congress, higher courts have consistently stayed those orders to permit appropriate consideration of the weighty separation of powers issues at stake. *See, e.g.*, Order, *Dep't of Justice v. House Comm. on Judiciary*, No. 19A1035 (U.S. May 20, 2020) (staying D.C. Circuit order requiring production of unredacted grand jury materials relating to Mueller investigation); *Comm. on the Judiciary of the U.S. House of Reps. v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (per curiam) (staying order requiring former White House Counsel to testify before Committee, and produce documents). Indeed, the stay that was issued in *McGahn*, *see Comm. on the Judiciary v. McGahn*, No. 19-5331, Doc. 1818063 (D.C. Cir. Nov. 27, 2019), remains in effect to this day.[10] The chances of the Committee actually receiving privileged executive branch documents pursuant to an order from this Court before (at least) the completion of D.C. Circuit litigation in *McGahn* are infinitesimally small, underscoring why the Court should await further guidance from the D.C.

---

[10] The Committee points to the Department of Justice's production of documents containing deliberative materials, but from which information containing attorney-client privileged material, attorney work product, private information, law-enforcement sensitive material, or foreign policy sensitive material had been redacted, pursuant to the court's order in *Comm. Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101 (D.D.C. 2016). *Supra* at 6-7. The example is inapposite, however, because in that case the Executive Branch did not seek appellate review of the district court's order.

Circuit instead of trying to speed ahead of that Court while it simultaneously considers identical issues. That approach is consistent with the deliberate and incremental approach the D.C. Circuit itself has thus far taken in *McGahn*—deciding first the Article III issues and now remanding for decision of the remaining issues.

Respectfully submitted,

*/s/ Douglas N. Letter*
Douglas N. Letter (DC Bar No. 253492)
   *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
   *Principal Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
Josephine Morse (DC Bar No. 1531317)
Adam A. Grogg (DC Bar No. 1552438)

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

David A. O'Neil (DC Bar No. 1030615)
Anna A. Moody (DC Bar No. 1047647)
Laura E. O'Neill (DC Bar No. 1033764)
Nathaniel Johnson (DC Bar No. 241433)

DEBEVOISE & PLIMPTON, LLP
801 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 383-8000

*Counsel for Plaintiff the Committee on Oversight
   and Reform, U.S. House of Representatives*


ETHAN P. DAVIS
Acting Assistant Attorney General

DAVID M. MORRELL
Deputy Assistant Attorney General

11

        ELIZABETH J. SHAPIRO
        Deputy Director

        */s/ James J. Gilligan*
        JAMES J. GILLIGAN
        Special Litigation Counsel

        STEVEN A. MYERS (NY Bar No. 4823043)
        Senior Trial Counsel
        United States Department of Justice
        Civil Division, Federal Programs Branch
        P.O. Box 883
        Washington, D.C. 20044
        Telephone: (202) 305-8648
        Fax:       (202) 616-8470
        E-mail:   steven.a.myers@usdoj.gov

        *Attorneys for Defendants*

August 17, 2020